UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

NILHAN HOSPITALITY, LLC,                    Case No.: 6:15-bk-03447-KSJ
                                                            Chapter 11
        Debtor
_____/

In re:

ORLANDO GATEWAY PARTNERS, LLC,              Case No.: 6:15-bk-03448-KSJ
                                                            Chapter 11
        Debtor.
_____/

## DISCLOSURE STATEMENT

## FOR PLAN OF REORGANIZATION FILED BY THE DEBTORS

*/s/ Kenneth D. Herron, Jr.*
**Kenneth D. (Chip) Herron, Jr.**
Florida Bar No. 699403
**Wolff, Hill, McFarlin & Herron, P. A.**
1851 W. Colonial Dr.
Orlando, Florida  32804
Telephone:    (407) 648-0058
Fax:              (407) 648-0681
Primary e-mail:    kherron@whmh.com
Secondary e-mail: kmaples@whmh.com

Attorneys for the Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

NILHAN HOSPITALITY, LLC,                          Case No.: 6:15-bk-03447-KSJ
                                                                          Chapter 11
        Debtor

_____/

In re:

ORLANDO GATEWAY PARTNERS, LLC,          Case No.: 6:15-bk-03448-KSJ
                                                                          Chapter 11
        Debtor.

_____/

**DISCLOSURE STATEMENT**

**FOR PLAN OF REORGANIZATION FILED BY THE DEBTORS**

      This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of § 1125 of Title 11 of the United States Code (the "Bankruptcy Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case ("Bankruptcy Case") to make informed judgments about the Plan of Reorganization for Orlando Gateway Partners, LLC ("OGP") Nilhan Hospitality, LLC ("Nilhan"; and together with OGP, the "Debtors") (the "Plan") submitted by the Debtors.

      The overall purpose of the Plan is to provide for the reorganization of the Debtors' liabilities in a manner designed to maximize recoveries to all stakeholders. The Debtors believe the Plan provides the best means currently available for the Debtors' emergence from Chapter 11 and the best recoveries possible for holders of claims and interests against the Debtors, and thus strongly recommends that you vote to accept the Plan.

2

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.

NO REPRESENTATION CONCERNING THE PLAN IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESSES AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. This  THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE PLAN PROPONENT'S CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

   AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER, ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

   As prescribed by the Bankruptcy Code and the Rules, Claims asserted against, and equity

Interests in, the Debtors are placed into "Classes." The Plan designates eleven (11) separate classes of Claims and Interests. The Plan contemplates paying these Classes of Claims over time, as more fully set forth below. The Plan also provides that as of the Effective Date of the Plan the Debtors' respective assets and liabilities will be substantively consolidated into one Reorganized Debtor entity. Finally, the Plan further provides that on the Effective Date the Debtors' existing membership and equitable interests will be extinguished and the Reorganized Debtor will issue 100% of its membership interests to a new investor in exchange for a capital contribution by the new investor.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtors are altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the Plan.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail in Section III of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court will schedule a hearing to consider whether the Plan complies with those requirements (the "Confirmation Hearing").

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in Section III of this Disclosure Statement, the

Debtors have expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

## I.  DESCRIPTION OF DEBTORS' BUSINESSES

A.  In General.

Nilhan Hospitality, LLC is a Florida Limited Liability Company.  The Debtor owns approximately 15.75 acres of commercial real estate located near the Orlando International Airport on the West side of South Semoran Boulevard and North of the State Road 528/The Beachline Expressway.  The property is comprised of two separate parcels, one parcel (approximately 7.27 acres) has been partially developed as and has two buildings located at 5463 Gateway Village Circle and 5475 Gateway Village Circle, which are approximately 15,000 square feet in size.  The buildings are used as retail space and are leased to tenants including Bonefish Grill, Carraba's Italian Grill, International House of Pancakes, Ari Habchi and Sushi Japanese Restaurant and a nail and hair salon.  The second parcel (approximately 8.47 acres) is vacant.  OGP was formed on or around August 16, 2007, for the purpose of acquiring and developing that certain real property generally located at the northwest corner of The Beachline Expressway (SR 528) and Semoran Boulevard (SR 436), Orlando, Florida, originally consisting of approximately 60 acres (the "Original Property")

Orlando Gateway Partners, LLC is a Florida Limited Liability Company.  It owns approximately 47.95 acres of commercial real estate located near the Orlando International Airport on the West side of South Semoran Boulevard and North of the State Road 528/The Beachline Expressway.  The property is comprised of four separate parcels, one parcel (approximately 17 acres) has been partially developed and a portion of it is leased to Sixt Rent-A-Car, LLC.  The second parcel (approximately .14 acres) is rented to Clear Channel Worldwide

and contains a billboard. The remaining two parcels (approximately 10.75 and 20.10 acres respectively) are vacant.

B. <u>Reasons for Bankruptcy Filing</u>. The Debtors and realted entities have been involved in extensive litigation with Good Gateway, LLC, SEG Gateway, LLC and other parties (collectively "The Adverse Parties") since 2009. In October, 2014 separate judgments were entered in favor of SEG Gateway, LLC and Good Gateway, LLC against various parties, including the Debtor and Orlando Gateway Partners, LLC (the Debtor in case no. 6:15-bk-03448-KSJ). The Judgments were timely appealed, but a stay of execution was not obtained. One of the Adverse Parties obtained a writ of execution. The Orange County Sheriff levied on the real property owned by the Debtor and scheduled an execution sale for April 21, 2015. The Debtor filed this case when it did to stop the execution sale. The Debtor filed this case so that it could retain its property and restructure its financial obligations, including the obligations owed to the Adverse Parties.

## II.   <u>THE PLAN.</u>

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A. <u>Overview</u>.

All Claims against the Debtors shall be classified and treated pursuant to the terms of the Plan. As detailed more fully below, the Plan contains a total of eleven (11) Classes of Claims and Interests as follows: eight (8) Classes of Allowed Secured Claims; two (2) Classes of Allowed Unsecured Claims; and one (1) Class of Interests. There are nine (9) Classes of Impaired Claim that are entitled to vote on the Plan, and two (2) Classes of Unimpaired Claims

that are deemed by operation of the Bankruptcy Code to accept the Plan (Classes 6 and 8).

On the Effective Date, the Plan provides that the Debtors' assets and liabilities will be substantively consolidated into one Reorganized Debtor, which will be obligated to make all Plan Payments. Further, on the Effective Date, Holders of Allowed Administrative Claims and all Allowed Unsecured Priority Tax Claims (which does not include ad valorem tax claims) will be paid in full. The Holders of Allowed Secured Claims will retain their respective liens on the subject properties with the Allowed Secured Claims being paid in full over time, as set forth below and in the Plan. The Holders of Allowed Secured Tax Claims shall be paid in full, with interest accruing at the rate provided by Florida law over a period of four (4) years from the Petition Date

All Allowed Unsecured Claims, except for any portion of the claim of Nilhan Financial that is equitably subordinated, shall be paid in full within one year from the Effective Date. The Allowed Unsecured Claim of Nilhan Financial which is equitably subordinated, if any, will be paid from the net proceeds of the Causes of Action after payment in full of all Allowed General Unsecured Claims. All Equity Interests (all membership interests) in the Debtors existing as of the Petition Date shall be extinguished on the Effective Date. The Debtor will issue new membership interests through an auction sale with the new capital being used to fund, in part, payments due under the Plan.

B.    <u>Classification and Treatment of Claims</u>.  The Plan classifies and proposes the following treatment for Claims and Interests that are Impaired:

i.    **<u>Secured Claims.</u>**

1.    <u>Class 1 - Nilhan Financial, LLC</u>.  This holder of the Allowed Secured Claim of Nilhan Financial, LLC shall receive the following treatment, with the amount of the

Allowed Secured Claim being determined in the Adversary Proceeding 6:15-ap-00098-KSJ (the "Nilhan Financial Adversary").

In full satisfaction of its Allowed Secured Claim, Nilhan Financial shall retain its lien to the extent and priority determined by the Bankruptcy Court, and shall receive monthly payments of principal and interest, with interest accruing at 5%, amortized over 25 years, and a final maturity date 60 months after the Effective Date.

Provided that to the extent that Nilhan Financial's claim against OGP's property is determined to be an unsecured claim pursuant to 11 U. S. C. §506(a)(1), then the unsecured claim will be treated as a claim under Class 9.

Notwithstanding any of the foregoing, if the Court determines that any portion of Nilhan Financial's claim should be re-characterized as an equity contribution, then that portion of the Nilhan Financial claim, if any, shall be treated as an interest claim under Class 11.

2.     Class 2 - Allowed Secured Claim of Summit.  In full satisfaction of its Allowed Secured Claim, SummitBridge shall retain its lien on the Debtors' Real Property to the same extent and priority existing as of the Petition Date, and shall receive monthly payments of principal and interest, which shall accrue at 5%, based on a 20 year amortization schedule, and with final maturity date 36 months from the Petition Date; *provided*, that the Reorganized Debtor may pay the Class 2 Claim in full at any time prior to one year after the Effective Date and during such one year period the payoff amount of the Class 2 Claim shall be reduced by 5% of the total Allowed Claim amount as of such date.  Payments will commence on the Effective Date.

3.     Class 3 - Allowed Secured Claims of SEG Gateway, LLC.  The Allowed Amount of the Class 3 Claim shall be as determined by final adjudication or other resolution of the Appeals.  In full satisfaction of their Class 3 Claim, SEG Gateway, LLC shall retain its liens on the Debtors' Real and Personal Property to the extent and in the priority established by the Bankruptcy Court and shall be paid the Allowed Amount of their Claims within three (3) years after the date of final adjudication or other resolution of the Appeals in favor of the Debtors, with such Claims to accrue and be paid interest at 5% per annum.  Provided, that payments shall not commence, and interest shall not accrue, until after final adjudication or other resolution of the Appeals.

4.     Class 4 - Allowed Secured Claims of Good Gateway, LLC.  The Allowed Amount of the Class 4 Claim shall be as determined by final adjudication or other resolution of the Appeals.  In full satisfaction of their Class 4 Claim, Good Gateway, LLC shall retain its liens on the Debtors' Real and Personal Property to the extent and in the priority established by the Bankruptcy Court and shall be paid the Allowed Amount of their Claims within three (3) years after the date of final adjudication or other resolution of the Appeals in favor of the Debtors, with such Claims to accrue and be paid interest at 5% per annum.  Provided, that payments shall not commence, and interest shall not accrue, until after final adjudication or other resolution of the Appeals.

5.      Class 5 – Orange County Tax Collector (Nilhan) - 2014.  Class 5 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2014 tax year.  In full satisfaction of its Class 5 Claim, the Orange County Tax Collector shall retain its statutory lien on the Nilhan Property, and shall receive monthly payments of principal and interest, with interest accruing at the rate provided under Florida law, amortized over 20 years, and a final maturity date that is 48 months after the Petition Date.  Payments will commence on the Effective Date.

6.      Class 6 – Orange County Tax Collector (OGP).  Class 6 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2014 tax year.  In full satisfaction of its Class 6 Claim, the Orange County Tax Collector shall retain its statutory lien on the OGP Property, and shall receive monthly payments of principal and interest, with interest accruing at the rate provided under Florida law, amortized over 20 years, and a final maturity date that is 48 months after the Petition Date.  Payments will commence on the Effective Date.

ii.      **Unsecured Claims.**

1.      Class 9 – Allowed Unsecured Claims.  Class 9 consists of all Allowed Unsecured Claims of the Debtors *other than* that portion, if any, of the Allowed Unsecured Claim of Nilhan Financial, which the Court determines should be equitably subordinated to other Allowed Unsecured Claims.  In full satisfaction of their Allowed Class 8 Claims, Holders of Class 9 Claims shall be paid in full within one year from the Effective Date either (i) from the proceeds of the Causes of Action, or (ii) by Newco on the date that is one year after the Effective Date if either the proceeds of the Causes of Action are insufficient to pay all Class 9 Claims in full, or if the Causes of Action have not reached a final resolution within one year after the Effective Date (such payment by Newco, the "Class 9 Payoff").

2.      Class 10 – Allowed Unsecured Claim of Nilhan Financial.  Class 10 consists of that portion, if any, of the Allowed Unsecured Claim of Nilhan Financial, which the Court determines should be equitably subordinated to other Allowed Unsecured Claims.  In full satisfaction of its Allowed Class 10 Claim, if any, Nilhan Financial shall receive the net proceeds of the Causes of Action after payment in full of all Class 9 Claims.

iii.      **Equity Interests.**

1.      Class 11 – Equity in the Debtors.  On the Effective Date, all Class 11 membership interests shall be extinguished.

C.      Means of Implementation.

The Plan will be implemented as follows:

1.      **Substantive Consolidation**.  If not Ordered by the Court prior to the confirmation hearing, then on the Effective Date the Debtors' estates and all assets of the

Debtors shall be substantively consolidated into Orlando Gateway Partners, LLC, as one Reorganized Debtor.

2.      **Equity Interests in the Reorganized Debtor.**  Membership interests in Reorganized Debtor shall be issued to a new investor ("New Investor") on the Effective Date, such that New Investor shall hold 100% of the issued and outstanding interests of the Reorganized Debtor.  Any party desiring to purchase the interests, shall deposit in escrow with the Debtors' attorneys, at or prior to the hearing on confirmation of the Plan, not less than $1,000,000.00 (the "Minimum Deposit").  Any party who timely makes the Minimum Deposit shall be deemed a Qualified Bidder.  If there is more than one Qualified Bidder, then the Qualified Bidders shall participate in an auction for the Interests to be conducted by the Court and on such terms and conditions as determined by the Court. The funds paid to the Reorganized Debtor by the New Investor for the equity interests shall be deemed capital contributions to the Reorganized Debtor.

3.      **Funding Plan Payments**.  Payments due under the Plan shall be funded from the funds generated during the Chapter 11 case, the capital contribution to the Reorganized Debtor by the New Investor, funds generated by the Reorganized Debtor from general operations after the Effective Date and any net funds generated from the Causes of Action.

4.      **Management and Control of Reorganized Debtor**.  The day-to-day operations of the Reorganized Debtor shall be overseen by New Investor, or its designee.

5.      **Continued Existence**.  The Reorganized Debtor will continue to exist after the Effective Date as a limited liability company in accordance with the laws of the State of Florida provided that the Debtors may be merged into Orlando Gateway Partners, LLC.

6.     **Amendment to Articles of Organization and Operating Agreement.**
The Articles of Organization and the Operating Agreement of the Reorganized Debtor shall be amended as necessary to satisfy the provisions of the Plan and Bankruptcy Code.

7.     **Revesting of Assets**.  The property of the Debtors' Bankruptcy Estates of the Debtor shall revest in Orlando Gateway Partners, LLC, as the Reorganized Debtor on the Effective Date, except as otherwise provided in the Plan.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code.  As of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

8.     **Assumption of Liabilities**.  The liability for and obligation to make distributions required under the Plan, shall be assumed by the Reorganized Debtor, which shall have the liability for and obligation to make all distributions of property under the Plan.

9.     **Avoidance Actions.**  Causes of action that could be asserted by the Debtor pursuant to Bankruptcy Code §§542, 543, 544, 545, 547, 548, 549, 550, or 553 shall, except as otherwise provided in the Plan, be retained by the Debtor.  Any net recovery realized by a Debtor on account of such causes of action, shall be the property of the Debtor subject to distribution to creditors as provided in this Plan.

10.     **11 U. S. C. §1146(a) and Loan or Transfer Documents**.  Pursuant to 11 U. S. C. §1146(a) the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.  This Plan contemplates that the Debtor might (a) issue, transfer or deliver various notes and mortgages, (b) transfer its property to Acorn, or its designee, by way of a deed in lieu of foreclosure, and (c) that the Debtor might

transfer its property by way of a sale, at which Acorn, or its designee, would be entitled to credit bid (collectively the "Plan Transactions").

D.    Other Provisions.

1.    Leases and Executory Contracts.

The Reorganized Debtor shall have thirty (30) days after the Effective Date within which to assume or reject unexpired leases or executory contracts, after which time, if any unexpired lease or executory contract is not the subject of a filed motion to reject such lease or contract, then such unexpired lease or executory contract shall be deemed assumed by the Reorganized Debtor.  The executory contracts listed on Schedule G - Executory Contracts and Unexpired Leases, filed by the Debtors pursuant to Rule 1007, are the only executory contracts to which the Debtors were a party as of the Petition Date. There are no monetary or nonmonetary defaults to cure.

2.    Procedures For Resolving Disputed Claims.

a.    Prosecution of Objections to Claims. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, any party in interest shall have the right to make and file objections to all Claims prior to the Effective Date, and the Reorganized Debtors shall have the exclusive right to make and file objections to Claims after the Effective Date; *provided*, that any party in interest with a claim objection pending as of the Effective Date may continue to prosecute such pending claim objection to final adjudication or other resolution.

Unless another time is set by order of the Bankruptcy Court, all objections to Claims and Interests shall be filed with the Court and served upon the Holders of each of the Claims and Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth herein, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Interest. Except as set forth in the Plan, upon Confirmation the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.      Estimation of Claims.      The Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether any party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.      Cumulative Remedies. All of the aforementioned Claim objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn   or

resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or a Disputed Interest for purposes related to allocations, Distributions, and voting under the Plan.

d.  <u>Payments and Distributions on Disputed Claims</u>. As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtor's Cash and Assets, such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under this Plan in order to bring payments to the affected Claimant current with the other participants in the particular Class in question. Except as otherwise provided herein, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtor or as otherwise specifically provided herein, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

e.  <u>Allowance of Claims and Interests</u>.

i.  <u>Disallowance of Claims</u>.  All Claims held by Persons against whom the Reorganized Debtor obtains a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due to the Reorganized Debtor by that Person are turned over.

ii.  <u>Allowance of Claims</u>. Except as expressly provided herein,

no Claim or Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Case, unless and until such Claim or Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Interest.

iii.    Controversy Concerning Impairment. If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

3.    Effect of Confirmation.

a.    Authority to Effectuate the Plan. Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under this Plan will be deemed to be authorized and approved without the need for any further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtors' operating agreements such that the provisions of this Plan can be effectuated. The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan, including but not limited to execution of a new operating agreement consistent with the provisions of the Plan.

b.    Post-Confirmation Status Report. Within 120 days of the entry of the Confirmation Order, the Reorganized Debtor will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan, including a report on the status of the Causes of Action. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

III.    **<u>CONFIRMATION</u>**

    A.    <u>Confirmation Hearing.</u>

    Section 1128 of the Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing.

    B.    <u>Financial Information Relevant to Confirmation.</u>

    At least two weeks prior to the Confirmation Hearing the Debtors will provide all creditors with the following information relevant to confirmation of the Plan:

    1.    The Reorganized Debtor's financial projections for the three (3) years following the Effective Date (the "Projections"). The Projections will indicate the Reorganized Debtor's operational cash flow will be sufficient to service the required Plan Payments; and

    2.    The Debtors' Chapter 7 liquidation analysis (the "Liquidation Analysis"), which will establish that the Creditors of the Debtors will fair materially worse in the event the Debtors are forced into Chapter 7 as compared to the Plan.

    C.    <u>Confirmation Standards.</u>

    For a plan of reorganization to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept the plan, that confirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in § 1129 of the Code have been met. The Debtor believes that the Plan satisfies all of the requirements for Confirmation.

1. <u>Best Interests Test</u>. Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were, on the Effective Date, liquidated under Chapter 7 of the Code. The Debtors believe that satisfaction of this test will be established by the Liquidation Analysis. To determine what holders of Claims and Equity Interests would receive if the Debtors were liquidated, the Bankruptcy Court must determine how the assets and properties of the Debtors would be liquidated and distributed in the context of a Chapter 7 liquidation case. The Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 Case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any

Payment.

The Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and Interest Holders, including the following:

a.   the possible costs and expenses of the Chapter 7 trustee or trustees;

b.   the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for Debtors' assets caused by the forced Chapter 7 liquidation; and

c.   the possible substantial increase in Claims that would rank before or on parity with those of Unsecured Creditors.

2.   Financial Feasibility. The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors unless the liquidation is proposed in the Plan. As the Projections will demonstrate, the Debtors believe that, under Mr. Good's control, core operations of the Reorganized Debtor will generate sufficient cash flow to make all Plan Payments as noted herein. Based upon the Projections, the Debtors assert that the Plan is feasible and Confirmation is not likely to be followed by further financial reorganization.

3.   Acceptance by Impaired Classes. The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such Plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under a Plan is deemed to have accepted such Plan, and solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless: (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4.   <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u>

The Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims.  Section 1129(b)(1) of the Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted,

the Plan.

**THE DEBTORS BELIEVE THAT, IF NECESSARY, THEY WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

D.     <u>Consummation</u>.

The Plan will be consummated and Payments made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court, the Effective Date occurs, and the Reorganized Debtor and applicable parties reach agreement on any required documents. It will not be necessary for the Reorganized Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

E.     <u>Exculpation from Liability</u>. The Debtors, the Reorganized Debtor, their respective members, partners, managers, officers, and directors, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case; *provided, however,* that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law,

or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan and (ii) the Debtors' respective members, partners, managers, and executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

      F.    <u>Police Power.</u>

        Nothing in this Article III shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

      G.    <u>Revocation and Withdrawal of this Plan.</u>

        The Debtors reserve the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw

this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

        H.    <u>Modification of Plan</u>.

        The Debtors may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

## IV.    <u>ALTERNATIVE TO THE PLAN</u>

        If the Plan is not confirmed and consummated, the Debtors believe that the most likely alternative is a sale of the Debtors' assets or a liquidation of the Debtor under Chapter 7 or 11 of the Code. In a case under Chapter 7 of the Code, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to Creditors in accordance with the priorities established by the Code. The Debtor's analysis of the probable recovery to Creditors and holders of Equity Interest is set forth in the Liquidation Analysis. In a liquidation or sale, the Debtors believe the value of the Nilhan Property, the OGP Property, and the Debtors' personal property combined will not exceed the dollar amount of claims secured by such property.  Moreover, even if the value of the Debtors' property does exceed the dollar amount  of Allowed Claims secured by such property, and there are funds to distribute to Unsecured  Claim Holders, Nilhan Financial's deficiency claim could be as much as

$33,000,000.00, and, as such, the pool of Allowed Unsecured Claims would be significantly increased and the *pro rata* dividend to such Class 9 Claim Holders will be greatly diminished, possibly to $0.00. Accordingly, the Debtors believe that liquidation of all real and personal property of the Debtors in a Chapter 7 scenario would dramatically reduce the total amount available to Creditors.

## V.    CONCLUSION

The Debtors recommend that Holders of Claims and Interests vote to accept the Plan.

**RESPECTFULLY SUBMITTED**.

/s/ Kenneth D. Herron, Jr.
Kenneth D. (Chip) Herron, Jr.
Florida Bar No. 699403
Wolff, Hill, McFarlin & Herron, P.A.
1851 W. Colonial Dr.
Orlando, FL 32804
Telephone: (407) 648-0058
Fax: (407) 648-0681
Email: kherron@whmh.com