**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re                                                    **CASE NO. 6:15-bk-03448-KSJ**

**ORLANDO GATEWAY PARTNERS, LLC,**     **CHAPTER 11**

                Debtor.

————————————————/

**DISCLOSURE STATEMENT FOR NILHAN HOSPITALITY, LLC,**
**AND ORLANDO GATEWAY PARTNERS, LLC,**
**SUBMITTED BY SUMMITBRIDGE NATIONAL INVESTMENTS IV LLC**


COUNSEL FOR PLAN PROPONENT

RICHARD A. ROBINSON, ESQ.
REED SMITHLLP
1201 NORTH MARKET STREET
SUITE 1500
WILMINGTON, DE 19801



September 18, 2015

US_ACTIVE-123699138.1-JBLORD

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re                                                    CASE NO. 6:15-bk-03448-KSJ

**ORLANDO GATEWAY PARTNERS, LLC,**    CHAPTER 11

      Debtor.

_____/

**DISCLOSURE STATEMENT FOR NILHAN HOSPITALITY, LLC,**
**AND ORLANDO GATEWAY PARTNERS, LLC,**
**SUBMITTED BY SUMMITBRIDGE NATIONAL INVESTMENTS IV LCC**

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of § 1125 of Title 11 of the United States Code (the "Bankruptcy Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case to make informed judgments about the Plan of Reorganization for Nilhan Hospitality, LLC ("Nilhan") and Orlando Gateway Partners, LLC[1] ("OGP"; and together with Nilhan, the "Debtors") (the "Plan") submitted by interested party SummitBridge National Investments IV LLC ("SummitBridge" or the "Plan Proponent"). The Plan and Disclosure Statement are being filed in the bankruptcy cases of both Nilhan and OGP. The Plan Proponent is soliciting votes to accept the Plan. The Plan is intended to facilitate a prompt sale of the Debtors' property and prompt distributions to Holders[2] of Claims. The Plan has been structured in a manner to maximize recoveries to Stakeholders. The Plan avoids potential delays in making distributions to Creditors that would otherwise likely result from protracted litigation that is pending involving the Debtors. The Plan Proponent believes that the Plan provides the best means currently available for the administration of the Debtors' bankruptcy cases and the best

---

[1] Nilhan is a Chapter 11 debtor in bankruptcy case no. 6:15-bk-03448-KSJ, and is an affiliate and insider of OGP.
[2] Capitalized terms used in this Disclosure Statement shall have the definitions ascribed to them in the Plan. Unless otherwise defined herein.

recoveries available for holders of claims and interests against the Debtors, and thus strongly

recommends that you vote to accept the Plan.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE PLAN IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESSES AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE PLAN PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE PLAN PROPONENT'S CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS**

**THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

As prescribed by the Bankruptcy Code and the Rules, Claims asserted against, and equity Interests in, the Debtors are placed into "Classes." The Plan designates ten (10) separate classes of Claims and Interests. The Plan contemplates paying these Claims, as more fully set forth below. The Plan also provides that as of the Effective Date of the Plan the Debtors' respective assets and liabilities will be substantively consolidated.

**Interested parties should not be exposed to the risk that Confirmation and the administration of the Bankruptcy Cases are delayed while the Debtors, Nilhan Financial, Good Gateway and SEG engage in protracted litigation. Absent a prompt sale, all creditors and interested parties will be exposed to the risk that the Debtors' Real Property deteriorates while the Debtors, Nilhan Financial, Good Gateway and SEG continue to litigate. Under such a scenario, Creditors and the Estates are further exposed to the risk of expensive, protracted Bankruptcy Cases. The prompt sale of the Debtors' Real Property and the prompt distributions contemplated by the Plan eliminates these concerns and risks.**

**Accordingly, under the Plan, on the Effective Date, the Plan Representative (who is identified in Exhibit A of the Plan) shall engage a broker for purposes of marketing the Debtors' Real Property on behalf of the Estates and sending the Sale Procedures (attached to the Plan as Exhibit B) to (i) all known creditors and parties that have entered appearances in the Bankruptcy Cases and (ii) any individual or entity that has expressed**

interest in acquiring any Property of the Estates including, without limitation, the Debtors' Real Property.  The Debtors' assets will be sold at an Auction that will be conducted pursuant to the Sale Procedures and the Auction Date shall occur on a date that is not more than sixty-five (65) days after the Effective Date.  At the Auction, no bid will be accepted unless it provides a Cash payment at the Closing adequate to pay the Class 2 Claim of SummitBridge in full.  SummitBridge shall be entitled to credit bid its entire Class 2 Claim at the Auction.  Nilhan Financial, Good Gateway and SEG may be permitted to credit all or a portion of their Claims only if, at least thirty (30) days prior to the Auction Date, one or more of Nilhan Financial, Good Gateway or SEG, as applicable, obtain entry of an order from the Bankruptcy Court authorizing any such credit bid and the extent that they may credit bid their Liens and Claims in connection with the Auction and the Sale. Notwithstanding anything to the contrary, any such credit bid by Nilhan Financial, Good Gateway or SEG, or any other bids in connection with the Sale (except for a credit bid submitted by SummitBridge) shall provide for the full payment of the Class 2 Claim of SummitBridge in Cash on the Closing Date of the Sale.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtors are altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the Plan.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

---

**VOTING DEADLINE**

The last day to vote to accept or reject the Plan is _____, 2015. All votes must be received by the voting agent by 5:00 p.m. (EST) on that day.

---

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail in Section III of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court will schedule a hearing to consider whether the Plan complies with those requirements (the "Confirmation Hearing").

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in this Disclosure Statement, the Plan Proponent has expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

## I.   DESCRIPTION OF DEBTORS' BUSINESSES

**THIS FOLLOWING SECTION OF THE DISCLOSURE STATEMENT IS TITLED "DESCRIPTION OF DEBTORS' BUSINESSES."  THE TEXT THAT FOLLOWS IS QUOTED VERBATIM, EXCEPT WHERE OTHERWISE INDICATED BY A BRACKETED ADDITION OF WORDS, FROM THE DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125 FOR PLAN OF REORGANIZATION FOR NILHAN HOSPITALITY, LLC AND ORLANDO GATEWAY PARTNERS, LLC SUBMITTED BY GOOD GATEWAY, LLC AND SEG GATEWAY, LLC. (DOC. NOS. 75 (NILHAN); DOC. NO. 65 (OGP)).  SUMMITBRIDGE, THE PLAN PROPONENT, DID NOT DRAFT THIS LANGUAGE AND, ACCORDINGLY, MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING ITS ACCURACY.  ACCORDINGLY, THE FOREGOING INDENTED AND BOLD LANGUAGE SHALL NOT CONSTITUTE A REPRESENTATION OR ADMISSION OF SUMMITBRIDGE OF ANY SORT WHATSOEVER.**

> **A.   In General.**
>
> **OGP was formed on or around August 16, 2007, for the purpose of acquiring**
>
> **and developing that certain real property generally located at the northwest**

corner of The Beachline Expressway (SR 528) and Semoran Boulevard (SR 436), Orlando, Florida, originally consisting of approximately 60 acres (the "Original Property"). OGP's development efforts for the Original Property involved a multi-phase, mixed use development featuring hotels, Class "A" office space, boutique retail, restaurants and luxury apartments, which is commonly referred to as the Orlando Gateway Project (the "Project"). In 2009, as set forth in more detail below, OGP "sold" two parcels of the Original Property to Nilhan. The portion of the Original Property that is still currently owned by OGP (the "OGP Property") consists of four separate parcels (nos. 28-23-30- 6331-00-010; 28-23-30-6331-00-040; 28-23-30-6332-01-000; and 28-23-30-6332-02-000). One parcel (approximately 17 acres) has been partially developed, with a portion of it leased to Sixt Rent-A-Car, LLC. A small parcel (approximately 0.14 acres) is rented to Clear Channel Worldwide and contains a billboard. The remaining two parcels (approximately 10.75 and 20.10 acres respectively) are currently vacant and undeveloped commercial properties.

Nilhan is a Florida limited liability company formed on October 26, 2009, with its principal place of business located at 17885 Collins Avenue, Unit 4001, Sunny Isles Beach, Florida. In 2009, OGP transferred to Nilhan approximately 15.75 acres of the Original Property located near the Orlando International Airport on the West side of South Semoran Boulevard and North of the State Road 528/The Beachline Expressway (the "Nilhan Property"). The Nilhan Property consists of two separate parcels (numbers 28-23-30-6332-02-002 and 28-23-30-6332- 02-003). One parcel (approximately 7.27 acres), which was one

of the most valuable parcels of the Original Property, has been partially developed and has two buildings located at 5463 Gateway Village Circle and 5475 Gateway Village Circle, which are approximately 15,000 square feet in size. The buildings are used as retail space and are leased to tenants including Bonefish Grill, Carraba's Italian Grill, International House of Pancakes, Ari Hibachi and Sushi Japanese Restaurant, and a nail and hair salon. The second parcel (approximately 8.47 acres) is vacant.

Nilhan's manager is Chittranjan "Chuck" Thakkar ("Thakkar"), who also owns 70% of the Nilhan's outstanding membership interests, and who indirectly owns and controls OGP. The other two equity owners of Nilhan are Niloy Thakkar and Rohan Thakkar, who each hold a 15% membership interest, respectively. Thakkar is also the principal and/or representative several non-debtor entities, including but not limited to: (i) Niloy & Rohan, LLC ("Niloy"), a Georgia limited liability company; (ii) Orlando Gateway, LLC, a Georgia limited liability company ("OG"); (iii) Nilhan Financial, LLC ("Nilhan Financial"), a Georgia limited liability company; (iv) NCT Systems, Inc., a Florida corporation ("NCT"); (v) and Niloy, Inc., a Georgia corporation doing business as DCT Systems, Inc. and/or "DCT" ("Niloy, Inc." and/or "DCT"). OGP's membership interests are held by the Thakkar controlled and owned entities NCT (45%) and Niloy (55%).

B.    Reasons for Bankruptcy Filing.

The Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] believe the Debtors both filed their Chapter 11 petitions to prevent

the Nilhan Property and the OGP Property (together, the "Debtors' Real Property") from being sold at judicial foreclosure sales. The background of the events leading up to the judicial foreclosure sales is helpful to provide context for the Debtors' bankruptcy filings and the Plan.

On March 27, 2009, OGP transferred the Nilhan Property to Nilhan for $7,500,000.00, which sale was financed by BB&T (the "Nilhan Sale"). Nilhan granted BB&T a first-priority mortgage lien on the Nilhan Property as security for the BB&T loan in the amount of $7,989,614.00 (the "BB&T Loan"). (BB&T's mortgage debt has since been assigned to SummitBridge National Investments IV, LLC "Summit"). Upon information and belief, the purpose of the Nilhan Sale was for Thakkar to deprive Good Gateway of its ownership interest in the Nilhan Property without providing it any compensation. At the time of the Nilhan Sale, OGP's membership was comprised of SEG and Niloy, and SEG consisted of two (2) members— Good Gateway and OG. The Nilhan Sale was conducted without Good Gateway's consent or approval, in violation of OGP and SEG's respective operating agreements. The Nilhan Property was and remains one of the, if not the, most valuable portions of the Original Property.

Additionally, as part of the Nilhan Sale, Nilhan Financial, which acquired a $24,262,052.00 mortgage on the Original Property from Georgian Bank on August 22, 2008, released its mortgage rights regarding the Nilhan Property, but did not reduce the amount of the mortgage remaining on the rest of the Original Property (i.e., the OGP Property). Later, on December 1, 2012, Nilhan

financial allegedly provided additional financing to OGP secured by the OGP Property, upping the amount of its mortgage debt encumbering the properties to $32,314,409.69. However, the Debtors have provided no evidence that these additional sums were actually lent. Moreover, the Debtors have provided no evidence that OGP ever made interest payments on the Nilhan Financial debt, and Thakkar regularly characterized this "debt" as equity on OGP's books and records.

As soon as Good Gateway discovered the Nilhan Sale, it objected and raised concerns over the circumstances surrounding the transfer. OG, Niloy, Nilhan Hospitality, Niloy, Inc., and Thakkar all represented to Good Gateway that the improper Nilhan Sale would be unwound and restructured, and Good Gateway's rights and interest in the Nilhan Property would be restored or reinstated. Ultimately, however, title to the Nilhan Property was never transferred back to OGP and it remains titled in Nilhan's name, as reflected on Nilhan's Schedules.

On July 10, 2010, because Good Gateway's rights in the Nilhan Property were never actually restored as promised, Good Gateway filed a complaint commencing the litigation styled *Good Gateway, LLC v. Orlando Gateway Partners, LLC, et al.*, Case No. 2010-CA-015315-O (Division 43) (the "State Court Litigation"), in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "State Court"). In 2012, SEG filed its Cross Claims in the State Court Litigation against the Debtors, Thakkar, and Nilhan Financial, among others.

On March 5, 2013, while the State Court Litigation was pending, Nilhan refinanced the BB&T Loan and executed an Amended and Restated Secured Promissory Note in the amount of $3,200,000.00 in favor of BB&T (the "Restated BB&T Note"), and that certain Real Estate Note in the amount of $3,000,000.00. Also on March 5, 2013, the 2009 mortgage in favor of BB&T was modified, as Nilhan executed a Mortgage, Assignment of Rents and Security Agreement in favor of BB&T. Finally, the same day, OGP executed a Mortgage, Assignment of Rents and Security Agreement dated March 5, 2013, for the alleged purpose of providing BB&T additional collateral for the Restated BB&T Note, and a Hypothecation Agreement pursuant to which OGP apparently pledged the entirety of the OGP Property as collateral for the repayment of the entire amount of the original BB&T Loan ($7,989,615.00).

In fall 2014, and after a jury trial, the State Court Litigation resulted in three judgments entered in favor of the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] totaling in excess of $15 million against the Debtors, Thakkar individually, Niloy, and NCT (collectively, the "Judgments"). The jury in the State Court Litigation found the following: (i) the Debtors, Thakkar, NCT, and Niloy were jointly and severally liable to SEG for $12,000,000.00 on the tort claims of: (a) breach of fiduciary duty; (b) tortious interference; (c) civil conspiracy; (d) conversion, and (e) constructive fraud; (ii) OGP and Niloy were also jointly and severally liable to SEG for breach of contract, as such $3,376,435.58 in prejudgment interest was attached to the $12,000,000.00 verdict; and (iii) Thakkar, the Debtors, Niloy and NCT

were jointly and severally liable to Good Gateway for $2,500,000.00 on the tort claims of: (a) breach of fiduciary duty; (b) tortious interference; (c) civil conspiracy; (d) conversion, and (e) constructive fraud.

On October 3, 2014, the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] filed certified copies of the Judgments in the public records for Orange County, Florida. Although the Judgments were timely appealed—*Orlando Gateway Partners, LLC, etc. et al. v. SEG Gateway, LLC, etc., et al.*, Case No. 5D14-3962; *Chittranjan K. Thakkar, an Individual, et al. v. Good Gateway, LLC, etc., et al.,* Case No. 5D14-3964, both pending in the Fifth District Court of Appeal for the State of Florida (together, the "Appeals")—a stay of execution was not obtained, and the State Court issued a writ of execution. The Orange County Sheriff levied on the Debtors' Real Property and scheduled an execution sale for April 21, 2015. The Debtors' bankruptcy petitions were filed on the day before the scheduled Sheriff's sale, April 20, 2015 (the "Petition Date").

On February 25, 2015, Nilhan Financial filed its Complaint in the State Court against OGP and the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG], among others, seeking to foreclose on the OGP Property (Case No. 2015-CA-001815-O (Division 32)) (the "Foreclosure Litigation"). Nilhan Financial did not seek to sequester rents or appoint a receiver over OGP. On April 16, 2015, the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] filed an Answer, Affirmative Defenses & Counterclaim against the Debtors and Nilhan Financial. Although

OGP never filed an answer in the Foreclosure Litigation, Nilhan Financial has never moved for entry of a default against OGP.

Prior to the Petition Date, the Debtors' other secured creditor, BB&T/Summit, had taken no actions to collect or foreclose on the Debtors' Real Property.

###     C.    Events After the Petition Date.

On May 7, 2015, the Debtors filed their Application to Retain Kenneth D. Herron, Jr. as their counsel in their respective bankruptcy cases (Doc. Nos. 22 (Nilhan); Doc. No. 18 (OGP)).[3] On June 8, 2015, the Bankruptcy Court approved Mr. Herron's retention (Doc. Nos. 30; 33).

On May 14, 2015, the Debtors filed their respective Schedules (Doc. Nos. 25; 22). The Schedules state the value of the Nilhan Property is $7,749,270.00 and the value of the OGP Property is $9,184,163.00.

On May 18, 2015, the US Trustee conducted the initial § 341 meeting of creditors for both Debtors, which was continued to June 8, 2015, then continued to June 22, 2015, and finally concluded on July 6, 2015. During the various § 341 meetings, Thakkar testified that the transfer of the Nilhan Property had been "rescinded," but that title to the Nilhan Property still remains with Nilhan.

On May 27, 2015, the Debtors filed their Motions for Relief from the Automatic Stay (Doc. Nos. 27; 26), with the consent and agreement of the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG], seeking relief from stay to allow the Appeals of the Judgments to go forward.

---

[3]  All subsequent docket entry numbers will refer to Nilhan's case first, OGP's second.

On June 2, 2015, the Bankruptcy Court granted the Motions for Relief from Stay (Doc. Nos. 28; 26).

On June 8, 2015, the United States Trustee's office filed its Motion to Dismiss Case with Two-Year Injunction, or to Convert Case to Chapter 7 (Doc. Nos. 31; 32) (the "Motion to Dismiss").

On June 15, 2015, the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] filed their Motion to Appoint Chapter 11 Trustee and Memorandum of Law in both of the Debtors' bankruptcy cases (Doc. Nos. 37; 35) (the "Trustee Motions"). The Trustee Motions sought the appointment of an independent trustee to operate the Debtors' businesses during the pendency of these Bankruptcy Cases due to the mistrust between the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] and Thakkar, who was still managing and controlling both Debtors, and the evidence of abuse of the legal system and mismanagement of the Debtors' books and records.

On June 16, 2015, the Debtors filed their Application to Retain Larry S. Hyman, CPA, as Restructuring Advisor and Chief Restructuring Officer (Doc. No. 38; 36) (the "Hyman Application"). The same day, the Debtors also filed their Emergency Motions to Use Cash Collateral (Doc. No. 39; 37) (the "Cash Collateral Motions").

On June 17, 2015, the Bankruptcy Court held its initial status conference in both Bankruptcy Cases. At the hearing, the Court directed the parties to attend a mediation settlement conference on or before July 23, 2015. The Court also set for a final evidentiary hearing on July 27, 2015 (i) the Motion to Dismiss, (ii)

the Trustee Motions, (iii) the Hyman Application, and (iv) the Cash Collateral Motions.

On July 7, 2015, the Debtors filed their Motions for Substantive Consolidation, with Memorandum of Law in Support (Doc. No. 46; 42) (the "SubCon Motions"), seeking the substantive consolidation of Nilhan and OGP.

On July 10, 2015, the Debtors filed their Notice of Removal of the State Court Litigation, *the business day before* the State Court was scheduled to hear and rule on the Plan Proponents' [with respect to the Alternative Plan, Good Gateway and SEG] Motion for Fees and Costs Pursuant to Court Orders, filed on October 1, 2014 (e-filing no. 18874855), and their Motion to Tax Costs filed on March 2, 2015 (e-filing no. 24383179). The Notices of Removal filed by the Debtors initiated Adversary Proceeding Numbers 6:15-ap-00083-KSJ (in the Nilhan Hospitality case), and 6:15-ap-00084-KSJ (in the OGP case) (together, the "Removed Actions").

On July 17, 2015, the U.S. Trustee's office filed its (i) Motion for Disqualification of Kenneth D. Herron Jr. and Wolff, Hill, McFarlin & Herron, P.A. as Counsel for the Debtors (Doc. Nos. 50; 48), (ii) Objection to the SubCon Motions (Doc. Nos. 51; 49), and (iii) Objection to the Hyman Application (Doc. Nos. 52; 50).

On July 21, 2015, the Debtors, the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG], and Nilhan Financial attended a mediation settlement conference mediated by Mr. Harley Riedel. The mediation ultimately reached an impasse.

At the July 27th final evidentiary hearing, the parties to the mediation announced their agreement (i) for the Debtors to withdraw the Hyman Application; (ii) for the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] to withdraw their Trustee Motions, (iii) to move jointly *ore tenus* to terminate exclusivity (which was granted in open court), (iv) for the Debtors to file an application to retain Terry Soifer as Chief Restructuring Officer, and (v) to the entry of an order allowing any party in interest to file a written objection to the Bankruptcy Court having jurisdiction over the issues raised in the Removed Actions, including the trial of all post-judgment matters and supplementary proceedings, and further providing that if any party timely objects, then the Removed Actions will be remanded to the State Court. Also at the July 27th hearing, the U.S. Trustee consented to the denial of its Motion to Dismiss.

The next day, July 28, 2015, the Debtors filed their Application to Retain Terry Soifer as Chief Restructuring Officer.

On August 12, 2015, the Bankruptcy Court entered its Order Denying the Motion to Dismiss (Doc. Nos. 64; 61), its Order Granting Joint Ore Tenus Motion to Terminate Exclusivity (Doc. Nos. 65; 59), and its Agreed Order on Jurisdictional Issues (Doc. No. 8 in Adv. Pro. No. 6:15-ap-00083-KSJ; Doc. No. 53 in Adv. Pro. No. 6:15-ap-00084-KSJ), allowing any party to file an objection to the Bankruptcy Court's exercise of jurisdiction over the Removed Actions within fourteen (14) days of entry of the Order.

Along with the filing of [its] Disclosure Statement and [Alternative] Plan, the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG have filed] an adversary complaint [seeking] (i) to re-characterize the Nilhan Financial loan as equity, (ii) a determination that the Nilhan Financial mortgage has terminated under Fla. Stat. § 95.281(a), and (iii) to subordinate any allowed secured claim of Nilhan Financial to the judgment liens of the Plan Proponents [with respect to the Alternative Plan, Good Gateway and SEG] (the "Nilhan Financial Adversary"). The [Alternative] Plan provides for alternative treatment of Nilhan Financial's potential claims based on the possible outcomes of the Nilhan Financial Adversary.

In addition to the Nilhan Financial Adversary, the Plan Proponents [with respect to the Alternative Plan] believe the Reorganized Debtor has causes of action against Thakkar (i) under Chapter 5 of the Bankruptcy Code, including for fraudulent transfers, (ii) for breach of fiduciary duty, (iii) for conversion, and (iv) for lender liability (collectively, the "Causes of Action").

## II.    <u>THE PLAN</u>

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A.    <u>Overview</u>.

All Claims against the Debtors are classified and treated pursuant to the terms of the Plan. As detailed more fully below, the Plan contains a total of ten (10) Classes of Claims and Interests as follows: seven (7) Classes of Allowed Secured Claims; two (2) Classes of

Allowed Unsecured Claims; and one (1) Class of Interests. There are eight (8) Classes of Impaired Claims that are entitled to vote on the Plan, and two (2) Classes of Unimpaired Claims that are deemed by operation of the Bankruptcy Code to accept the Plan (Classes 4 and 6).

      B.     <u>Classification and Treatment of Claims.</u>

      1.     <u>Administrative and Priority Tax Claims.</u>

      a.     <u>Administrative Claims</u>. Holders of all Allowed Administrative Expense Claims of the Debtors shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. However, nothing in this provision of the Plan shall preclude the Plan Representative from paying any holder of an Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms. The Allowed Administrative Claims shall be paid from cash on hand. The Plan Proponent estimates Administrative Claims to be approximately $75,000.00.

      b.     <u>Priority Tax Claims</u>. Except to the extent that the Holder and the Plan Representative have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall be paid in full within thirty (30) days of the Effective Date. Allowed Priority Tax Claims, which do not include Secured Claims for real property taxes, will be paid in full on the Effective Date or on the date such Priority Tax Claim becomes Allowed. The filed amount of Priority Tax Claims is approximately $0.00.

      2.     <u>Secured Claims.</u>

      a.     <u>Class 1 - Allowed Secured Claims of Good Gateway and SEG</u>. Class 1 consists of the Allowed Secured Claims of the Good Gateway and SEG, respectively, that are

allegedly secured by judgment liens on the Debtors' Real Property and all personal property owned by the Debtors that is subject to execution. The Allowed Amount of the Class 1 Claims shall be as determined in connection with the Appeals and by the Subordinate Lienholders Priority Determination.  In full satisfaction of their Allowed Class 1 Claims, Good Gateway and SEG shall receive payment of its Allowed Class 1 Claim from Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of all Class 2 Claims to the extent that the Bankruptcy Court determines an entitlement to such funds, if any, in connection with the Subordinate Lienholders Priority Determination.  Payments, if any, shall not commence, until after the Subordinate Lienholders Priority Determination. The Holders of Class 1 Claims have asserted judgments against the Debtors in excess of $15,000.000.   There are appeals pending with respect to the Judgments.   The Plan Proponent is unable to access the likely outcome of the Appeals at this time.

        b.      <u>Class 2 – Allowed Secured Claim of SummitBridge</u>. Class 2 consists of the Allowed Secured Claim of SummitBridge in the amount of $5,634,236.94 (plus additional principal interest and fees) which is secured by first priority Liens on the Debtors' Real Property and other property that shall not, on or after the Confirmation Date, be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection or any other challenges under any applicable law or regulation by any person or entity. Upon entry of the Confirmation Order, the Class 2 Claim shall be an Allowed Secured Claim in the amount of not less than $5,634,236.94 that is secured by a first priority lien on the Real Property and all of the Property of the Estates.  In full satisfaction of its Class 2 Claim, on the Closing Date, the Debtors' Real Property and Property of the Estates (excluding Cash in the

Estates' accounts to the extent necessary to pay existing Administrative Claims) shall be transferred to SummitBridge in exchange for a credit bid of its Allowed Claim, or if the Sale results in a bid higher than the Allowed Secured Claim of SummitBridge, then SummitBridge shall be paid in Cash, on the Closing Date, from the Proceeds of the Sale the full amount of its Allowed Secured Claim.  SummitBridge shall retain its Lien until full payment of its Allowed Claims, but shall be stayed, except as set forth herein, from enforcing its rights and remedies on account or its Allowed Secured Claim available under applicable state law until the Auction Date.

c.      Class 3 – Orange County Tax Collector (Nilhan) - 2014. Class 3 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2014 tax year. In full satisfaction of its Class 3 Claim, the Orange County Tax Collector shall receive full payment to be paid on the Closing Date from the Proceeds of the Sale.  Until the Closing Date, the Orange County Tax Collector shall be stayed from exercising its rights and remedies under applicable law.

d.      Class 4 – Orange County Tax Collector (Nilhan) - 2015. Class 4 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2015 tax year. In full satisfaction of its Class 4 Claim, the Orange County Tax Collector shall retain its statutory lien on the Nilhan Property, and shall be paid in the ordinary course of business by the Purchaser when such taxes are assessed in 2016.

e.      Class 5 – Orange County Tax Collector (OGP). Class 5 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes

owed by OGP related to the OGP Property for the 2014 tax year. In full satisfaction of its Class 5 Claim, the Orange County Tax Collector shall receive full payment to be paid on the Closing Date from the Proceeds of the Sale. Until the Closing Date, the Orange County Tax Collector shall be stayed from exercising its rights and remedies under applicable law.

    f. <u>Class 6 – Orange County Tax Collector (OGP) – 2015</u>. Class 6 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2015 tax year. In full satisfaction of its Class 6 Claim, the Orange County Tax Collector shall retain its statutory liens on the OGP Property, and shall be paid in the ordinary course of business by the Purchaser when such taxes are assessed in 2016.

    g. <u>Class 7 – Nilhan Financial, LLC</u>. Class 7 consists of the Allowed Secured Claim of Nilhan Financial, if any, as such Claim is subject to the Nilhan Financial Adversary. The Claim of Nilhan Financial is allegedly secured by a first priority mortgage lien on the OGP Property in an amount exceeding $33,000,000.00. However, the Nilhan Financial Adversary is challenging the validity, extent, and priority of Nilhan Financials mortgage debt, and further seeks to equitably subordinate any Allowed Secured Claim of Nilhan Financial to the Class 1 Claims of Good Gateway and SEG.  In full satisfaction of their Allowed Class 7 Claims, Nilhan Financial shall receive payment of its Allowed Class 7 Claims from Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of the Class 2 Claims to the extent that the Bankruptcy Court determines entitlement to such funds, if any, in connection with the Subordinate Lienholders Priority Determination.  Payments, if any, shall not commence until after the Subordinate Lienholders Priority Determination.  The Plan Proponent is unable to assess the likely outcome of the Nilhan Financial Adversary at this time.

3.    <u>Unsecured Claims</u>.

   a.    <u>Class 8 – Allowed Unsecured Administrative Convenience Claims</u>.

Class 8 consists of Allowed Unsecured Claims that expressly elect to be included in Class 8 by indicating on the Ballot that the amount of their Claim is less than $100,000 or that they agree to reduce their Claim to $100,000 (the "Convenience Claim Amount") and to accept a distribution of fifty percent (50%) of the Convenience Claim Amount to be paid by SummitBridge within seventy-five days (75) of the Effective Date.  The foregoing election shall be available to the Holders of all Allowed Unsecured Claims (including Claims held by Nilhan Financial, Good Gateway and SEG, if any) on or prior to the deadline for submitting the Ballot with respect to the Plan, but a Holder of an Allowed Unsecured Claim may only elect to have all (and not merely a portion) of its Allowed Unsecured Claims to be treated as a Class 8 Claim.  If Creditors holding Allowed Unsecured Claims in the Convenience Claim Amount of more than $300,000 (in the aggregate) make the election to be treated as Unsecured Administrative Convenience Claims, than the Holders of Allowed Unsecured Convenience Claims shall share Pro Rata the amount of $150,000; provided, however, that under no circumstances shall a Holder of a Class 8 Claim be entitled to receive more than fifty percent (50%) of either its Allowed Unsecured Claims or the Convenience Claim Amount.  In the event that the Bankruptcy Court determines that the classification or treatment of Allowed Unsecured Claims contemplated for Class 8 renders the Plan unconfirmable under section 1129 of the Bankruptcy Code, then the establishment of Class 8 under the Plan and the sections of the Plan concerning Class 8 shall be automatically deleted from the Plan and deemed null and void and all Allowed Unsecured Administrative Convenience Claims shall be treated as Class 9 Claims to the full extent of their Allowed Unsecured Claims.

b.      Class 9 – Allowed Unsecured Claims. Class 9 consists of the Allowed Unsecured Claims (including, any deficiency Unsecured Claims of Nilhan Financial, Good Gateway and SEG) that have not expressly elected to be included in Class 8 on the Ballot. In full satisfaction of Allowed Class 9 Claim, the Holders thereof shall receive Pro Rata distribution of the Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of all Class 2 Claims, and Class 1 and 7 Claims (to the extent required or otherwise provided by the Subordinate Lienholders Priority Determination).

4.      Equity Interests

a.      Class 10 – Equity in the Debtors.  Class 10 consists of any and all membership interests currently issued or authorized in the Debtors. In full satisfaction of the Allowed Class 10 Interests, the holders thereof shall receive Pro Rata the Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of all Allowed Class 2 Claims, and Class 1, 7 and 9 Claims (to the extent required or otherwise provided by the Subordinate Lienholder Priority Determination).  All Class 10 membership interests shall be extinguished. Further, on the Effective Date, the assets and liabilities of the Debtors will be substantively consolidated.

C.      Means of Implementation.

a.      The Sale Process. The Plan is designed to facilitate a prompt sale of the Debtors' Real Property and prompt distributions to Holders of Allowed Claims.  Interested parties should not be exposed to the risk that Confirmation and the administration of the Bankruptcy Cases are delayed while the Debtors, Nilhan Financial, Good Gateway and SEG engage in protracted litigation.

Absent a prompt sale, all creditors and interested parties will be exposed to the risk that the Debtors' Real Property deteriorates while the Debtors, Nilhan Financial, Good Gateway and SEG continue to litigate.  Under such a scenario, Creditors and the Estates will be further exposed to the risk of expensive, protracted Bankruptcy Cases.  The prompt sale of the Debtors' Real Property with the prompt distribution contemplated by the Plan eliminates these concerns.

Accordingly, on the Effective Date, the Plan Representative shall engage the Broker for purposes of marketing the Debtors' Real Property on behalf of the Estates and to send the Sale Procedures to (i) all known creditors and parties that have entered appearances in the Bankruptcy Cases and (ii) any individual or entity that has expressed interest in acquiring any Property of the Estates including, without limitation, the Debtors' Real Property.  The Auction will be conducted pursuant to the Sale Procedures and the Auction Date shall occur on a date that is not more than sixty-five (65) days after the Effective Date.  At the Auction, no bid will be accepted unless it provides a Cash payment at the Closing adequate to pay the Class 2 Claim of SummitBridge in full.  SummitBridge shall be entitled to credit bid its entire Class 2 Claim at the Auction.  Nilhan Financial, Good Gateway and SEG may be permitted to credit all or a portion of their claims only if, at least thirty (30) days prior to the Auction Date, one or more of Nilhan Financial, Good Gateway or SEG, as applicable, obtain entry of an order from the Bankruptcy Court authorizing any such credit bid and the extent that they may credit bid, their Liens and Claims in connection with the Auction and the Sale.  Notwithstanding anything to the contrary, any such credit bid by Nilhan Financial, Good Gateway or SEG, or any other bids in connection with the Sale (except for a credit bid submitted by SummitBridge) shall provide for the full payment of the Class 2 Claim of SummitBridge in Cash on the Closing Date.

Between the Confirmation Date and the Closing Date, Terry Soifer shall continue to perform the services that he is performing for the Debtors as Chief Restructuring Officer and shall be compensated in accordance with the current Bankruptcy Court approved arrangement. Mr. Soifer shall have no direct responsibilities in connection with the consummation of the Plan other than to cooperate with the Plan Representative in connection therewith and to provide any support requested by the Plan Representative.  The Plan Representative will be responsible for consummating the Plan and the Sale.   The reasonable fees and expenses of the Plan Representative and the Chief Restructuring Officer will be entitled to priority over all other claims as costs of administration and they will each be entitled to hold reasonable retainers.

b.      <u>Funds Generated During Chapter 11 and Prior to the Closing Date</u>. Funds generated from operations until the Closing Date will be used for Plan Payments and for general operations; however, the Debtors' cash on hand as of Confirmation Date and the Closing Date shall be available for Administrative Expenses.

c.      <u>Management and Control of the Debtor and Administration of the Plan</u>. The Debtors' assets are being sold pursuant to the Plan.  After the Effective Date, the consummation of the Plan shall be the responsibility of the Plan Representative.  His fees will be paid from the Debtors' Cash on hand and operating revenue and shall be entitled to payment prior to any other Claims.

d.      <u>Extinguishment of Membership Interests and Substantive Consolidation</u>. On the Effective Date, the membership Interests in the Debtors shall be extinguished and the assets of the Debtors shall be substantively consolidated.  Notwithstanding the foregoing, the substantive consolidation of the Estates shall not be a condition to the Effective Date and, the

Plan Proponent in its discretion, may seek to confirm and consummate the Plan even absent substantive consolidation of the Estates.

e.   Establishment of Class 8 for Administrative Convenience. The Bar Date in the Bankruptcy Cases for all interested parties (other than governmental units) was August 3, 2015.   Other than SummitBridge, Nilhan Financial, Gateway and SEG and certain taxing authorities, there was only one claim filed.  That claim is an Unsecured Claim asserted in the amount of $119,678.91.  Except for the claim of Seito Sushi Celebration, LLC which will be paid, to the extend Allowed, in connection with the assumption and assignment of the applicable unexpired lease, there are no other general unsecured claims that were listed in the Schedules by the Debtors that were not listed as contingent, dispatched or unliquidated.  Accordingly, in an effort to relieve that claimant of the cost, expense and delay of waiting for the Debtors, Nilhan Financial, Good Gateway and SEG to conclude their litigation and as a matter of administrative convenience for the Bankruptcy Court and other interested parties, pursuant to Section 1122(b) of Bankruptcy Code, the Plan Proponent has established a Class of Allowed Unsecured Administrative Convenience Claims.  The Plan Proponent believes that Class 8 will, if a timely Class 8 election is made, provide administrative convenience (for the Bankruptcy Court and all interested parties) insofar it may relieve interested parties from administrative burdens associated with having relatively small creditors involved in the Bankruptcy Cases and may relieve Creditors other than Nilhan Financial, Good Gateway and SEG of the need to be involved in the administration of these Bankruptcy Cases after the Closing Date.

f.   Procedures For Resolving Disputed Claims.

1.   Prosecution of Objections to Claims. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, any

party in interest shall have the right to make and file objections to all Claims prior to the Effective Date, and the Plan Proponent and the Plan Representative shall have the exclusive right to make and file objections to Claims after the Confirmation Date; provided, that any party in interest with a claim objection pending as of the Effective Date may continue to prosecute such pending claim objection to final adjudication or other resolution.

Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth herein, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Cases, against or with respect to any Claim or Interest. Except as set forth in the Plan, upon Confirmation the Plan Representative shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Cases as if the Bankruptcy Cases had not been commenced.

2. <u>Estimation of Claims</u>. The Plan Proponent or the Plan Representative may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether any party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any

appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Proponent or the Plan Representative may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.      Cumulative Remedies. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

4.      Payments and Distributions on Disputed Claims. As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Plan Representative such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided herein, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed to by the Plan Representative or as otherwise specifically provided herein, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

5.      Allowance of Claims and Interests.

(i)      Disallowance of Claims. All Claims held by Persons against whom the Plan Representative has obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over to the Plan Proponent.

(ii)      Allowance of Claims. Except as expressly provided herein, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

6.      Controversy Concerning Impairment. If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Plan Proponent's interpretation of the Plan shall govern.

D.      Effect of Confirmation.

a.      Authority to Effectuate the Plan. Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan will be deemed to be authorized and approved without the need for any further approval from the Bankruptcy Court. The Plan Representative shall be authorized, without further application to or order of the

Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

b. <u>Post-Confirmation Status Report</u>. Within 120 days of the entry of the Confirmation Order, the Plan Representative will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan, including a report on the status of the Causes of Action. The status report will be served on the United States Trustee, Holders of Claims, and those parties who have requested special notice. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

c. <u>Preservation, Prosecution and Defense of Causes of Action</u>. Except as set forth herein, upon the Effective Date, the Plan Representative shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtors or the Estates. The Plan Representative shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Plan Representative, and collection; *provided, however*, that the Plan Representative shall be authorized at any point in any litigation (a) to enter into such settlements as the Plan Representative deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Plan Representative deem such action to be in the best interest of creditors without Bankruptcy Court or other approval.

d. <u>Retention of Professionals</u>. The Plan Representative may retain professionals on such terms as the Plan Representative deems reasonable without Bankruptcy

Court approval.

e.      <u>Conditions to Effectiveness</u>. The Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in a form and content acceptable to the Plan Proponent and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; provided, however, that if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Plan Proponent may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

Upon the satisfaction or waiver of the foregoing conditions, the Plan Proponent shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

f.      **<u>Exculpation from Liability</u>. The Plan Proponent, the Plan Representative, their respective members, managers, officers, and directors, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Cases; *provided, however,* that this exculpation from liability provision shall not alter the terms of the Plan (and treatment of creditor claims therein) and shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct**

**or gross negligence of any such party. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Plan Proponent, the Plan Representative, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan, and shall not modify or otherwise affect any other terms of the Plan (including but not limited to the treatment of creditor claim). The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.**

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.**

Notwithstanding the foregoing, (i) the Plan Representative shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan and (ii) the Debtors' respective members, manager or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

g.      Police Power. Nothing in Article VIII of the Plan shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

h.    <u>Revocation and Withdrawal of the Plan</u>. The Plan Proponent reserves the right to withdraw the Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Plan Proponent revokes and withdraws the Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) the Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

i.    <u>Modification of Plan</u>. The Plan Proponent may seek to amend or modify the Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. On or before substantial consummation of the Plan, the Plan Proponent may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

j.    <u>Retention of Jurisdiction</u>. After the Effective Date, the Plan Representative will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in these Bankruptcy Cases to determine or take the following actions:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.     All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtors' cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Plan Representative in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.     Any adversary proceedings or contested matters brought by the Debtors or the Plan Representative, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 1, 7, 8 and 9 Claims, and Class 10 Interests, respectively;

4.     All controversies and disputes arising under or in connection with the Plan;

5.     The enforcement and interpretation of the provisions of the Plan;

6.     To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.     Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.     All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.      To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.      To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.      To hear and determine any action or controversy by or against the Debtors or the Estates.

## III.    CONFIRMATION

A.    Confirmation Hearing.

Section 1128 of the Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

Counsel for the Plan Proponens:
Richard A. Robinson, Esq.
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, Delaware 19801

United States Trustee:
400 W. Washington Street, Suite 1100 Orlando, Florida 32801

B.    Confirmation Standards.

For a plan of liquidation to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of

the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept the plan, that confirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in § 1129 of the Code have been met. The Debtor believes that the Plan satisfies all of the requirements for Confirmation.

1.    <u>Best Interests Test</u>. Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were, on the Effective Date, liquidated under Chapter 7 of the Code. The Plan Proponent believes that satisfaction of this test will be established because of the Sale which is being conducted in an orderly fashion exposes the Debtors' Real Property and other Property of the Estates to the applicable commercial real estate market and is designed to maximize value.

To determine what holders of Claims and Equity Interests would receive if the Debtors were liquidated in Chapter 7, the Bankruptcy Court must determine how the assets and properties of the Debtors would be liquidated and distributed in the context of a Chapter 7 liquidation case. The Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee, plus any unpaid expenses incurred by the Debtors during the Chapter 11

Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in Chapter 7 liquidation could be substantial and would decrease the possibility that Creditors would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 Case as well as Secured Claims would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date on which Creditors would receive any Payment.

The Plan Proponent has carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and Interest Holders, including the following:

a.      the possible costs and expenses of the Chapter 7 trustee or trustees;

b.      the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for Debtors' assets caused by the forced Chapter 7 liquidation; and

c.      the possible substantial increase in Claims that would rank before or on parity with those of Unsecured Creditors.

2.      <u>Financial Feasibility</u>. The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors unless the liquidation is proposed in the Plan.  The Plan contemplates the sale of the Debtors' Real Property in a manner designed to maximize value and accordingly, the Plan Proponent asserts that the Plan is feasible and Confirmation is not likely to be followed by further financial reorganization.

3.     <u>Acceptance by Impaired Classes</u>. The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such Plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under a Plan is deemed to have accepted such Plan, and solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless: (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4.     <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown."</u> The Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a

plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**THE PLAN PROPONENT BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE BANKRUPTCY CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

        D.    <u>Consummation</u>.

        The Plan will be consummated and Plan Payments made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court and the Effective Date occurs.  It will not be necessary to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Bankruptcy Code.

## IV.    <u>ALTERNATIVE TO THE PLAN</u>

        If the Plan is not confirmed and consummated, the Plan Proponent believes a likely alternative is a sale of the Debtors' assets or a liquidation of the Debtor under Chapter 7 or 11 of the Code. In a case under Chapter 7 of the Code, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to Creditors in accordance with the priorities established by the Code.  There would be additional costs, delays and uncertainty. There is a strong likelihood that the sale will not be conducted in an orderly fashion and will not yield market value. Accordingly, the Plan Proponent believes that liquidation of all real and personal

property of the Debtors in a Chapter 7 scenario would dramatically reduce the total amount available to Creditors.

## V.     <u>CONCLUSION</u>

The Plan Proponent recommends that Holders of Claims and Interests vote to accept the Plan.

**DATED** this 18th day of September 2015.

/s/ Richard A. Robinson
**Richard A. Robinson, Esq.**
Florida Bar No. 41238
REED SMITH LLP
1201 North Market Street
Suite 1500
Wilmington, DE 19801
Tel:  (302) 778-7555
Fax:  (302) 778-7575
E-mail:  rrobinson@reedsmith.com

*Counsel for Plan Proponent*