**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re                                                    CASE NO. 6:15-bk-03448-KSJ

**ORLANDO GATEWAY PARTNERS, LLC,**    CHAPTER 11

            Debtor.

_____/

**PLAN OF REORGANIZATION FOR NILHAN HOSPITALITY, LLC,**
**AND ORLANDO GATEWAY PARTNERS, LLC,**
**SUBMITTED BY SUMMITBRIDGE NATIONAL INVESTMENTS IV LLC**

COUNSEL FOR PLAN PROPONENT

RICHARD A. ROBINSON, ESQ.
REED SMITH LLP
1201 NORTH MARKET STREET
SUITE 1500
WILMINGTON, DE 19801

September 18, 2015

US_ACTIVE-123699165.1-JBLORD

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re                                                    CASE NO. 6:15-bk-03448-KSJ

**ORLANDO GATEWAY PARTNERS, LLC,**    CHAPTER 11

       Debtor.

_____/

### PLAN OF REORGANIZATION FOR NILHAN HOSPITALITY, LLC,
### AND ORLANDO GATEWAY PARTNERS, LLC,
### SUBMITTED BY SUMMITBRIDGE NATIONAL INVESTMENTS IV LLC

SummitBridge National Investments IV, LLC ("SummitBridge" or the "Plan Proponent"), by and through its undersigned counsel, hereby proposes the following Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") for Orlando Gateway Partners, LLC ("OGP") and Nilhan Hospitality, LLC ("Nilhan"; and together, the "Debtors").[1]

## ARTICLE I - DEFINITIONS

1.    **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtors' Estates, respectively, and operating the Debtors businesses, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code.

---

[1] Nilhan is Chapter 11 debtor in bankruptcy case no. 6:15-bk-03448-KSJ, and is an affiliate and insider of OGP.

2.    **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.    **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.    **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless

otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.      **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the respective lists of equity security holders prepared and filed by the Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

6.      **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

7.      **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

8.      **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

9.      **Appeals** means the appeals of the Judgments by the Debtors, et al., styled as *Orlando Gateway Partners, LLC, etc., et al. v. SEG Gateway, LLC, etc., et al.,* Case No. 5D14-3962; and *Chittranjan K. Thakkar, an Individual, et al. v. Good Gateway, LLC, etc., et al.,* Case No. 5D14-3964, which are both pending in the Fifth District Court of Appeal for the State of Florida.

10.     **Assets** means each and every item of Property of the Estate and every interest of the Debtors and their respective Estates as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtors, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtors, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtors' respective books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

11.     **Auction** means an auction for the sale of the Debtors' Real Property and all other Property of the Estates to be conducted on the Auction Date pursuant to the Sale Procedures.

12.     **Auction Date** means a date to be established pursuant to the Sale Procedures for the Auction.

13.     **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

14.     **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

15.     **Bankruptcy Cases** means the Debtors' respective bankruptcy cases that are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando

Division, pursuant to Chapter 11 of the Bankruptcy Code, case numbers 6:15-bk-03447-KSJ and 6:15-bk-03448-KSJ.

16.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

17.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Cases are pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

18.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

19.     **Bar Date** means the date fixed in the Bankruptcy Cases as the last date for the filing of Claims in the Bankruptcy Cases.

20.     **Broker** means a licensed real estate broker to be engaged by the Plan Representative on behalf of the Estates as of the Effective Date, for purposes of soliciting offers to sell the Debtors' Real property and any other Property of the Estates in connection with the Auction.  The fees, expenses and commissions to be paid to the Broker shall be due upon the Closing of the Sale solely from and to the extent of the Proceeds of the Sale.

21.     **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

22.     **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

23.     **Causes of Action** means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities,

obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors, including any claims for, breach of fiduciary duty, civil theft, conversion, and for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtors not otherwise approved by the Bankruptcy Court; provided, however, that when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Plan Proponent to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan. In addition to the foregoing, the term Causes of Action shall include the Debtors' causes of action against Thakkar (i) under Chapter 5 of the Bankruptcy Code, including for fraudulent transfers, (ii) for breach of fiduciary duty, (iii) for conversion, and (iv) for lender liability.

24.    **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

25.     **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

26.     **Class 1 Claim, Class 2 Claim, Class 3 Claim, etc.**, shall mean the specific Class into which Claims or Interests are classified pursuant to Article III of the Plan.

27.     **Closing** means the consummation of the Sale.

28.     **Closing Date** means the date of the Closing of the Sale.

29.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

30.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

31.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

32.     **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.   The Confirmation Order (or orders entered substantially contemporaneously therewith) shall, among other things, appoint the Plan Representative to perform the functions contemplated by the Plan, approve the retention of the Broker, approve the form and content of Sales Procedures, set the Auction Date and approve all terms of the Plan.

33.     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

34.     **Convenience Claim** shall have the meaning ascribed to such term in Article IV, subsection C.1 of the Plan.

35.     **Convenience Claim Amount** shall have the meaning ascribed to such term in Article IV, Subsection C.1 of the Plan.

36.     **Creditor** means "Creditor" as defined in Bankruptcy Code § 101(1).

37.     **Debtors** means Orlando Gateway Partners, LLC, and Nilhan Hospitality, LLC, respectively.

38.     **Debtors' Real Property** means the OGP Property and the Nilhan Property together.

39.     **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

40.     **Disclosure Statement** means the Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125 together with any amendments or modifications thereto.

41.     **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

42.     **Distribution** means a distribution to the Holders of Allowed Claims.

43.     **Effective Date** means the date upon which the Plan becomes effective.

44.     **Estates** means the respective bankruptcy estates of the Debtors created under Bankruptcy Code § 541.

45.     **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtors.

46.     **Executory Contract** means every unexpired lease to which the Debtors are a party, respectively, and every other contract that is subject to being assumed or rejected by the Debtors under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

47.    **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

48.    **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

49.    **Fiscal Year** means the fiscal years of the Debtors, which commence on the first day of January and conclude on the final day of December in the following calendar year.

50.    **Good Gateway** means Good Gateway, LLC.

51.    **Holder** means the holder of a Claim or Interest, as applicable.

52.    **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124 .

53.    **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

54.    **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtors, respectively.

55.    **Judgments** means those three judgments entered in favor of the Good Gateway and SEG and against the Debtors (among other parties) in the case styled as *Good Gateway, LLC v. Orlando Gateway Partners, LLC, et al.,* Case No. 2010-CA-015315-O (Division 43) in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, which judgments together exceed $15,000,000.00.

56.    **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtors, but only to the extent

that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtors or any other party with standing to bring such a challenge.

57.     **Purchaser** shall mean the individual or entity that purchases the Debtors' Real Property at the closing of the Sale.

58.     **Net Proceeds of the Sale** means the cash proceeds of the Sale after payment in full, in Cash, of all Closing costs, property tax relating to the Debtors' Real Property, and the Allowed Class 2 Claim.

59.     **Nilhan Financial** means Nilhan Financial, LLC.

60.     **Nilhan Financial Adversary** means the adversary proceeding filed by Good Gateway and SEG against Nilhan Financial pending in the Bankruptcy Court, styled as *Good Gateway, LLC and SEG Gateway, LLC v. Nilhan Financial, LLC*, Adv. Case No. 6:15-ap-00098-KSJ.

61.     **Nilhan Property** means the two parcels of real property owned by Nilhan located near the Orlando International Airport on the West side of South Semoran Boulevard (SR 436) and North of the Beachline Expressway (SR 528), having the following parcel numbers: 28-23-30-6332- 02-002 and 28-23-30-6332-02-003.

62.     **OGP Property** means the four parcels of real property owned by OGP located at the northwest corner of the Beachline Expressway (SR 528) and Semoran Boulevard (SR 436), Orlando, Florida, having the following parcel numbers: 28-23-30-6331-00-010; 28-23-30-6331-00-040; 28¬ 23-30-6332-01-000; and 28-23-30-6332-02-000.

63.     **Person** means "person" as defined in Bankruptcy Code § 101(41).

64.      **Petition Date** means April 20, 2015, the date on which Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

65.      **Plan** means this Chapter 11 Plan of reorganization.

66.      **Plan Payments** means payments made by the Plan Representative pursuant to the terms of the Plan.

67.      **Plan Representative** means a representative of the Estates who will administer the consummation of the Plan, the conduct of the Sale and make distributions required by the Plan.  The Plan Representative will be selected by the Plan Proponent and disclosed together with the terms of his compensation in a filing with the Bankruptcy Court within 18 days of the filing of the Plan.  The aforementioned filing shall be incorporated into the Plan as Exhibit "A" and shall become a part hereof.

68.      **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

69.      **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

70.      **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

71.      **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

72.    **Pro Rata** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

73.    **Proceeds of Sale** means all of the proceeds of the Sale.

74.    **Professional** means: (i) any professional retained by the respective Debtors in the Bankruptcy Cases pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

75.    **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

76.    **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

77.    **Property of the Estate** means "property of the estate" of the Debtors as defined in Bankruptcy Code§ 541 and shall include all such property through and including the Closing Date.

78.    **Purchaser** means the individual or entity (including successors and assigns) that purchases Debtors' Real Property at the Closing.

79.     **Sale** means a sale of the Debtors' Real Property and any other Property of the

Estate (excluding Cash, to the extent purchased by the Purchaser) to be conducted pursuant to the

Plan and Sections 363 and 1123 of the Bankruptcy Code.  The Sale shall be free and clear of all

Liens, Claims and Interests to the fullest extent permitted by the Bankruptcy Code.  The Sale

shall be conducted on or before the sixty-fifth (65th) day after the Confirmation Date and shall be

governed by the Sale Procedures.  Except to the extent of a credit bid by SummitBridge or, if

permitted by Order of the Bankruptcy Court (upon request made in a manner that allows it to

proceed at the Confirmed Hearing), a credit bid by Good Gateway, SEG or Nilhan Financial, the

consideration to be paid in connection with the Sale shall be limited to Cash paid at the Closing

and the payment of ad valorem property tax relating to the Debtors' Real Property tax claims and

closing costs (including, without limitation, the fees, costs and commissions of the Broker and

the Plan Representative).  The Purchaser shall be responsible for paying, at the Closing, Debtors'

Real Property ad valorem tax and all Closing costs.

80.     **Sale Procedures** means procedures that will govern the Sale.   The Sale

Procedures will be filed within 18 days of the filing of the Plan.  The aforementioned filing shall

be incorporated into the Plan as Exhibit "B" and shall become a part hereof.

81.     **Schedules** means the schedules of assets and liabilities and any amendments

thereto filed by the Debtors with the Bankruptcy Court in accordance with Bankruptcy Code §

521(1).

82.     **Secured Claim** means a Claim secured by a Lien against Property of the Estate to

the extent of the value of any interest in such Property of the Estate securing such Claim, which

Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy

Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

83.   **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

84.   **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

85.   **SEG** means SEG Gateway, LLC.

86.   **Statutory Rate** shall mean the interest rate allowed to be charged pursuant to applicable state law on unpaid ad valorem taxes.

87.   **Subordinate Lienholders Priority Determination** means a determination by the Bankruptcy Court, or an agreement approved by the Bankruptcy Court, regarding the Allowance and relative priorities of the alleged Claims and Liens of Good Gateway, SEG and Nilhan Financial.   This determination may be made in the Nilhan Financial Adversary or any other contested matter or adversary proceeding brought or pending in the Bankruptcy Court.   The determination may be made before or after the Confirmation Date and is not a condition to the occurrence of the Effective Date, the consummation of the Sale, and the making of the distributions contemplated by the Plan and in connection with the Closing of the Sale.

88.   **SummitBridge** means SummitBridge National Investments IV LLC.

89.   **Thakkar** means Chittranjan "Chuck" Thakkar, who is the manager and owner of 70% of the membership interests of Nilhan, and the manager, owner, and controlling person of OGP through his entities Niloy & Rohan, LLC, and NCT Systems, Inc.

90.   **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

91.     **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

92.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, et. seq. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

93.     **Unsecured Administrative Convenience Claim** means an Allowed Unsecured Claim with respect to which the holder thereof has elected on a timely submitted Ballot to be treated as a Class 8 Creditor in full satisfaction of its Allowed Claims.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.      <u>Secured Claims</u>.

1.      <u>Class 1 - Allowed Secured Claim of the Good Gateway and SEG</u>. Class 1 consists of the Allowed Secured Claim of Good Gateway and SEG, respectively, that are allegedly secured by judgment liens on the Debtors' Real Property and all personal property owned by the Debtors that is subject to execution.  Class 1 is Impaired.

2.      <u>Class 2 - Allowed Secured Claim of SummitBridge National Investments IV LLC</u>. Class 2 consists of the Allowed Secured Claim of SummitBridge in the amount of $5,634,236.94, which is secured by mortgage liens on the Debtors' Real Property.  Class 2 is Impaired.

3.      <u>Class 3 – Orange County Tax Collector (Nilhan) - 2014</u>. Class 3 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2014 tax year.  Class 3 is Impaired.

4.      <u>Class 4 – Orange County Tax Collector (Nilhan) - 2015</u>. Class 4 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2015 tax year.  Class 4 is Unimpaired.

5.      <u>Class 5 – Orange County Tax Collector (OGP)</u>. Class 5 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2014 tax year.  Class 5 is Impaired.

6.      <u>Class 6 – Orange County Tax Collector (OGP) - 2015</u>. Class 6 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2015 tax year.  Class 6 is Unimpaired.

7.      <u>Class 7 – Nilhan Financial, LLC</u>. Class 7 consists of the Allowed Secured Claim of Nilhan Financial, if any, as such Claim is subject to the Nilhan Financial Adversary. Class 7 is Impaired.

B.      <u>Unsecured Claims</u>.

1.      <u>Class 8 – Allowed Unsecured Convenience Claims</u>. Class 8 consists of all Allowed Unsecured Claims that elect in the Ballot to be treated as Unsecured Administrative Convenience Claims. Class 8 is Impaired.  The Plan Proponent estimates that other than the Claims of Nilhan Financial, Good Gateway and SEG, the Unsecured Claims in these Bankruptcy Cases consists of one claim in the amount of $119,678.91.  The Holders of those Claims (including Nilhan Financial, Gateway and SEG) may each elect to have all of their Allowed Unsecured Claims be treated as a Class 8 Claim in the Ballot as set forth in Article IV of the Plan, or it will be treated as a Class 9 Claim.  In the event that the Bankruptcy Court determines that the classification or treatment of Allowed Unsecured Claims contemplated for Class 8 render the Plan unconfirmable under section 1129 of the Bankruptcy Code, than the

establishment of Class 8 under the Plan and the sections of the Plan concerning Class 8 shall be automatically deleted from the Plan and deemed null and void and all Allowed Unsecured Administrative Convenience Claims shall be treated as Class 9 Claims to the full extent of their Allowed Unsecured Claims.

       2.    <u>Class 9 – Allowed Unsecured Claim of Nilhan Financial</u>. Class 9 consists of the Allowed Unsecured Claims other than Unsecured Administrative Convenience Claims. Class 9 is Impaired.

       C.    <u>Equity Interests</u>.

       1.    <u>Class 10 – Equity in the Debtors</u>. Class 10 consists of any and all membership interests currently issued or authorized in the Debtors. Class 10 is Impaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

       A.    <u>Administrative Expense Claims</u>.

       Holders of all Allowed Administrative Expense Claims of the Debtors shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. However, nothing in this provision of the Plan shall preclude the Plan Representative from paying any holder of an Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms. The Allowed Administrative Claims shall be paid from cash on hand. The Plan Proponent estimates Administrative Claims to be approximately $75,000.00.

       B.    <u>Priority Tax Claims</u>.

       Except to the extent that the Holder and the Plan Representative have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall be paid

in full within thirty (30) days of the Effective Date.  Allowed Priority Tax Claims, which do not include Secured Claims for real property taxes, will be paid in full on the Effective Date or on the date such Priority Tax Claim becomes Allowed.  The filed amount of Priority Tax Claims is approximately $0.00.

## ARTICLE IV – TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

      A.     <u>Determination of Allowed Amounts</u>.

Treatment prescribed for Claims and Interests in the following sections of this Article IV shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Plan Proponent and the Plan Representative reserve the right, and shall have the right, to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VIII, Section J, of the Plan, and other applicable law.

There are eight (8) Classes of Claims and Interests that are Impaired. Treatment for these classes is as follows:

B.    Secured Claims.

1.    Class 1 - Allowed Secured Claims of Good Gateway and SEG.

Class 1 consists of the Allowed Secured Claims of the Good Gateway and SEG, respectively, that are allegedly secured by judgment liens on the Debtors' Real Property and all personal property owned by the Debtors that is subject to execution. The Allowed Amount of the Class 1 Claims shall be as determined in connection with the Appeals and by the Subordinate Lienholders Priority Determination.  In full satisfaction of their Allowed Class 1 Claims, Good Gateway and SEG shall receive payment of its Allowed Class 1 Claim from Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of all Class 2 Claims to the extent that the Bankruptcy Court determines an entitlement to such funds, if any, in connection with the Subordinate Lienholders Priority Determination..  Payments, if any, shall not commence, until after the Subordinate Lienholders Priority Determination.

2.    Class 2 – Allowed Secured Claim of SummitBridge.

Class 2 consists of the Allowed Secured Claim of SummitBridge in the amount of $5,634,236.94 (plus additional principal interest and fees) which is secured by first priority Liens on the Debtors' Real Property and other property that shall not, on or after the Confirmation Date, be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection or any other challenges under any applicable law or regulation by any person or entity.  Upon entry of the Confirmation Order, the Class 2 Claim shall be an Allowed Secured Claim in the amount of not less than $5,634,236.94 that is secured by a first priority lien on the Real Property and all of the Property of the Estates.  In full satisfaction of its Class 2 Claim, on the Closing Date, the Debtors' Real Property and Property of

the Estates (excluding Cash in the Estates' accounts to the extent necessary to pay existing Administrative Claims) shall be transferred to SummitBridge in exchange for a credit bid of its Allowed Claim, or if the Sale results in a bid higher than the Allowed Secured Claim of SummitBridge, then SummitBridge shall be paid in Cash, on the Closing Date, from the Proceeds of the Sale the full amount of its Allowed Secured Claim. SummitBridge shall retain its Lien until full payment of its Allowed Claims, but shall be stayed, except as set forth herein, from enforcing its rights and remedies on account or its Allowed Secured Claim available under applicable state law until the Auction Date.

3.        Class 3 – Orange County Tax Collector (Nilhan) - 2014.

Class 3 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2014 tax year. In full satisfaction of its Class 3 Claim, the Orange County Tax Collector shall receive full payment to be paid on the Closing Date from the Proceeds of the Sale. Until the Closing Date, the Orange County Tax Collector shall be stayed from exercising its rights and remedies under applicable law.

4.        Class 5 – Orange County Tax Collector (OGP).

Class 5 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2014 tax year. In full satisfaction of its Class 5 Claim, the Orange County Tax Collector shall receive full payment to be paid on the Closing Date from the Proceeds of the Sale. Until the Closing Date, the Orange County Tax Collector shall be stayed from exercising its rights and remedies under applicable law.

     5.     <u>Class 7 – Nilhan Financial, LLC</u>.

Class 7 consists of the Allowed Secured Claim of Nilhan Financial, if any, as such Claim is subject to the Nilhan Financial Adversary. The Claim of Nilhan Financial is allegedly secured by a first priority mortgage lien on the OGP Property in an amount exceeding $33,000,000.00. However, the Nilhan Financial Adversary is challenging the validity, extent, and priority of Nilhan Financials mortgage debt, and further seeks to equitably subordinate any Allowed Secured Claim of Nilhan Financial to the Class 1 Claims of Good Gateway and SEG. In full satisfaction of their Allowed Class 7 Claims, Nilhan Financial shall receive payment of its Allowed Class 7 Claims from Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of the Class 2 Claims to the extent that the Bankruptcy Court determines entitlement to such funds, if any, in connection with the Subordinate Lienholders Priority Determination.  Payments, if any, shall not commence until after the Subordinate Lienholders Priority Determination.

     C.     <u>Unsecured Claims</u>.

     1.     <u>Class 8 – Allowed Unsecured Administrative Convenience Claims</u>.

Class 8 consists of Allowed Unsecured Claims that expressly elect to be included in Class 8 by indicating on the Ballot that the amount of their Claim is less than $100,000 or that they agree to reduce their Claim to $100,000 (the "Convenience Claim Amount") and to accept a distribution of fifty percent (50%) of the Convenience Claim Amount to be paid by SummitBridge within seventy-five days (75) of the Effective Date.  The foregoing election shall be available to the Holders of all Allowed Unsecured Claims (including Claims held by Nilhan Financial, Good Gateway and SEG, if any) on or prior to the deadline for submitting the Ballot with respect to the Plan, but a Holder of an Allowed Unsecured Claim may

only elect to have all (and not merely a portion) of its Allowed Unsecured Claims to be treated as a Class 8 Claim. If Creditors holding Allowed Unsecured Claims in the Convenience Claim Amount of more than $300,000 (in the aggregate) make the election to be treated as Unsecured Administrative Convenience Claims, than the Holders of Allowed Unsecured Convenience Claims shall share Pro Rata the amount of $150,000; provided, however, that under no circumstances shall a Holder of a Class 8 Claim be entitled to receive more than fifty percent (50%) of either its Allowed Unsecured Claim or the Convenience Claim Amount. In the event that the Bankruptcy Court determines that the classification or treatment of Allowed Unsecured Claims contemplated for Class 8 render the Plan unconfirmable under section 1129 of the Bankruptcy Code, then the establishment of Class 8 under the Plan and the sections of the Plan concerning Class 8 shall be automatically deleted from the Plan and deemed null and void and all Allowed Unsecured Administrative Convenience Claims shall be treated as Class 9 Claims to the full extent of their Allowed Unsecured Claims.

2. <u>Class 9 – Allowed Unsecured Claims</u>.

Class 9 consists of the Allowed Unsecured Claims (including, any deficiency Unsecured Claims of Nilhan Financial, Good Gateway and SEG) that have not expressly elected to be included in Class 8 on the Ballot. In full satisfaction of Allowed Class 9 Claim, the Holders thereof shall receive Pro Rata distribution of the Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of all Class 2 Claims, and Class 1 and 7 Claims (to the extent required or otherwise provided by the Subordinate Lienholders Priority Determination).

D.      Equity Interests

1.      Class 10 – Equity in the Debtors.

Class 10 consists of any and all membership interests currently issued or authorized in the Debtors. In full satisfaction of the Allowed Class 10 Interests, the holders thereof shall receive Pro Rata the Net Proceeds of the Sale and all remaining Property of the Estates after payment in full of all Allowed Class 2 Claims, and Class 1, 7 and 9 Claims (to the extent required or otherwise provided by the Subordinate Lienholder Priority Determination). All Class 10 membership interests shall be extinguished. Further, on the Effective Date, the assets and liabilities of the Debtors will be substantively consolidated.

## ARTICLE V – TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.

There are two (2) Classes of Unimpaired Claims as follows:

A.      Unsecured Unimpaired Claims.

1.      Class 4 – Orange County Tax Collector (Nilhan) - 2015.

Class 4 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2015 tax year. In full satisfaction of its Class 4 Claim, the Orange County Tax Collector shall retain its statutory lien on the Nilhan Property, and shall be paid in the ordinary course of business by the Purchaser when such taxes are assessed in 2016.

2.      Class 6 – Orange County Tax Collector (OGP) – 2015.

Class 6 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2015 tax year. In full satisfaction of its Class 6 Claim, the Orange County Tax Collector shall retain its

statutory liens on the OGP Property, and shall be paid in the ordinary course of business by the Purchaser when such taxes are assessed in 2016.

## ARTICLE VI – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

The Purchaser shall have thirty (30) days after the Closing Date within which to request the assumption and assignment of unexpired leases or executory contracts, after which time, if any unexpired lease or executory contract is not the subject of a filed motion to assume and assign such lease or contract, then such unexpired lease or executory contract shall be deemed rejected. The Purchaser shall be responsible for curing any and all defaults.

The unexpired lease between the Debtors and Seito Sushi Celebration, LLC shall be assumed and assigned at the Closing of the Sale.

## ARTICLE VII – MEANS OF IMPLEMENTATION.

A.    <u>The Sale Process</u>.

The Plan is designed to facilitate a prompt sale of the Debtors' Real Property and prompt distributions to Holders of Allowed Claims. Interested parties should not be exposed to the risk that Confirmation and the administration of the Bankruptcy Cases are delayed while the Debtors, Nilhan Financial, Good Gateway and SEG engage in protracted litigation.

Absent a prompt sale, all creditors and interested parties will be exposed to the risk that the Debtors' Real Property deteriorates while the Debtors, Nilhan Financial, Good Gateway and SEG continue to litigate. Under such a scenario, Creditors and the Estates will be further exposed to the risk of expensive, protracted Bankruptcy Cases. The prompt sale of the Debtors' Real Property and the prompt distributions contemplated by the Plan eliminates these concerns and risks.

Accordingly, on the Effective Date, the Plan Representative shall engage the Broker for purposes of marketing the Debtors' Real Property on behalf of the Estates and to send the Sale Procedures to (i) all known creditors and parties that have entered appearances in the Bankruptcy Cases and (ii) any individual or entity that has expressed interest in acquiring any Property of the Estates including, without limitation, the Debtors' Real Property.  The Auction will be conducted pursuant to the Sale Procedures and the Auction Date shall occur on a date that is not more than sixty-five (65) days after the Effective Date.  At the Auction, no bid will be accepted unless it provides a Cash payment at the Closing adequate to pay the Class 2 Claim of SummitBridge in full.  SummitBridge shall be entitled to credit bid its entire Class 2 Claim at the Auction.  Nilhan Financial, Good Gateway and SEG may be permitted to credit all or a portion of their claims only if, at least thirty (30) days prior to the Auction Date, one or more of Nilhan Financial, Good Gateway or SEG, as applicable, obtain entry of an order from the Bankruptcy Court authorizing any such credit bid and the extent that they may credit bid their Liens and Claims in connection with the Auction and the Sale.  Notwithstanding anything to the contrary, any such credit bid by Nilhan Financial, Good Gateway or SEG, or any other bids in connection with the Sale (except for a credit bid submitted by SummitBridge) shall provide for the full payment of the Class 2 Claim of SummitBridge in Cash on the Closing Date.

Between the Confirmation Date and the Closing Date, Terry Soifer shall continue to perform the services that he is performing for the Debtors as Chief Restructuring Officer and shall be compensated in accordance with the current Bankruptcy Court approved arrangement. Mr. Soifer shall have no direct responsibilities in connection with the consummation of the Plan other than to cooperate with the Plan Representative in connection therewith and to provide any support requested by the Plan Representative.  The Plan Representative will be responsible for

consummating the Plan and the Sale.   The reasonable fees and expenses of the Plan Representative and the Chief Restructuring Officer will be entitled to priority over all other claims as costs of administration and they will each be entitled to hold reasonable retainers.

B.       Funds Generated During Chapter 11 and Prior to the Closing Date.

Funds generated from operations until the Closing Date will be used for Plan Payments and for general operations; however, the Debtors' cash on hand as of Confirmation Date and the Closing Date shall be available for Administrative Expenses.

C.       Management and Control of the Debtor and Administration of the Plan.

The Debtors assets are being sold pursuant to the Plan.   After the Effective Date, the consummation of the Plan shall be the responsibility of the Plan Representative.   His fees will be paid from the Debtors' Cash on hand and operating revenue and shall be entitled to payment prior to any other Claims.

D.       Extinguishment of Membership Interests and Substantive Consolidation.

On the Effective Date, the membership Interests in the Debtors shall be extinguished and the assets of the Debtors shall be substantively consolidated.   Notwithstanding the foregoing, the substantive consolidation of the Estates shall not be a condition to the Effective Date and, the Plan Proponent in its discretion, may seek to confirm and consummate the Plan even absent substantive consolidation of the Estates.

E.       Establishment of Class 8 for Administrative Convenience.

The Bar Date in the Bankruptcy Cases for all interested parties (other than governmental units) was August 3, 2015.   Other than SummitBridge, Nilhan Financial, Gateway and SEG and certain taxing authorities, there was only one claim filed.   That claim is an Unsecured Claim asserted in the amount of $119,678.91.   Except for the claim of Seito Sushi Celebration, LLC

which will be paid, to the extend Allowed, in connection with the assumption and assignment of the applicable unexpired lease, there are no other general unsecured claims that were listed in the Schedules by the Debtors that were not listed as contingent, dispatched or unliquidated. Accordingly, in an effort to relieve that claimant of the cost, expense and delay of waiting for the Debtors, Nilhan Financial, Good Gateway and SEG to conclude their litigation and as a matter of administrative convenience for the Bankruptcy Court and other interested parties, pursuant to Section 1122(b) of Bankruptcy Code, the Plan Proponent has established a Class of Allowed Unsecured Administrative Convenience Claims.  The Plan Proponent believes that Class 8 will, if a timely Class 8 election is made, provide administrative convenience (for the Bankruptcy Court and all interested parties) insofar it may relieve interested parties from administrative burdens associated with having relatively small creditors involved in the Bankruptcy Cases and may relieve Creditors other than Nilhan Financial, Good Gateway and SEG of the need to be involved in the administration of these Bankruptcy Cases after the Closing Date.

   F. <u>Procedures For Resolving Disputed Claims</u>.

    1. <u>Prosecution of Objections to Claims</u>.

    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, any party in interest shall have the right to make and file objections to all Claims prior to the Effective Date, and the Plan Proponent and the Plan Representative shall have the exclusive right to make and file objections to Claims after the Confirmation Date; provided, that any party in interest with a claim objection pending as of the Effective Date may continue to prosecute such pending claim objection to final adjudication or other resolution.

Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth herein, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Interest. Except as set forth in the Plan, upon Confirmation the Plan Representative shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    <u>Estimation of Claims</u>.

The Plan Proponent or the Plan Representative may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether any party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Proponent or the

Plan Representative may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.    <u>Cumulative Remedies</u>.

All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

4.    <u>Payments and Distributions on Disputed Claims</u>.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Plan Representative such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided herein, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed to by the Plan Representative or as otherwise specifically provided herein, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

5.      <u>Allowance of Claims and Interests</u>.

(i)      <u>Disallowance of Claims</u>. All Claims held by Persons against whom the Plan Representative has obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtors by that Person are turned over to the Plan Proponent.

(ii)      <u>Allowance of Claims</u>.

Except as expressly provided herein, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Case, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest.

6.      <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Plan Proponent's interpretation of the Plan shall govern.

**ARTICLE VIII – MISCELLANEOUS.**

      A.      <u>Authority to Effectuate the Plan</u>.

      Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan will be deemed to be authorized and approved without the need for any further approval from the Bankruptcy Court. The Plan Representative shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

      B.      <u>Post-Confirmation Status Report</u>.

      Within 120 days of the entry of the Confirmation Order, the Plan Representative will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan, including a report on the status of the Causes of Action. The status report will be served on the United States Trustee, Holders of Claims, and those parties who have requested special notice. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

      C.      <u>Preservation, Prosecution and Defense of Causes of Action</u>.

      Except as set forth herein, upon the Effective Date, the Plan Representative shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtors or the Estates. The Plan Representative shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Plan Representative, and collection; *provided, however*, that the Plan Representative shall be authorized at any point in any litigation (a) to enter into such settlements as the Plan Representative deems to be in the best

interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Plan Representative deem such action to be in the best interest of creditors without Bankruptcy Court or other approval.

  D. <u>Retention of Professionals</u>.

   The Plan Representative may retain professionals on such terms as the Plan Representative deems reasonable without Bankruptcy Court approval.

  E. <u>Conditions to Effectiveness</u>.

   The Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in a form and content acceptable to the Plan Proponent and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; provided, however, that if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Plan Proponent may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

   Upon the satisfaction or waiver of the foregoing conditions, the Plan Proponent shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

  F. <u>Exculpation from Liability</u>.

   The Plan Proponent, the Plan Representative, their respective members, managers, officers, and directors, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation,

dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any

contract, instrument, release, or other agreement or document created or entered into, or any

other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Cases;

*provided, however,* that this exculpation from liability provision shall not alter the terms of the

Plan (and treatment of creditor claims therein) and shall not be applicable to any liability found

by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or

gross negligence of any such party. The rights granted hereby are cumulative with (and not

restrictive of) any and all rights, remedies, and benefits that the Plan Proponent, the Plan

Representative, and their respective agents have or obtain pursuant to any provision of the Code

or other applicable law, or any agreement. This exculpation from liability provision is an integral

part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary

contained herein, the provisions hereof shall not release or be deemed a release of any of the

Causes of Action otherwise preserved by the Plan, and shall not modify or otherwise affect any

other terms of the Plan (including but not limited to the treatment of creditor claim). The terms of

this exculpation shall only apply to liability arising from actions taken on or prior to the Effective

Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.**

Notwithstanding the foregoing, (i) the Plan Representative shall remain obligated

to make payments to Holders of Allowed Claims as required pursuant to the Plan and (ii) the

Debtors' respective members, manager or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

G.    Police Power.

Nothing in this Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

H.    Revocation and Withdrawal of the Plan.

The Plan Proponent reserves the right to withdraw the Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Plan Proponent revokes and withdraws the Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) the Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

I.    Modification of Plan.

The Plan Proponent may seek to amend or modify the Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. On or before substantial consummation of the Plan, the Plan Proponent may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

J.      Retention of Jurisdiction.

After the Effective Date, the Plan Representative will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in these Bankruptcy Cases to determine or take the following actions:

1.      All objections to the allowance of Claims and Interests and the compromise of Claims;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtors' cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Plan Representative in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtors or the Plan Representative, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 1, 7, 8 and 9 Claims, and Class 10 Interests, respectively;

4. All controversies and disputes arising under or in connection with the Plan;

5. The enforcement and interpretation of the provisions of the Plan;

6. To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7. Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8. All Claims arising from the rejection of any executory contract or lease;

9. Such other matters as may be provided for in the Code or the Plan;

10. To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11. To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12. To hear and determine any action or controversy by or against the Debtors or the Estates.

K. <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of the Plan.

L. <u>Cramdown</u>.

The Plan Proponent reserves the right to seek confirmation of the Plan under § 1129(b) of the Code.

M.    Notices.

All notices required or permitted to be made in accordance with the Amended

Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed

by United States Mail to the following:

>   Counsel for the Plan Proponent:
>   Richard A. Robinson
>   1201 North Market Street
>   Suite 1500
>   Wilmington, DE 19801
>
>   United States Trustee:
>   George C. Young Federal Building
>   400 West Washington Street, Suite 1100
>   Orlando, Florida 32801

N.    Manner of Payment.

Any payment of Cash made under the Plan may be made either by check drawn

on an account of the Plan Representative or the Debtors, by wire transfer, or by automated

clearing house transfer from a domestic bank, at the option of the Plan Representative.

O.    Compliance with Tax Requirements.

In connection with the Plan, to the extent applicable, the Plan Representative in

making Distributions shall comply with all tax withholding and reporting requirements imposed

on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such

withholding and reporting requirements. The Plan Representative may withhold the entire

Distribution due to any holder of an Allowed Claim until such time as such holder provides to

the Plan Representative, the necessary information to comply with any withholding requirements

of any governmental unit. Any property so withheld will then be paid by the Plan Representative

to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Plan

Representative the information necessary to comply with any withholding requirements of any

governmental unit within six months after the date of first notification by the Plan Representative to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

P.     Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in the Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of the Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.

Q.     Distribution of Unclaimed Property.

Except as otherwise provided in the Plan, any property (Cash or otherwise) to be distributed under the Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Claims in accordance with the

provisions of the Plan. However, checks issued by the Plan Representative with respect to Allowed Class 8 Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Plan Representative. Requests for re-issuance of any such check shall be made in writing to the Plan Representative by the Holder of the Claim with respect to the check originally issued.

      R.     <u>Transfer Taxes</u>.

      Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.  Accordingly, the Sale that is being conducted pursuant to the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

      **DATED** this 18th day of September 2015.

      /s/ Richard A. Robinson
      **Richard A. Robinson, Esq.**
      Florida Bar No. 41238
      REED SMITH LLP
      1201 North Market Street
      Suite 1500
      Wilmington, DE 19801
      Tel:  (302) 778-7555
      Fax:  (302) 778-7575
      E-mail:  rrobinson@reedsmith.com

      *Counsel for Plan Proponent*