# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re

**CASE NO. 6:15-bk-03448-KSJ**

**CHAPTER 11**

ORLANDO GATEWAY
PARTNERS, LLC,

Debtor.

_____/

# JOINT AMENDED AND COMBINED PLAN OF REORGANIZATION FOR NILHAN HOSPITALITY, LLC, AND ORLANDO GATEWAY PARTNERS, LLC, SUBMITTED BY SUMMITBRIDGE NATIONAL INVESTMENTS IV LLC, GOOD GATEWAY, LLC, AND SEG GATEWAY, LLC

COUNSEL FOR PLAN PROPONENTS – GOOD GATEWAY, LLC
AND SEG GATEWAY, LLC

R. SCOTT SHUKER, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVE., SUITE 1400
ORLANDO, FLORIDA 32801

COUNSEL FOR PLAN PROPONENT – SUMMITBRIDGE NATIONAL
INVESTMENTS IV LLC

RICHARD A. ROBINSON, ESQ.
REED SMITH LLP
1201 NORTH MARKET STREET, SUITE 1500
WILMINGTON, DE 19801

December 15, 2015

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re

**CASE NO. 6:15-bk-03448-KSJ**

**CHAPTER 11**

ORLANDO GATEWAY
PARTNERS, LLC,

Debtor.

_____/

## JOINT AMENDED AND COMBINED PLAN OF REORGANIZATION FOR NILHAN HOSPITALITY, LLC, AND ORLANDO GATEWAY PARTNERS, LLC, SUBMITTED BY SUMMITBRIDGE NATIONAL INVESTMENTS IV LLC, GOOD GATEWAY, LLC, AND SEG GATEWAY, LLC

**GOOD GATEWAY, LLC** ("Good Gateway"), **SEG GATEWAY, LLC ("SEG")** and

**SummitBridge National Investments IV LLC ("SummitBridge", and together with SEG and**

**Good Gateway, hereinafter referred to as** the "Plan Proponents"), by and through their

undersigned counsel, hereby propose the following Joint Amended and Combined Plan of

Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code") for Orlando Gateway Partners, LLC ("OGP") and Nilhan Hospitality, LLC

("Nilhan"; and together, the "Debtors").[1]

## ARTICLE I - DEFINITIONS.

1.    **Administrative Claim** shall mean a Claim for payment of an administrative

expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including,

without limitation, the actual, necessary costs and expenses incurred after the

---

[1] OGP is Chapter 11 debtor in bankruptcy case no. 6:15-bk-03448-KSJ, and is an affiliate and insider of Nilhan.

commencement of the Bankruptcy Case of preserving the Debtors' Estates, respectively, and operating the Debtors businesses, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code.

2.    **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.    **Agreed Operating Expenses** means operating expenses of the Estates after the Confirmation Date in amounts agreed upon by the Plan Proponents and the Plan Representatives; provided, however, that the agreement of SEG and Good Gateway shall not be required after there is no longer a possibility of the occurrence of the Day 90 Reorganization Date under this Plan.

4.    **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

5.    **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or

unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

6.    **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the respective lists of equity security holders prepared and filed by the Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

7.    **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

4

8.    **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

9.    **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim and is not entitled to priority under the Bankruptcy Code.

10.    **Appeals** means the appeals of the Judgments by the Debtors, et al., styled as *Orlando Gateway Partners, LLC, etc. et al. v. SEG Gateway, LLC, etc., et al.*, Case No. 5D14-3962; and *Chittranjan K. Thakkar, an Individual, et al. v. Good Gateway, LLC, etc., et al.*, Case No. 5D14-3964, which are both pending in the Fifth District Court of Appeal for the State of Florida.

11.    **Assets** means each and every item of Property of the Estates and every interest of the Debtors and their respective Estates as of the Closing Date and at all times from the Petition Date to the Closing Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtors, and includes without limitation:  (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtors, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtors' respective books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.  The Assets shall include, without limitation,

5

the Nilhan Property and the OGP Property. All of the Assets (excluding Cash) shall be subject to the Sale.

12.    **Auction** means an auction for the sale of the Debtors' Real Property and all other Property of the Estates. Under the Day 90 Sale Option, the Sale will be consummated and the Closing Date will occur on or prior to Day 90. Under the Day 180 Sale Option, the Sale will be consummated and the Closing Date will occur on or prior to Day 180.

13.    **Auction Date** means a date to be established pursuant to the Sale Procedures and the Confirmation Order for the Auction.

14.    **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

15.    **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

16.    **Bankruptcy Cases** means the Debtors' respective bankruptcy cases that are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, case numbers 6:15-bk-03447-KSJ and 6:15-bk-03448-KSJ.

17.    **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

18.    **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Cases are pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

19.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

20.    **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in the Bankruptcy Cases.

21.    **Broker** means a licensed real estate broker to be engaged by the Plan Representative on behalf of the Estates as of the Effective Date, for purposes of soliciting offers to sell the Debtors' Real property and any other Property of the Estates in connection with the Auction. The fees, expenses and commissions to be paid to the Broker shall be due upon the Closing of the Sale solely from and to the extent of the Proceeds of the Sale. The Broker shall be Brad Miller of HFF **[Scott, add full name of HFF?]**, but the Plan Proponents may mutually agree to change such person prior to Confirmation.

22.    **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

23.    **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

24.    **Causes of Action** means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§

502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors, including any claims for, breach of fiduciary duty, civil theft, conversion, and for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtors not otherwise approved by the Bankruptcy Court; *provided*, *however*, that when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Plan Proponents to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan. In addition to the foregoing, the term Causes of Action shall include the Debtors' causes of action against Thakkar (i) under Chapter 5 of the Bankruptcy Code, including for fraudulent transfers, (ii) for breach of fiduciary duty, (iii) for conversion, and (iv) for lender liability.

25.    **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

26.    **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

27.    **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified pursuant to Article III of the Plan.

28.     **Class 7 Debt Service Reserve** means the amount Newco shall place into a debt service reserve account sufficient to cover one year of debt service to Nilhan Financial on account of the Allowed Class 7 Secured Claim in the event Nilhan Financial is deemed to have a first priority mortgage on the OGP Property, its alleged debt is not re-characterized as equity, and its claim is not equitably subordinated to the Class 1 Claims of SEG and Good Gateway.

29.     **Class 8 Payoff** means the amount required to pay all Allowed Class 8 Claims in full on the Day 90 Reorganization Date.  Under the Day 90 Reorganization Option, Newco has agreed to fund the Class 8 Payoff with such amounts to be distributed to the Holders of Allowed Class 8 Claims.

30.     **Class 9 Payoff** means the amount required to pay all Allowed Class 9 Claims in full on the Day 90 Reorganization Date. Under the Day 90 Reorganization Option, Newco has agreed to fund the Class 9 Payoff with such amount to be distributed to the Holders of Allowed Class 9.

31.     **Closing** means the consummation of the Sale.

32.     **Closing Date** means the date of the Closing of the Sale.

33.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

34.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

35.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

36.    **Confirmation Order** means the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code. The Confirmation Order (or orders entered substantially contemporaneously therewith) shall, among other things, appoint the Plan Representative to perform the functions contemplated by the Plan, approve the retention of the Broker, approve the form and content of Sales Procedures, set the Auction Date and approve all terms of the Plan. It is not required that the Confirmation Order be a Final Order.

37.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

38.    **Creditor** means "Creditor" as defined in Bankruptcy Code § 101(1).

39.    **Day 90** shall mean the date which is ninety (90) days after entry of the Confirmation Order.

40.    **Day 90 Sale Option** shall mean the Plan Consummation Option under which SEG and Good Gateway file the Sale Proceed Notice with the Bankruptcy Court prior to February 3, 2016, and the Sale will be consummated under this Plan and the Closing Date will occur on or before Day 90.

41.    **Day 90 Sale Proceed Notice** shall mean a notice filed with the Bankruptcy Court on or before February 3, 2016 stating that SEG and Good Gateway have elected not to pursue the Day 90 Reorganization Option as the applicable Plan Consummation Option and, thus, the applicable Plan Consummation Option shall be the Day 90 Sale Option and the Sale will be consummated and the Closing Date will occur on or before Day 90.

42.    **Day 90 Reorganization Date** shall mean the date on which the Class 2 Claim is indefeasibly paid, in full, on or before Day 90, by virtue of means other than the Sale. The Day 90 Reorganization Date must occur on or before Day 90.

43.    **Day 90 Reorganization Option** shall mean the Plan Consummation Option under which the Class 2 Claim is to be indefeasibly paid, in full, by a means other than the Sale, on or before Day 90.

44.    **Day 180** shall mean the date which is one hundred eighty (180) days after entry of the Confirmation Order.

45.    **Day 180 Sale Option** shall mean the Plan Consummation Option under which the Day 90 Sale Proceed Notice is not timely filed with the Bankruptcy Court and the Day 90 Reorganization Date does not occur, and the Sale is consummated and the Closing Date will occur on or before Day 180.

46.    **Debtors** means Orlando Gateway Partners, LLC, and Nilhan Hospitality, LLC, respectively.

47.    **Debtors' Real Property** means, collectively, all of the OGP Property and the Nilhan Property.

48.    **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

49.    **Disclosure Statement** means the Joint Amended and Combined Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125 together with any amendments or modifications thereto.

50.    **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

51.    **Distribution** means a distribution to the Holders of Allowed Claims.

52.    **Effective Date** means the date upon which this Plan becomes effective. Unless agreed upon by all of the Plan Proponents, the Effective Date shall occur within fifteen (15) calendar days of the entry by the Bankruptcy Court of the Confirmation Order.

53.    **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtors.

54.    **Estates** means the respective bankruptcy estates of the Debtors created under Bankruptcy Code § 541.

55.    **Executory Contract** means every unexpired lease to which the Debtors are a party, respectively, and every other contract that is subject to being assumed or rejected by the Debtors under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

56.    **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

57.    **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

58.    **Fiscal Year** means the fiscal years of the Debtors, which commence on the first day of January and conclude on the final day of December in the following calendar year.

59.    **Holder** means the holder of a Claim or Interest, as applicable.

60.    **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124 .

61.    **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

62.    **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtors, respectively.

63.    **Judgments** means those three judgments entered in favor of  SEG and Good Gateway and against the Debtors (among other parties) in the case styled as *Good Gateway, LLC v. Orlando Gateway Partners, LLC, et al.*, Case No. 2010-CA-015315-O (Division 43) in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, which judgments together exceed $15,000,000.00.

64.    **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtors, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtors or any other party with standing to bring such a challenge.

65.    **Net Sale Proceeds** means the cash proceeds of the Sale after payment in full, in Cash, of all Closing costs, property tax relating to the Debtors' Real Property (including Classes 3 and 5), and the Allowed Class 2 Claim.

66.    **Newco** means the new company to be formed by Mr. Carson Good (and any others to be disclosed hereunder) which, under the SummitBridge Day 90 Payment Option, shall receive the equity securities in the Reorganized Debtors in exchange for the agreement to fund all of the Plan Payments required under the Day 90 Reorganization Option.  Newco

shall file with the Bankruptcy Court and serve on all parties in interest at least twenty (20) calendar days prior to the Ballot Date a list of its members and their percentage ownership interests in Newco.

67.    **Nilhan Financial** means Nilhan Financial, LLC.

68.    **Nilhan Financial Adversary** means the adversary proceeding filed on August 21, 2015 by SEG and Good Gateway against Nilhan Financial that seeks: (i) to re-characterize the Nilhan Financial loan as equity, (ii) a determination that the Nilhan Financial mortgage has terminated under Fla. Stat. § 95.281(a), and (iii) to subordinate any allowed secured claim of Nilhan Financial to the judgment liens of SEG and Good Gateway.

69.    **Nilhan Property** means the two parcels of real property owned by Nilhan located near the Orlando International Airport on the West side of South Semoran Boulevard (SR 436) and North of the Beachline Expressway (SR 528), having the following parcel numbers: 28-23-30-6332-02-002 and 28-23-30-6332-02-003.

70.    **Nilhan Sale** shall mean the sale of the Nilhan Property pursuant to the terms of the Plan.

71.    **OGP Property** means the four parcels of real property owned by OGP located at the northwest corner of the Beachline Expressway (SR 528) and Semoran Boulevard (SR 436), Orlando, Florida, having the following parcel numbers: 28-23-30-6331-00-010; 28-23-30-6331-00-040; 28-23-30-6332-01-000; and 28-23-30-6332-02-000.

72.    **OGP Sale** shall mean the sale of the OGP Property pursuant to the terms of the Plan.

73.    **Person** means "person" as defined in Bankruptcy Code § 101(41).

74.    **Petition Date** means April 20, 2015, the date on which Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

75.    **Plan** means this Chapter 11 Joint Amended and Combined Plan of Reorganization.

76.    **Plan Consummation Options** means the options for consummating this Plan which include the Day 90 Sale Option, the Day 90 Reorganization Option, and the Day 180 Sale Option.

77.    **Plan Payments** means payments made by the Plan Representative or Reorganized Debtors, as applicable,[2] pursuant to the terms of the Plan.

78.    **Plan Proponents** means SEG, Good Gateway, and SummitBridge.

79.    **Plan Representative** shall mean the person selected by Plan Proponents to be a fiduciary of the Estates, to administer these Bankruptcy Cases and to administer the Plan. The Plan Representative will commence performing services upon the Effective Date. Under the Day 90 Sale Option and Day 180 Sale Option, the Plan Representative shall serve until entry of the Final Decree. Under the Day 90 Reorganization Option, the Plan Representative shall serve until Class 2 is indefeasibly paid in full and equity in the Reorganized Debtors is vested in Newco. The Property Manager and Broker shall report and take direction from the Plan Representative. Plan Proponents have initially selected Alan Weiner of Focus Management Group USA, Inc. to be Plan Representative; provided,

---

[2] Each time this Plan references "the Plan Representative or Reorganized Debtors, as applicable," the phrase means that the Plan Representative shall have the specified right and authority unless and until the Day 90 Reorganization Date occurs and, after the Day 90 Reorganization Date, such right and authority shall vest in the Reorganized Debtors.

however, they reserve the right to change such (and will file notice of the same) prior to the Confirmation Hearing.

80.    **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

81.    **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

82.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

83.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

84.    **Proceeds of Sale** means all of the proceeds of the Sale.

85.    **Professional** means: (i) any professional retained by the respective Debtors in the Bankruptcy Cases pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

86.    **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy

16

Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

87.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

88.     **Property Manager** shall mean the person or entity who shall perform property management functions upon substantially similar terms as the current property managers and shall report to the Plan Representative. If the Court does not approve the selection of Property Manager, Plan Proponents will mutually agree upon and select a replacement. Under the Day 90 Reorganization Option, Jones Lang LaSalle shall be the initial Property Manager. Under the 90 Day Sale Option and Post-Day 90 Sale Option, the Plan Representative may determine, with the consent of SummitBridge, the Property Manager.

89.     **Property of the Estates** means "property of the estate" of the Debtors as defined in Bankruptcy Code § 541 and shall include all such property through and including the Closing Date.

90.     *Pro Rata* means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

91.     **Purchaser** means one or more individuals or entities (including successors and assigns) that purchases Property of the Estates at the Closing.

92.     **Reorganized Debtors** mean the Debtors as reorganized on and after the Day 90 Reorganization Date. Newco shall be the sole member of the Reorganized Debtors. If the Day 90 Sale Proceed Notice is filed or the Day 90 Reorganization Date does not timely

occur, the provisions of this Plan concerning the Day 90 Reorganization Option and the Reorganized Debtors shall be inapplicable to the consummation of the Plan and shall be of no force and effect.

93.    **Sale** shall mean the sale of any or all Assets (including, without limitation, the OGP Property and the Nilhan Property, but excluding Cash) on the Sale Date to the extent purchased by the Purchaser.  The Sale shall be conducted pursuant to the terms of this Plan and Sections 363 and 1123 of the Bankruptcy Code.  The Sale shall be free and clear of all Liens, Claims and Interests to the fullest extent permitted by the Bankruptcy Code.  The Sale shall be consummated on or prior to the Sale Date.  Except to the extent of a credit bid by SummitBridge or, if permitted by Order of the Bankruptcy Court, a credit bid by Good Gateway, SEG or Nilhan Financial, consistent with the terms of Article **VIII, Section B** hereof, the consideration to be paid in connection with the Sale shall be limited to Cash paid at the Closing and the payment of ad valorem property tax relating to the Debtors' Real Property tax claims.

94.    **Sale Date** shall mean a date, selected by the Plan Representative, no later than: (a) Day 90 if the Day 90 Sale Option is exercised; or (b) Day 180 if the applicable Plan Consummation Option is the Day 180 Sale Option because the Day 90 Sale Option is not exercised by SEG and Good Gateway and the Day 90 Reorganization Date does not timely occur.

95.    **Sale Notice** shall mean a notice to be agreed upon by all of the Plan Proponents and filed with the Bankruptcy Court prior to the solicitation of votes with respect to this Plan and is incorporated into this Plan as **Exhibit A**.  Under the Day 90 Sale Option, the Plan Representative and the Broker shall send the Sale Notice within three (3) Business Days

18

after the Effective Date. Under the Day 180 Sale Option, the Plan Representative and the Broker shall send the Sale Notice on or before three (3) Business Days after Day 90. The Sale Notice shall be sent to all Creditors, parties-in-interest, and any additional parties suggested by the Broker.

96.   **Sale Procedures** means procedures that will govern the Sale.

97.   **Sale Proceeds** shall mean the proceeds of the Sale after payment of closing costs including, without limitation, the fees, costs and commissions of the Broker and the Plan Representative. The Purchaser shall be responsible for paying, at the Closing, Debtors' Real Property ad valorem tax and all Closing costs.

98.   **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtors with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

99.   **Secured Claim** means a Claim secured by a Lien against Property of the Estate to the extent of the value of any interest in such Property of the Estate securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

100.   **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

101.   **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

102.     **Statutory Rate** shall mean the interest rate allowed to be charged pursuant to applicable state law on unpaid *ad valorem* taxes.

103.     **SummitBridge** means SummitBridge National Investments IV LLC.

104.     **Thakkar** means Chittranjan "Chuck" Thakkar, who is the manager and owner of 70% of the membership interests of Nilhan, and the manager, owner, and controlling person of OGP through his entities Niloy & Rohan, LLC, and NCT Systems, Inc.

105.     **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

106.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq.* and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

107.     **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

## ARTICLE II – STRUCTURE OF THE PLAN.

A.     Plan Framework.

This Plan is the result of negotiations between three of the largest Creditors in these Bankruptcy Cases—SummitBridge, SEG and Good Gateway. SummitBridge was the plan proponent with respect to a plan that contemplated a prompt sale of the Assets. In contrast, SEG and Good Gateway were the plan proponents with respect to a plan that provided for the reorganization of the Estates and for Mr. Carson Good to gain control of the Assets. This Plan effectuates an amendment and combination of those plans. Under this Plan, there are three Plan Consummation Options: (a) the Day 90 Sale Option; (b) the Day 90 Reorganization Option; and (c) the Day 180 Sale Option. In general terms, the Plan Consummation Options are as follows:

- Under the Day 90 Sale Option, if SEG and Good Gateway file with the Bankruptcy Court the Day 90 Sale Proceed Notice prior to February 3, 2016, then under the Day 90 Sale Option this Plan shall be automatically modified, without need to file a modification, to adopt the provisions of the Day 90 Sale Option and to effectuate the Sale of the Assets through the Auction which will be consummated on or before Day 90.

- Under the Day 90 Reorganization Option, if the Class 2 Claim of SummitBridge is indefeasibly paid in full on or prior to Day 90, which is 90 days after entry of the Confirmation Order, through means other than the Sale, then the Plan will effectuate a reorganization of the Estates pursuant to the terms of this Plan that will occur on Day 90.

- Under the Day 180 Sale Option, if, however, the Day 90 Reorganization Date does not timely occur and the Day 90 Sale Option is not exercised, then under the Day 180 Sale Option the Assets will be subject to the Sale through the Auction which will be consummated on or before Day 180.

In all instances, the Plan Representative will be appointed pursuant to the Confirmation Order and shall begin to administer the Estates on the Effective Date. Under the Day 90 Reorganization Option, the Plan Representative will act as the representative of the Estates until the Day 90 Reorganization Date, at which time the Reorganized Debtors shall be responsible for consummating this Plan and administering the Estates. Under the Day 90 Sale Option and the Day 180 Sale Option, the Plan Representative shall continue to serve until the entry of the Final Decree.

B.    Automatic adoption of the Day 90 Sale Option if the Bankruptcy Court Determines the Day 90 Reorganization Option Does Not Satisfy the Plan Confirmation Requirements Under Section 1129 of the Bankruptcy Code .

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, IF THE BANKRUPTCY COURT DETERMINES FOR ANY REASON WHATSOEVER THAT THE PROVISIONS OF THIS PLAN CONCERNING THE DAY 90 REORGANIZATION OPTION RENDERS THIS PLAN UNCONFIRMABLE BECAUSE, WITH THOSE PROVISIONS, THE PLAN DOES NOT SATISFY THE REQUIREMENTS**

FOR CONFIRMATION OF A PLAN UNDER SECTION 1129 OF THE BANKRUPTCY CODE, THEN THIS PLAN SHALL BE AUTOMATICALLY MODIFIED AT THE CONFIRMATION HEARING, WITHOUT NEED TO FILE A MODIFICATION, TO DELETE THE PLAN CONSUMMATION OPTION DEFINED IN THIS PLAN AS THE DAY 90 REORGANIZATION OPTION AND THE DAY 180 SALE OPTION, AND THE PLAN PROPONENTS WILL REQUEST THAT THE BANKRUPTCY COURT CONSIDER CONFIRMATION OF THE PLAN AT THE CONFIRMATION HEARING WITH THE ONLY PLAN CONSUMPTION OPTION BEING THE DAY 90 SALE OPTION.

      C.    <u>Optional Election of SEG and Good Gateway by filing the Day 90 Sale Proceed Notice to Modify the Plan By Removing the Day 90 Reorganization Option and Day 180 Sale Option From the Plan</u>.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, IF SEG AND GOOD GATEWAY FILE THE DAY 90 SALE PROCEED NOTICE PRIOR TO FEBRUARY 3, 2016 TO PROVIDE NOTICE THAT THEY WILL NOT PURSUE THE DAY 90 REORGANIZATION OPTION AND THE DAY 180 SALE OPTION, THEN THIS PLAN SHALL BE AUTOMATICALLY MODIFIED, WITHOUT NEED TO FILE A MODIFICATION, TO DELETE THE PROVISIONS THAT CONCERN THE DAY 90 REORGANIZATION OPTION AND DAY 180 SALE OPTION, AND THE PLAN SHALL THEREAFTER REQUIRE THAT THE SALE BE CONSUMMATED ON OR PRIOR TO DAY 90 UNDER THE DAY 90 SALE OPTION.

## ARTICLE III – CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Secured Claims.

1.    Class 1 - Allowed Secured Claim of SEG and Good Gateway.

Class 1 consists of the Allowed Secured Claim of SEG and Good Gateway, respectively, that are secured by judgment liens on the Debtors' Real Property and all personal property owned by the Debtors that is subject to execution. Class 1 is Impaired.

2.    Class 2 - Allowed Secured Claim of SummitBridge National Investments IV LLC.

Class 2 consists of the Allowed Secured Claim of SummitBridge in the amount of not less than $5,290,194.38 (plus additional principal, interest, costs and fees (including legal fees), due under the applicable loan documents, but less any principal payments received after December 10, 2016).

3.    Class 3 – Orange County Tax Collector (Nilhan) - 2014. Class 3 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2014 tax year. Class 3 is Impaired.

4.    Class 4 – Orange County Tax Collector (Nilhan) - 2015. Class 4 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2015 tax year. Class 4 is Unimpaired.

     5.     <u>Class 5 – Orange County Tax Collector (OGP)</u>.  Class 5 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2014 tax year.  Class 5 is Impaired.

     6.     <u>Class 6 – Orange County Tax Collector (OGP) - 2015</u>.  Class 6 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2015 tax year.  Class 6 is Unimpaired.

     7.     <u>Class 7 – Nilhan Financial, LLC</u>.  Class 7 consists of the Allowed Secured Claim of Nilhan Financial, if any, as such Claim is subject to the Nilhan Financial Adversary.  Class 7 is Impaired.

   B.     <u>Unsecured Claims</u>.

     1.     <u>Class 8 – Allowed Unsecured Claims against OGP</u>.

     Class 8 consists of all Allowed Unsecured Claims *other than* Allowed Unsecured Claims against Nilhan and the Allowed Unsecured Claim of Nilhan Financial, which shall be separately classified as a Class 10 Claim.  Class 8 is Impaired.

     2.     <u>Class 9 – Allowed Unsecured Claims against Nilhan</u>.

     Class 9 consists of all Allowed Unsecured Claims against Nilhan other than any Allowed Unsecured Claim of Nilhan Financial, which shall be separately classified as a Class 10 Claim.  Class 9 is Impaired.

     3.     <u>Class 10 – Allowed Unsecured Claim of Nilhan Financial</u>.

     Class 10 consists of the Allowed Unsecured Claim of Nilhan Financial, as to any deficiency Unsecured Claim related to the OGP Property.   Class 10 is Impaired.

C.    Equity Interests.

1.    Class 11 – Equity in the Debtors.

Class 11 consists of any and all membership interests currently issued or authorized in the Debtors.  Class 11 is Impaired.

## ARTICLE IV – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.    Administrative Expense Claims.

Holders of all Allowed Administrative Expense Claims of the Debtors shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court.  However, nothing in this provision of the Plan shall preclude the Plan Representative or Reorganized Debtor, as applicable, from paying any holder of a Non-ordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms.  The Allowed Administrative Claims shall be paid from cash on hand or from Newco.  The Plan Proponents estimate Administrative Claims to be approximately $75,000.00.

B.    Priority Tax Claims.

Except to the extent that the Holder and the Plan Representative or Reorganized Debtor, as applicable, have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall be paid in full within thirty (30) days of the Effective Date.  Allowed Priority Tax Claims, which do not include Secured Claims for real property taxes, will be paid in full on the Effective Date or on the date such Priority Tax Claim becomes Allowed.  The filed amount of Priority Tax Claims is approximately $0.00.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

    A.    <u>Determination of Allowed Amounts.</u>

        Treatment prescribed for Claims and Interests in the following sections of this Article IV shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Plan Representative or Reorganized Debtor, as applicable, reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

        Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to **Article IX, Section J**, of this Plan, and other applicable law.

        There are nine (9) Classes of Claims and Interests that are Impaired.  Treatment for these classes is as follows:

    B.    <u>Secured Claims.</u>

        1.    <u>Class 1 - Allowed Secured Claims of SEG and Good Gateway.</u>

        Class 1 consists of the Allowed Secured Claims of SEG and Good Gateway, respectively, that are secured by judgment.  The Allowed Amount of the Class 1 Claims shall be as determined by final adjudication or other resolution of the Appeals of the Judgments.  In full satisfaction of their Class 1 Claims, SEG and Good Gateway shall retain their liens on Property of

the Estate to the extent and in the priority established by the Bankruptcy Court in the Nilhan

Financial Adversary, and shall be paid under the Plan Consummation Options as follows:

         i.     <u>Day 90 Reorganization Option.</u>  SEG and Good

Gateway shall retain their liens and the Claims shall be paid within three (3) years after the date of

final adjudication or other resolution of the Appeals in favor of SEG and/or Good Gateway, with

such Claims to accrue interest at 5% per annum.  Payments shall not commence, and interest shall

not accrue, until after final adjudication or other resolution of the Appeals.   SEG and Good

Gateway may, in their sole discretion, release their liens or any portion of such liens to allow for

future development or a sale of any portion of the Reorganized Debtors' Real Property;

        ii     <u>Day 90 Sale Option and Day 180 Sale Option.</u> The

Allowed Class 1 Claim shall be paid, in full satisfaction of their Claims, from the Sales Proceeds

after determination by the Bankruptcy Court or agreement with Nilhan Financial of the Claims

relative priority.  After full payment of Class 2, 3, 4, 5, 6, 8 and 9 Claims, the Liens of Class 1, to

the extent of the Allowed Amount, shall attach to the Net Sale Proceeds to the extent, validity, and

priority as determined by the Bankruptcy Court, or agreed with Nilhan Financial, and the

distribution with respect to such proceeds shall not be made until such determination by the

Bankruptcy Court or agreement of the parties.

        2.     <u>Class 2 – Allowed Secured Claim of SummitBridge.</u>  Class 2 consists of the

Allowed Secured Claim of SummitBridge in the amount of not less than $5,290,194.38 (plus

additional principal, interest, costs and fees (including legal fees) due under the applicable loan

documents, but less any principal payments made after December 10, 2016).  The Claim is secured

by first priority Liens on the Assets.  SummitBridge shall retain its Liens until it is paid in full.  The

Class 2 Claim shall not, on or after the Confirmation Date, be subject to any avoidance, reductions,

set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection or any other challenges or objections under any applicable law or regulation by any person or entity. Upon entry of the Confirmation Order, the Class 2 Claim shall be an Allowed Secured Claim in the amount of not less than $5,290,194.38 (plus additional principal, interest, costs and fees (including legal fees) due under the applicable loan documents, but less any principal payments made after December 10, 2016) that is secured by a first priority lien on the Assets. In full satisfaction of its Class 2 Claim, SummitBridge shall receive under the Plan Consummation Options as follows:

        i.      <u>Day 90 Reorganization Option</u>.   The Allowed Secured Claim of SummitBridge shall be indefeasibly paid in full no later than Day 90, provided, however, such payoff amount shall be calculated using the non-default, interest rate under the applicable loan documents;

        ii.      <u>Day 90 Sale option and Day 180 Sale Option</u>. At the Sale, the Assets (excluding Cash in the Estates' accounts to the extent necessary to pay existing Administrative Claims) shall be transferred to SummitBridge in exchange for a credit bid of its Allowed Claim, or if the Sale results in a bid higher than the Allowed Secured Claim of SummitBridge, then SummitBridge shall be indefeasibly paid in Cash, on the Closing Date, from the Proceeds of the Sale the full amount of its Allowed Secured Claim. SummitBridge shall retain its Lien until full indefeasible payment of its Allowed Claims, but shall be stayed, except as set forth herein, from enforcing its rights and remedies on account or its Allowed Secured Claim available under applicable state law until the Auction Date or a breach under this Plan.

        iii.     <u>All Plan Consummation Options</u>.   Until the SummitBridge Class 2 Claim has been indefeasibly paid in full, SummitBridge shall continue to

receive the same monthly payments as it has received post-petition ($40,000 per month) with such payments applied under the applicable loan documents at the discretion of SummitBridge. If net cash after Agreed Operating Expenses is insufficient to make the monthly payments to Class 2, SummitBridge will be paid on a monthly basis an amount equal to interest only based on a rate of five percent (5%). Conversely, if there is excess cash after payment of the Class 2 Claim and Agreed Operating Expenses, such excess shall be paid, on a monthly basis to SummitBridge. Except to the extent expressly modified by this Plan, the applicable loan documents evidencing all Liens and Claims of SummitBridge shall remain in full force and effect on and after the Effective Date.

3.    Class 3 – Orange County Tax Collector (Nilhan) - 2014.

Class 3 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2014 tax year. In full satisfaction of its Class 3 Claim, the Orange County Tax Collector shall receive under the Plan Consummation Options as follows:

i.    Day 90 Reorganization Option. Class 3 shall retain its statutory lien on the Nilhan Property, and shall receive monthly payments of principal and interest, with interest accruing at the Statutory Rate, which is defined in the Plan as the applicable rate of interest allowed to be charged on ad valorem taxes under Florida law, amortized over 25 years, and a final maturity date that is 60 months after the Petition Date. Payments will commence on the Effective Date.

ii.    Day 90 Sale Option and Day 180 Sale Option. The Allowed Class 3 Claim will be paid in full, from the Sale Proceeds on the Closing Date.

4.      Class 5 – Orange County Tax Collector (OGP).

Class 5 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2014 tax year.  In full satisfaction of its Class 5 Claim, the Orange County Tax Collector shall receive under the Plan Consummation Options as follows:

i.      Day 90 Reorganization Option.  Class 3 retain its statutory liens on the OGP Property, and shall receive monthly payments of principal and interest, with interest accruing at the Statutory Rate, amortized over 25 years, and a final maturity date that is 60 months after the Petition Date.  Payments will commence on the Effective Date.

ii.      Day 90 Sale Option and Day 180 Sale Option.  The Allowed Class 5 Claim shall be paid, in full, from the Sale Proceeds on the Closing Date.

5.      Class 7 – Nilhan Financial, LLC.  Class 7 consists of the Allowed Secured Claim of Nilhan Financial, if any, as such Claim is subject to the Nilhan Financial Adversary.  The Claim of Nilhan Financial is allegedly secured by a first priority mortgage lien on the OGP Property in an amount exceeding $33,000,000.00.  However, the Nilhan Financial Adversary is challenging the validity, extent, and priority of Nilhan Financial's mortgage debt, and further seeks to equitably subordinate any Allowed Secured Claim of Nilhan Financial to the Class 1 Claims.  Thus, the potential outcomes of the Nilhan Financial Adversary yield multiple treatments for Nilhan Financial's claim under the Plan Consummation Options as follows:

i.      Determination or Agreement Providing Nilhan Financial Mortgage Lien on OGP Property with Priority Over the Liens of SEG and Good Gateway under Day 90 Reorganization Option.  If after the Court's ruling, or upon agreement with SEG and Good Gateway, Nilhan Financial has an Allowed Secured Claim secured by the OGP

Property that is superior in priority to the Allowed Secured Claim of SEG and Good Gateway (i.e., its loan is not re-characterized as equity, its mortgage lien is determined not to have terminated under Florida law, and it's claim is not equitably subordinated to the Class 1 Claim of SEG and Good Gateway), then in full satisfaction of its Class 7 Allowed Secured Claim. Nilhan Financial shall retain its lien (to the extent and priority determined by the Bankruptcy Court or as agreed) and shall receive monthly payments of principal and interest, with interest accruing at 5%, amortized over 25 years, and a final maturity date 60 months after the Effective Date. Newco shall be required, as part its consideration for the equity interests in the Reorganized Debtors, to post to a designated debt service reserve account on or before Day 90 the Class 7 Debt Service Reserve.

ii.      Determination or Agreement Providing Nilhan Financial with Priority of Mortgage Lien on the OGP Property under Day 90 Sale Option or Day 180 Sale Option. If Nilhan Financial has an Allowed Secured Claim secured by the OGP Property that has priority over the Allowed Secured Claim of SEG and Good Gateway secured by the OGP Property, then the Lien of the Class 7 Claim will attach to the Net Sale Proceeds attributable to the OGP Property (after payment of Class 2, 5 and 6 Claims) to the extent, validity and priority as determined by the Bankruptcy Court, or agreed with SEG and Good Gateway, and the distribution with respect to such proceeds shall not be made until such determination by the Bankruptcy Court or agreement of the parties.

In both i and ii above, Nilhan Financial may have a Class 10 Allowed Unsecured Claim for any deficiency. The Debtors' filed Schedules in these Bankruptcy Cases state the total value of the OGP Property is approximately $9,184,163.00, suggesting Nilhan Financial will have an unsecured deficiency claim.

iii.    Equitable Subordination of Nilhan Financial Under all Plan Consummation Options. If Nilhan Financial's Claim is equitably subordinated to the Class 1 Allowed Secured Claims of SEG and Good Gateway, Nilhan Financial shall have a lien on the OGP Property inferior to the liens of SummitBridge, SEG and Good Gateway on such property, and, thus, a Class 7 Allowed Secured Claim only to the extent the value of the OGP Property exceeds SummitBridge's Claim, SEG's and Good Gateway's Class 1 Claim, and the Claims of Classes 5 and 6, all of which are secured by the OGP Property by superior interests. SEG and Good Gateway estimate that under this scenario Nilhan Financial's Allowed Secured Class 7 Claim will be $0.00 based on the Scheduled values of the OGP Property ($9,184,163.00 in total) as compared to the Senior Secured Claims. Therefore, the entire Allowed Claim will be treated in Class 10.

iv.    Loan Re-characterized as Equity Under all Plan Consummation Options. If Nilhan Financial's purported loans to OGP are deemed equity contributions, Nilhan Financial shall have neither an Allowed Secured Claim nor an Allowed Unsecured Claim. Accordingly, Nilhan Financial's equity shall be extinguished on the Effective Date.

C.    Unsecured Claims.

1.    Class 8 – Allowed Unsecured Claims against OGP.

Class 8 consists of all Allowed Unsecured Claims against OGP *other than* the Allowed Unsecured Claim of Nilhan Financial, which shall be separately classified as a Class 10 Claim. In full satisfaction of their Allowed Class 8 Claims, Holders of Allowed Class 8 Claims shall be paid in full, without interest, under the Plan Consummation Options as follows:

i.    <u>Day 90 Reorganization Option</u>.  The Allowed Class 8 Claims will be paid on Day 90 from Newco via the Class 8 Payoff.

ii.    <u>Day 90 Sale Option and Day 180 Sale Option</u>. Allowed Class 8 Claims shall be paid in full on Day 180 from Net Sale Proceeds attributable to the Sale of the Nilhan Property.

2.    <u>Class 9 – Allowed Unsecured Claim against Nilhan.</u>

Class 9 consists of all Allowed Unsecured Claims against Nilhan *other than* the Allowed Unsecured Claim of Nilhan Financial, which shall be separately classified as a Class 10 Claim.  In full satisfaction of their Allowed Class 9 Claims, Holders of Allowed Class 9 Claims shall be paid in full, without interest, under the Plan Consummation Options, as follows:

i.    <u>Day 90 Reorganization Option</u>.  Allowed Class 9 Claims shall be paid on Day 90 from Newco via the Class 9 Payoff.

ii.    <u>Day 90 Sale Option and Day 180 Sale Option</u>. Allowed Class 9 Claims shall be paid in Full on Day 90 from Net Sale Proceeds attributable to Sale of the Nilhan Real Property.

3.    <u>Class 10 – Allowed Unsecured Claim  of Nilhan Financial.</u>

Class 10 consists of the Allowed Unsecured Claim of Nilhan Financial, as to any deficiency unsecured claim related to the OGP Property.  The Nilhan Financial Allowed Unsecured Claim is being separately classified because Nilhan Financial's debt is different in character from that of the General Unsecured Claims. Namely, in that Nilhan Financial is owned and controlled by Thakkar and, thus, is an affiliate of the Debtors and, moreover, it holds a

purported mortgage on the OGP Property, while the General Unsecured Claims are almost all the unsecured claims of various professionals who are owed fees for services performed for the Debtors prior to the Petition Date. Moreover, the inclusion in Allowed Class 8 of Nilhan Financial's potentially large unsecured deficiency would significantly dilute any recovery of the legitimate, non-affiliate Unsecured Creditors of the Debtors. Under all Plan Consummation Options, in full satisfaction of its Allowed Class 10 Claim, Nilhan Financial shall receive the net proceeds of the Causes of Action and any Net Sale Proceeds available for distribution under this Plan after payment in full of all other classes of Claims..

     D.     <u>Equity Interests</u>

        1.     <u>Class 11 – Equity in the Debtors</u>.

Class 11 consists of any and all membership interests currently issued or authorized in the Debtors. Under all Plan Consummation Options, on the Effective Date, all Class 11 membership interests shall be extinguished. Under the Day 90 Reorganization Option, on the Day 90 Reorganization Date, the equity membership interests in the Reorganized Debtors shall be sold to, and vested in, Newco in exchange for Newco's agreement to fund all Plan Payments, the Class 7 Debt Service Reserve (if necessary), the Class 8 and 9 Payoffs (as necessary), and all legal expenses and costs to bring the Causes of Action. Under the Day 90 Sale Option and the Day 180 Sale Option, Equity shall share Pro Rata the Net Sale Proceeds available for payment under this Plan after payment in full of all Allowed Claims.

**ARTICLE VI – TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.**

There are two (2) Classes of Unimpaired Claims as follows:

A. Unsecured Unimpaired Claims.

    1. Class 4 – Orange County Tax Collector (Nilhan) - 2015.

Class 4 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by Nilhan related to the Nilhan Property for the 2015 tax year. In full satisfaction of its Class 4 Claim, the Orange County Tax Collector shall retain its statutory lien on the Nilhan Property, and shall be paid in the ordinary course of business by the Purchaser or the Reorganized Debtor, as applicable, when such taxes are assessed in 2016.

    2. Class 6 – Orange County Tax Collector (OGP) – 2015.

Class 6 consists of the Allowed Secured Claim of the Orange County Tax Collector for ad valorem property taxes owed by OGP related to the OGP Property for the 2015 tax year. In full satisfaction of its Class 6 Claim, the Orange County Tax Collector shall retain its statutory liens on the OGP Property, and shall be paid in the ordinary course of business or the Reorganized Debtor, as applicable, when such taxes are assessed in 2016.

**ARTICLE VII – UNEXPIRED LEASES AND EXECUTORY CONTRACTS.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN OR APPLICABLE LAW, THE PURCHASER OR THE REORGANIZED DEBTOR, AS APPLICABLE, SHALL HAVE EITHER THIRTY (30) DAYS AFTER DAY 90 OR THE CLOSING DATE, AS APPLICABLE, WITHIN WHICH TO FILE MOTIONS TO ASSUME OR REJECT UNEXPIRED LEASES OR EXECUTORY CONTRACTS, AFTER WHICH TIME, IF ANY UNEXPIRED LEASE OR EXECUTORY CONTRACT IS NOT THE SUBJECT OF A FILED MOTION TO ASSUME OR ASSUME AND ASSIGN SUCH**

**LEASE OR CONTRACT, THEN SUCH UNEXPIRED LEASE OR EXECUTORY CONTRACT SHALL BE DEEMED REJECTED.** The Purchaser, or the Reorganized Debtor, as applicable, shall be responsible for curing any and all defaults. The unexpired lease between the Debtors and Seito Sushi Celebration, LLC shall be assumed and assigned at the Closing of the Sale. It is the Plan Proponents' position that the executory contracts listed on Schedule G - Executory Contracts and Unexpired Leases, as amended, filed by the Debtors pursuant to Rule 1007, are the only executory contracts to which the Debtors were a party as of the Petition Date. SEG and Good Gateway aver that there are no monetary or nonmonetary defaults to cure. **FAILURE TO OBJECT TO THE PLAN SHALL CONSTITUTE A WAIVER OF ANY ALLEGED DEFAULTS.**

## ARTICLE VIII – MEANS OF IMPLEMENTATION.[3]

  A.  <u>In General.</u>

  The Plan is designed to facilitate either a reorganization through the Day 90 Reorganization Option or a prompt sale of the Assets and prompt distributions to Holders of Allowed Claims through either the Day 90 Sale Option or the Day 180 Sale Option. The Plan Proponents believe interested parties should not be exposed to the risk that Confirmation and the administration of the Bankruptcy Cases are delayed while the Debtors, Nilhan Financial, Good Gateway and SEG engage in protracted litigation.

  Absent a prompt reorganization or sale, all creditors and interested parties will be exposed to the risk that the Assets deteriorate while the Debtors, Nilhan Financial, Good Gateway and SEG continue to litigate. Under such a scenario, Creditors and the Estates will be further exposed to the

---

[3] These statements contained in this subsection are the product of SEG and Good Gateway and such shall not be attributed to, or used adversely against, SummitBridge.

risk of expensive, protracted Bankruptcy Cases.  The prompt reorganization or sale of the Assets and the prompt distributions contemplated by this Plan eliminates these concerns and risks.

    B.    <u>Business Operations and Cash Flow.</u>

        Under the Day 90 Reorganization Option, the Reorganized Debtors will, after the Day 90 Reorganization Date, be owned and operated by Newco, whose principal will be Mr. Carson Good (and any other principals designated and disclosed prior to twenty (20) calendar days prior to the Ballot Date).  SEG and Good Gateway assert that Mr. Carson Good is an experienced commercial real estate developer with a long record of successful retail development, leasing, financing, and brokering in the State of Florida.  SEG and Good Gateway assert that Mr. Carson Good has strategic plans for all parcels of the OGP Property and Nilhan Property.  Although subject to change, Mr. Carson Good believes that under his leadership the Reorganized Debtors can (i) fully lease the shopping center on the Nilhan Property to generate an additional $300,000.00 in net operating income after approximately 18 months; (ii) develop the vacant parcels of the OGP Property through either a joint venture or refinancing for either a residential, Class A, apartment complex or a hotel franchise; and (iii) lease certain of the currently vacant outparcels on the OGP Property, which should generate approximately $100,000.00 in additional net operating income each year.  Additionally, SEG and Good Gateway assert that Mr. Carson Good has the experience and ability to secure a refinancing of both the Nilhan Property and the OGP Property if necessary in the event Nilhan Financial has a first-priority Allowed Secured Claim in the full amount of its claim.  Under any scenario, Mr. Carson Good's plans for the Reorganized Debtors will allow the Reorganized Debtors to make all Plan Payments.

        Under the Day 90 Sale Option and Day 180 Sale Option, and until Day 90 Reorganization Date under the Day 90 Reorganization Option, the Assets shall be under the control of the Plan

Representative. The Plan Representative shall, engage the Broker for purposes of marketing the Assets on behalf of the Estates and to send the Sale Procedures to (i) all known creditors and parties that have entered appearances in the Bankruptcy Cases and (ii) any individual or entity that has expressed interest in acquiring any Property of the Estates including, without limitation, the Debtors' Real Property (which includes both the OGP Property and the Nilhan Property). The Auction will be conducted pursuant to the Sale Procedures and the Auction Date shall occur on a date that allows the Sale to close on or before Day 90, under the Day 90 Sale Option, or Day 180, under the Day 180 Sale Option. At the Auction, no bid will be accepted unless it provides a Cash payment at the Closing adequate to pay the Class 2 Claim of SummitBridge in full. SummitBridge shall be entitled to credit bid its entire Class 2 Claim at the Auction. Nilhan Financial, Good Gateway and SEG may be permitted to credit bid all or a portion of their claims only if, at least thirty (30) days prior to the Auction Date, one or more of Nilhan Financial, Good Gateway or SEG, as applicable, obtain entry of an order from the Bankruptcy Court authorizing any such credit bid and the extent that they may credit bid their Liens and Claims in connection with the Auction and the Sale. Notwithstanding anything to the contrary, any such credit bid by Nilhan Financial, Good Gateway or SEG, and any other bids in connection with the Sale (except for a credit bid submitted by SummitBridge) shall provide for the full payment of the Class 2 Claim of SummitBridge in Cash on the Closing Date.

The Sale shall be made pursuant to Bankruptcy Code Sections 363(b) and (f) and 1123(a)(5)(D), free and clear of all liens, claims, and interests. The Proceeds of Sale shall be used to pay, in full, the Class 2 Claim at the Closing. All other Liens shall attach to the Net Sale Proceeds and be paid as set forth herein. The Net Sale Proceeds not paid at Closing, shall be held until agreement of all parties with alleged liens on the applicable proceeds or until the Court rules

upon the validity of contested Claims, and shall thereafter be disbursed in accordance with this Plan.

Under the Day 90 Sale Option and Day 180 Sale Option, the Plan Representative shall be responsible for consummating the Plan and the Sale. The reasonable fees and expenses of the Plan Representative incurred in connection with administering the Estates and consummating this Plan will be entitled to priority over all other claims as costs of administration and the Plan Representative and his professionals will be entitled to hold reasonable retainers. The Plan Representative shall have authority to conduct the day-to-day affairs concerning the Assets. The Plan Representative shall communicate all decisions regarding leases with the Plan Proponents and obtain consent of all Plan Proponents for any change to leases; provided, however, the Plan Representative shall be able to seek Court approval should consent of Plan Proponents not be received. The Property Manager and Broker shall both report to and take direction from the Plan Representative.

C.    Funds Generated During Chapter 11.

Funds generated from operations until the Closing Date or Day 90, as applicable, will be used for Plan Payments and for general operations; however, the Debtors' cash on hand as of Confirmation Date and the Closing Date shall be available for Administrative Expenses.

D.    Management and Control of the Debtor and Administration of the Plan.

Under the Day 90 Sale Option and Day 180 Sale Option (and until the Day 90 Reorganization Date under the Day 90 Reorganization Option) the day-to-day operations of the Debtors shall, be overseen by Plan Representative. After the Day 90 Reorganization Date, the day-to-day operations shall be overseen by Mr. Carson Good. At such time, Mr. Carson Good

shall have complete authority over the Reorganized Debtors' operations and shall be designated the manager of the Reorganized Debtors.

      E.     <u>Membership Interests in the Reorganized Debtors and Newco</u>.

        Upon the Effective Date, the Interests in both Debtors shall be extinguished. Under the Day 90 Reorganization Option and on the Day 90 Reorganization Date, the membership Interests in the Reorganized Debtors shall be vested, respectively, 100% in Newco in exchange for Newco's agreement to fund all Plan Payments, the Class 7 Debt Service Reserve (if necessary), the Classes 8 and 9 Payoff (as necessary), and to fund the Causes of Action by paying all legal expenses and costs to pursue such actions. Newco will be a new limited liability company formed by Mr. Carson Good. Good Gateway and SEG shall file no later than twenty (20) calendar days prior to the Ballot Date a full list of its membership interest holders, and each such holder's percentage interests.

      F.     <u>Procedures For Resolving Disputed Claims</u>.

        1.     <u>Prosecution of Objections to Claims</u>.

        Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, any party in interest shall have the right to make and file objections to all Claims prior to the Effective Date, and the Plan Representative or Reorganized Debtors, as applicable, shall have the exclusive right to make and file objections to Claims after the Effective Date; *provided*, that any party in interest with a claim objection pending as of the Effective Date may continue to prosecute such pending claim objection to final adjudication or other resolution.

Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth herein, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Interest. Except as set forth in the Plan, upon Confirmation the Plan Representative or Reorganized Debtors, as applicable, shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    Estimation of Claims.

The Plan Proponents may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether any party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount

constitutes a maximum limitation on such Claim, the Plan Proponents may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.    Cumulative Remedies.

All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

4.    Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Plan Representative or Reorganized Debtors, as applicable, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided herein, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed to by the Plan Representative or Reorganized Debtors, as applicable, or as otherwise specifically provided herein, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

5.    Allowance of Claims and Interests.

(i)    Disallowance of Claims.    All Claims held by Persons against whom the Plan Representative or Reorganized Debtors, as applicable, have obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Reorganized Debtors by that Person are turned over to the Plan Proponent or Reorganized Debtors, as applicable.

(ii)    Allowance of Claims.

Except as expressly provided herein, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Case, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest.

6.    Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Plan Proponents' interpretation of the Plan shall govern.

## ARTICLE IX – MISCELLANEOUS.

### A.    Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under this Plan will be deemed to be authorized and approved without the need for any further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtors' operating agreements such that the provisions of this Plan can be effectuated. The Plan Representative or the Reorganized Debtors, as applicable, shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan, including but not limited to conducting the Sale and execution of a new operating agreement consistent with the provisions of the Plan.

### B.    Post-Confirmation Status Report.

Within 120 days of the entry of the Confirmation Order, the Plan Representative or Reorganized Debtors, as applicable, will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan, including a report on the status of the Causes of Action. The status report will be served on the United States Trustee, Holders of Class 8 and 9 Claims, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

### C.    Preservation, Prosecution and Defense of Causes of Action.

Except as set forth herein, upon Confirmation, the Plan Representative or Reorganized Debtors, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, whether or not such causes of action have been commenced as of the

Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against the Debtors or the Bankruptcy Estates. The Plan Representative or Reorganized Debtors, as applicable, shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Plan Representative or Reorganized Debtors, as applicable, and collection; *provided*, *however*, that the Plan Representative or Reorganized Debtors, as applicable, shall be authorized at any point in any litigation (a) to enter into such settlements as the Plan Representative or Reorganized Debtors, as applicable, deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Plan Representative or Reorganized Debtors, as applicable, deem such action to be in the best interest of creditors without Bankruptcy Court or other approval.

D.      Retention of Professionals.

The Plan Representative or Reorganized Debtors, as applicable, may retain professionals on such terms as the Plan Representative or Reorganized Debtors, as applicable, deem reasonable without Bankruptcy Court approval.

E.      Conditions to Effectiveness.

The Effective Date shall not occur until the tenth (10th) day after the entry of the Confirmation Order by the Bankruptcy Court in a form and content acceptable to the Plan Proponents. If an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Plan Proponents may, in writing, elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

Upon the satisfaction or waiver of the foregoing conditions, the Plan Proponents shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

F.    Exculpation from Liability.

The Plan Proponents, the Plan Representative, the Reorganized Debtors, their respective members, managers, officers, and directors, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided, however*, that this exculpation from liability provision shall not alter the terms of this Plan (and treatment of creditor claims therein) and shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Plan Proponents, the Plan Representative, the Reorganized Debtors, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan, and shall not modify or otherwise affect any other terms of this Plan (including but not limited to the

treatment of creditor claim). The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.**

Notwithstanding the foregoing, (i) the Plan Representative or the Reorganized Debtors, as applicable, shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan and (ii) the Debtors' respective members, manager or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

G.    Police Power.

Nothing in this Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

H.    Revocation and Withdrawal of this Plan.

The Plan Proponents reserve the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Plan Proponents revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

I.    Modification of Plan.

The Plan Proponents may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  On or before substantial consummation of the Plan, the Plan Proponents may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

J.    Retention of Jurisdiction.

After the Effective Date, the Reorganized Debtors will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.      All objections to the allowance of Claims and Interests and the compromise of Claims;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtors' cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Plan Representative or Reorganized Debtors, as applicable, in the ordinary course of business without a Bankruptcy Court order; *provided, further, however*, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtors or the Plan Representative or Reorganized Debtors, as applicable, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 8 and 9 Claims, respectively;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

49

8.     All Claims arising from the rejection of any executory contract or lease;

9.     Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estates from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized Debtor or the Estates.

K.     <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

L.     <u>Cramdown</u>.

The Plan Proponents reserve the right to seek confirmation of this Plan under § 1129(b) of the Code.

M.     <u>Discharge</u>.

As of the Effective Date and pursuant to § 1141 of the Code, unless otherwise specified herein, the Debtors shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h), and 502(i) of the Code, whether or not:

1.     A proof of claim based upon such debt is filed or deemed filed under § 501 of the Code;

2.     A Claim based upon such debt is allowed under § 502 of the Code; or

3.     The Holder of a Claim or Interest based upon such debt has accepted the

Plan.

N.     <u>Notices</u>.

All notices required or permitted to be made in accordance with the Amended

Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by

United States Mail to the following:

<u>Counsel for Good Gateway and SEG</u>:

R. Scott Shuker, Esq.
Latham, Shuker, Eden & Beaudine, LLP
111 E. Magnolia Ave., Suite 1400
Orlando, Florida  32801

<u>Counsel for SummitBridge</u>

Richard A. Robinson, Esq.
Reed Smith, LLP
1201 North Market Street, Suite 1500
Wilmington, DE  19801

<u>United States Trustee</u>:
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida  32801

O.     <u>Manner of Payment</u>.

Any payment of Cash made under this Plan may be made either by check drawn on

an account of the Plan Representative or the Reorganized Debtors, as applicable, by wire transfer,

or by automated clearing house transfer from a domestic bank, at the option of the Plan

Representative or Reorganized Debtors, as applicable.

P.    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Plan Representative or Reorganized Debtors, as applicable, in making Distributions shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.    The Plan Representative or Reorganized Debtors, as applicable, may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Plan Representative or Reorganized Debtors, as applicable, the necessary information to comply with any withholding requirements of any governmental unit.    Any property so withheld will then be paid by the Plan Representative or Reorganized Debtors, as applicable, to the appropriate authority.    If the Holder of an Allowed Claim fails to provide to the Plan Representative or Reorganized Debtors, as appropriate, the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Plan Representative or Reorganized Debtors, as appropriate, to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below.    The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

Q.    <u>Transmittal of Distributions to Parties Entitled Thereto.</u>

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.    All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.    Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail

upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.

     R.     <u>Distribution of Unclaimed Property</u>.

     Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 8 or 9 Claims in accordance with the provisions of this Plan.  However, checks issued by the Plan Representative or Reorganized Debtors, as applicable, with respect to Allowed Class 8 and 9 Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Plan Representative or Reorganized Debtors, as applicable.  Requests for re-issuance of any such check shall be made in writing to the Plan Representative or Reorganized Debtors, as applicable, by the Holders of the Class 8 and 9 Claims with respect to the check originally issued.

S.    <u>Transfer Taxes</u>.

Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.  Accordingly, the Sale that may be conducted pursuant to the Plan shall not be taxed under any law imposing a stamp tax or similar tax.

**DATED** this 15th day of December 2015.

/s/ R. Scott Shuker
**R. Scott Shuker, Esq.**
Florida Bar No. 0984469
rshuker@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
*Attorneys for SEG and Good Gateway*

/s/ Richard A. Robinson
Richard A. Robinson, Esq.
Florida Bar No. 41238
rrobinson@reedsmith.com
Reed Smith, LLP
1201 North Market Street, Suite 1500
Wilmington, Delaware 19801
Tel:  302-778-7555
*Attorney for SummitBridge*