**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re:<br>NILHAN HOSPITALITY, LLC<br><br>        Debtor.<br>_____/ | Case No.: 15-03447-KSJ<br><br>Chapter 11 |
| In re:<br>ORLANDO GATEWAY PARTNERS, LLC<br><br>        Debtor.<br>_____/ | Case No.: 15-03448-KSJ<br><br>Chapter 11 |

**OBJECTION TO CONFIRMATION OF GOOD GATEWAY, LLC'S, SEG GATEWAY, LLC'S AND SUMMITBRIDGE NATIONAL INVESTMENT IV, LLC'S JOINT AMENDED AND COMBINED PLAN OF REORGANIZATION FOR NILHAN HOSPITALITY, LLC ("NH") AND ORLANDO GATEWAY PARTNERS, LLC ("OGP")**

The Debtors-in-possession, by and through their undersigned counsel requests that the Court object to Creditors, SummitBridge National Investment IV LLC's ("SummitBridge"), Good Gateway, LLC's ("GG") and SEC Gateway, LLC's ("SEG") joint amended plan of reorganization dated December 15, 2015 (ECF# 107 & 111 – the "Amended Plan") and the related joint amended Disclosure Statement (ECF# 106 & 110 – the "Amended Disclosure Statement") and state as follows:

**The Plan was Filed in Bad Faith**

1. The Amended Plan was proposed in bad faith, and thus fails to meet the requirements of § 1129(a)(3).

2. SummitBridge has refused to provide payoff figures to the Debtors, who have obtained financing from a third party, unrelated lender, and refuses to sell the note and mortgage under simple terms, forcing the Debtor to seek approval for post-petition financing and equitable

subordination of the new lender's claim. SummitBridge has thwarted the Debtors attempts to reorganize and has run up over $120k in legal fees in bad faith.

3. SEG Gateway's ownership is currently at issue, a situation that is well known to SEG and Good Gateway (controlled by Mr. Carson Good – the proposed manager of the Reorganized Debtors under the Amended Plan), but previously undisclosed to this Court. GG acquired its 100% ownership interest in SEG, an acquisition that allowed SEG to file a cross-claim against the Debtors and is the sole reason SEG was able to obtain a Judgment against the Debtors, at a time when the membership interest GG acquired was owned by a chapter 7 bankruptcy estate that did not authorize the assignment.

4. SEG was previously owned 87% by a company called Orlando Gateway, LLC (the majority member "OG") which was solely owned by Steven Smith.[1] Mr. Smith filed for chapter 7 in 2010, and received his discharge in January of 2011, without ever disclosing his ownership interest in the LLC in his schedules, statement of financial affairs, or at any point in his bankruptcy proceeding. (See Schedules and Statement of Financial Affairs, attached hereto as **Exhibit "A"**)

5. Shortly after receiving his discharge, on February 11, 2011, Smith allowed a $7.6M default Judgment to be entered against SEG and Smith personally. Less than a year later, Smith assigned his interest in OG to GG, purporting to give GG a 100% interest in SEG.

6. As further evidence of the Creditors' bad faith, there was no consideration for the assignment of Steve Smith's 100% interest in OG to Carson Good (through his company GG), a long-time friend and business partner. Consideration for the transfer was in the form of a release provided to Smith on a $7.6M default Judgment, but Smith had already received his chapter 7 discharge at the time of the assignment (on January 1, 2011) and thus realized no benefit for the

---

[1] The remainder of the equity interest in SEG was owned by Good Gateway, as a minority member.

transfer – a transfer he had no authority to make as his membership interest in SEC was rightfully property of the bankruptcy estate.

7. The only purpose for the assignment, when viewed with the failure to disclose the asset in his chapter 7 bankruptcy, was to provide GG with standing to file a cross-claim against the Debtors on behalf of SEG Gateway. Standing that never would have been recognized had the Court been aware that Smith's interest in OG was property of his chapter 7 bankruptcy estate. An appeal is pending that would invalidate SEG's Judgment against the Debtor on the basis that SEG lacked standing to bring the cross-claim.

8. Mr. Smith's chapter 7 has been reopened for the purpose of the estate selling the chapter 7 estate's 100% membership interest in OG, an entity that still owns the controlling membership interest in SEG, given the fact that the assignment from Smith to Good was invalid as Smith did not own the interest he purported to transfer. (See Motion to Reopen, Order Reopening, and Notice of Reappointment of Trustee, Composite **Exhibit "B"**)

9. Within a very short time (perhaps a matter of days), the equity interest of the estate will be sold, and then proceedings will be initiated to obtain a judicial determination that the assignment of Mr. Smith's interest in OG to GG was invalid, and GG will no longer be a controlling member of SEG.

10. The new owner of OG, and thus the controlling member of SEG Gateway, will be prejudiced if the Plan Proponent's Plan is granted, as the terms of the Plan would be binding on the new owner with no say as to the Plan Treatment or whether Good should be given control of the Debtors' assets. Invalidation of the transfer would not only require SEG's Judgment to be set aside, but it would also render SEG's support of the Amended Plan improper unless authorized by the new controlling member.

11. A further danger of confirming the Amended Plan and further evidence of bad faith is the fact that the Creditors Plan would provide for Good to take over the equity interests in the Debtor, and give Good unfettered authority to dismiss the pending appeals of the SEG and GG Judgments. The on-going Appeal of the SEG Gateway Judgment, based on the invalid assignment of Smith's ownership interest, would be cause for a new trial or vacating of the Judgment. However, if Good assumes control of the Debtor, he will almost certainly cause the Debtors to cease prosecution of the appeals and dismiss the appeals.

12. The Plan specifically provides that Newco or the Plan Administrator may determine to dismiss or settle the appeals, deemed to be in the best interests of the creditors, without Bankruptcy Court approval. However, the only creditors whose interests will be considered are those of companies controlled by Good, whose Judgments are at the heart of the appeals. The fact that the Judgments are also against other entities and individuals who will be impacted by dismissal of the Appeals is not taken into consideration. Good will have unfettered authority to dismiss such appeals, at the peril of the other Appellants.

13. Nilhan Financial ("NF") is a legitimate creditor of the Debtor with an approximately $33M mortgage secured by the Debtors assets. This mortgage arose in part because NF satisfied a $24M bank loan, and further loaned OGP another $10M for development. Simultaneously, Niloy and Rohan, LLC bought a 55% interest in OGP, while SEG owned the other 45%.[2] NF continued investing money into OGP to keep the project and development alive through the real estate crisis. The NF mortgage is a valid, first priority mortgage against the property, and should be satisfied by the sale of the real property, in advance of any Judgments owed to SEG or GG, or any unsecured creditors. If the Appeals of the GG and SEG Judgments are granted, then

---

[2] In 2009, prior to his bankruptcy filing, Smith transferred the 45% interest

SummitBridge becomes the only other real creditor of the Debtor besides the Orlando County Tax Collector (with liens secured by the real property).

14. The Creditor's Plan provides that if SummitBridge is paid in full within 90 days – then Newco (controlled by Good) will become the owner of the real property with the ability to reorganize outside of chapter 11 – and that SEG and GG will retain their liens, but have the ability to release the liens to allow for the future development or sale of the Debtor's property.

15. The Creditor's Plan essentially allows for the Creditors – and Good in particular as the controlling member of SEG and GG – to gain control of the Debtor's real property and to sell such property in satisfaction of judgments which are subject to a valid dispute by the Debtors without regard for the existence of such dispute or the validity of the Creditor's Judgments.

**The Plan Violates the Absolute Priority Rule**

16. Further, the Plan provides that Class 1 Creditors (SEG and GG) shall retain their liens and the ability to be paid in full, with priority over NF, regardless of the outcome of the NF Adversary. While the Plan purports to allow for resolution of the appeals of the judgments and the NF Adversary, with effective control of the Debtor and the ability to sell off the Debtor's property prior to adjudication of the NF Adversary and the Appeals, the Creditor's Plan leaves the Debtor with no real opportunity for success or recourse if successful.

17. The Amended Plan calls for the payment in full of allowed unsecured claims – other than NF – under classes 8 and 9 – without excluding the Class 1 creditors from the unsecured pool if NF is allowed to retain its existing lien priority. The treatment of NF's claim in the Amended Plan states that the property value is only ~$9M, and that after payment to SummitBridge, there would be very little left to pay NF, and asserting that NF would have a large deficiency claim in any event. However, SEG and GG propose to pay themselves in full, through class 1 or classes 8

and 9, regardless of whether NF's claim is subordinated. Under all scenarios, the plan proponents propose to pay themselves in full, as secured or unsecured creditors, while admitting that there would not be adequate funds to pay NF regardless of the outcome of the NF Adversary. This proposal, under either of the sale scenarios or the reorganization scenario, violates the absolute priority rule of § 1129(b)(2)(C).

**The Amended Plan is not Feasible**

18. The Amended Plan does not meet the requirements of 1129(a)(11) as it is not feasible.

19. The Plan does not indicate the source of funding for the proposed payoff of SummitBridge's claim – which is suspect given the fact that the Debtor's proposals to payoff SummitBridge's claim during this case have been rejected. If the Plan Proponents have a source of funding to pay off SummitBridges's $5M claim, it should be disclosed. Without a source of financing, then the 90 day "reorganization option" is not feasible.

20. Debtor has no operating cash except for the cash collateral of NF and SummitBridge, which should be returned to the secured creditors, and thus no means of making the payments required on the effective date, including the payment of administrative expenses and other claims in the case.

21. The Plan calls for the payment in full of allowed unsecured claims – other than the claims of NF – under classes 8 and 9 – without indicating the source of such funds. The Plan Proponents claim that the property value is only ~$9M, and that after payment to SummitBridge, there would be very little left to pay NF, which would be left with a large deficiency claim. However, the Creditors propose to pay themselves in full, in class 1, or through classes 8 and 9, whether or not NF's claim is subordinated. Admitting that there are inadequate funds to pay more

than $9M, it would be impossible to satisfy the SummitBridge, tax claims, GG and SEG claims in full, as proposed under the Amended Plan.[3] Under all scenarios, the plan proponents propose to pay themselves in full, as secured or unsecured creditors, while admitting that there would not be adequate funds to pay NF regardless of the outcome of the NF Adversary.

22. There has been no demonstration that Newco has capital to make the Plan Payments or to provide the refinancing proposed as the consideration for granting Newco equity interests in the Debtor.

**No Consideration for Equity Interests to be Transferred to Newco**

23. After admitting that there are insufficient funds to pay NF, the Plan Proponents then go on to say that Mr. Good will be able to generate sufficient revenue by leasing the entities to make all plan payments, and secure refinancing in the event that NF is deemed to have a first priority allowed secured claim (in contradiction of prior assertions that NF will not be paid in full, even if deemed to have an allowed first priority claim).  "Under all scenarios Mr. Carson Good's plan for the Reorganized Debtor will allow the Reorganized Debtor to make all Plan Payments." – This does not provide for the infusion of any capital by Good, SEG or GG, but merely suggests that Good will be a better manager of the Debtor than the current management.  There is no actual exchange of value proposed as consideration for Good's assuming control and ownership of the Debtors.

24. Beyond simply handing the Reorganized Debtors over to Good for no consideration, the Plan fails to provide any manner for purchasing equity interests in the Debtor, and fails to detail the amount of funds that the Debtor must provide to comply with the terms of the Amended Plan.  Under any scenario contemplated, it appears that the Plan payments would be

---

[3] It is notable that the ONLY creditor not proposed to be paid in full through any scenario in this plan is NF.

very low, and given that only NF and the Class 1 creditors would receive payments (the Class 1 creditors essentially paying themselves), with minimal payments proposed during the Plan period for the tax claims and no other creditors, so the Plan payments must be incredibly low. Neither Good, nor any of the entities he controls, will actually contribute substantial value under the Plan.

**Impermissible and Prejudicial Releases**

25. The Plan provides for impermissible exculpation of the Plan Proponents from liability in connection with the Amended Plan or the Bankruptcy Case, providing that such exculpation is "an integral part of this Plan." In the fact of the clear and apparent fact that Smith did not have authority to transfer his interest in OG to GG, and the fact that his controlling membership interest in SEG is about to be sold to a new member, who will likely invalidate the transfer to GG, rendering it clear that SEG had no standing to obtain its judgment against the Debtor. Should the Appeal come to its natural conclusion, and Judgment be granted in favor of the Debtors, there will be no liability for the Plan Proponents in having sold off the Debtor's Property, despite knowing at this moment that their Judgment was based on an invalid and unlawful transaction.

**Improper Classification of Claims**

26. The Plan should not be confirmed as is improperly classifies claims in violation of § 1122.

27. The Claims of SEC and GG, while both owned by Good, are subject to appeal on different grounds and are not substantially similar. While each holds a judgment against the Debtors at present, SEG's claim is very likely to be overturned on appeal given the invalid transfer and lack of standing, and it is likely that future adjudication of the appeals would alter the character and amounts due to each of the Class 1 claimants.

28.     The Amended Plan separately classifies a potential deficiency claim for NL, while creating separate classes for General Unsecured Claims. The claims of NL, GG and SEG are all in dispute, and all subject to become unsecured deficiency claims depending on the outcome of the NL adversary litigation. The Plan Proponents have ensured that NL will not be paid on its unsecured claim, while promising to pay all other unsecured claims (including their own potential unsecured claims) in full. There is no legitimate basis for separately classifying the disputed, contingent unsecured claim of NL, without putting all disputed, contingent unsecured claims in the same class.

29.     The Debtors do not have a substantial unsecured creditor body – the only likely claimants are either NL, GG or SEG. Separately classifying NL's claims from classes 8 and 9 is inequitable and not based on any reasonable criteria other than to unfairly prejudice NF.

**Conclusion**

30.     At a minimum, confirmation of the Amended Plan should be continued until such time as the Plan Proponents can amend the Plan to meet the requirements of § 1129, and until the sale of the Smith Chapter 7 Estate's interests is fully resolved, with the new member able to assert its rights with regard to this proceeding and SEG's position therein.

**WHEREFORE** Debtors-in-possession object to the confirmation of the Creditor's OGP and NH Amended Plans and request that the Court allow the DIPs and the Plan Proponents to amend their proposed Plans of Reorganization and Disclosure Statements, and granting any further and additional relief the Court deems just and prudent.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that on February 9, 2016 I caused a copy of the forgoing to be served by first class mail postage prepaid to all parties on the attached mailing matrix list who are not electronic Filing Users.

MARKARIAN FRANK WHITE-BOYD & HAYES
Proposed Attorneys for Debtors-in-Possession[4]
2925 PGA Blvd., #204
Palm Beach Gardens, FL 33410
(561) 626-4700
(561) 627-9479-fax

By: */s/Malinda L. Hayes*_________
MALINDA L. HAYES, Esq.
Florida Bar No. 0073503

X:\WPDOCS\Client Matters\Orlando Gateway Partners\Joint motion to approve financing and for equitable subrogation of SummitBridge CLaim.docx

[4] An Emergency Motion to Substitute Counsel to authorize representation of the Debtor by Markarian Frank White-Boyd & Hayes is pending.