### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION
### www.flmb.uscourts.gov

In re:                                          CASE NO.  6:15-bk-03448-KSJ

ORLANDO GATEWAY PARTNERS,                        CHAPTER 7
LLC,

                     Debtor.
_____/

### JOINT MOTION BY GOOD GATEWAY, LLC, SEG GATEWAY, LLC, AND EMERSON C. NOBLE, AS CHAPTER 7 TRUSTEE, TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019

GOOD GATEWAY, LLC ("Good Gateway") and SEG GATEWAY, LLC ("SEG") (Good Gateway and SEG shall be collectively referred to herein as the "Gateway Creditors"), together with EMERSON C. NOBLE, as Chapter 7 Trustee for the bankruptcy estates of Nilhan Hospitality, LLC and Orlando Gateway Partners, LLC (the "Trustee") (Good Gateway, SEG and the Trustee shall be collectively referred to herein as the "Settlement Parties"), move this Court, pursuant to 11 U.S.C. §105(a) and Rule 9019 of the Federal Rules of Bankruptcy Procedure, for an Order approving the settlement reached by the Settlement Parties that resolves various matters between them as set forth in the settlement agreement (the "Agreement") attached hereto as **Exhibit A**.  In support of this motion, the Settlement Parties state as follows:

### BACKGROUND

1.    On April 20, 2015 (the "Petition Date"), Nilhan Hospitality, LLC ("NH") and Orlando Gateway Partners, LLC ("OGP") (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Florida (the

"Bankruptcy Court"), Case No. 6:15-bk-03447-KSJ and Case No. 6:15-bk-03448-KSJ, respectively (the "Bankruptcy Cases").

2.    Prior to the Petition Date, on July 10, 2010, Good Gateway filed a complaint commencing the litigation styled *Good Gateway, LLC v. Orlando Gateway Partners, LLC*, et al., Case No. 2010-CA-015315-O (the "State Court Litigation"), in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "State Court"). Later, on May 29, 2012, SEG filed a crossclaim complaint in the State Court Litigation against OGP, Nilhan Hospitality, Chittranjan K. Thakkar ("Thakkar"), NCT Systems, Inc. ("NCT"), Niloy & Rohan, LLC ("N&R") (Thakkar, NCT, N&R, collectively referred to as the "Thakkar Entities"). On October 3, 2014, Good Gateway and SEG obtained final judgments against the Debtors and the Thakkar Entities (the "Judgments"). On November 3, 2014, the Thakkar Entities and the Debtors filed notices of appeal of the Judgments to the Fifth District Court of Appeal ("Appellate Court") resulting in the following appeals: *Orlando Gateway Partners, LLC, et al., v. SEG Gateway, LLC, et al.*, Case No. 5D14-3962 (Fla. 5th DCA) and *Chittranjan K. Thakkar, an individual, et al., v. Good Gateway, LLC et al.*, Case No. 5D14-3964 (Fla. 5th DCA) (collectively the "Appeals"). On June 2, 2015, this Court granted relief from the automatic stay to allow the Appeals to proceed to conclusion. (Doc. No. 26 in Case No. 15-bk-3448).

3.    On July 28, 2015, Gateway filed Claim No. 4-1 in the NH case in the principal amount of $2,500,000.00 and Claim No.6-1 in the OGP case in the principal amount of $2,500,000.00 (the "Gateway Claims"), and SEG filed Claim No. 5-1 in the NH case in the principal amount of $12,000,000.00 and Claim No. 7-1 in the OGP case in the principal amount of $15,376,435.58 (the "SEG Claims").

4.    On February 10, 2016, the Bankruptcy Court entered an Order Converting Case from

Chapter 11 to Chapter 7 in the Bankruptcy Cases, and appointed Emerson C. Noble, as Chapter 7 Trustee.

5.      On June 20, 2016, the Gateway Creditors filed a Motion to Approve Settlement (the "Initial Settlement Motion") (Doc. No. 240). The Trustee joined in the Initial Settlement Motion by notice filed with the Court on July 12, 2016 (Doc. No. 266). On July 11, 2016, the Thakkar Entities and BKGD, LLC ("BKGD") each submitted Objections to the Initial Settlement Motion (the "Objections"). Ultimately, the Court, on July 13, 2016, declined to approve the Initial Settlement Motion due largely to the potential impact of the Appeals on the SEG Claims.

6.      Subsequent to July 13, 2016, the Parties have been negotiating to find a settlement to: (a) address the Court's concern in respect of the Appeals; and (b) address certain disputes in respect of the real property sale. Given the costs and risks associated with the continuation of the Appeals, (and any possible retrial) the Settlement Parties seek approval of the Agreement, which resolves the Gateway Claims, SEG Claims, as well as the various matters in a manner that is in the best interests of the Debtors' creditors and estates. Accordingly, subject to approval by the Court, the Settlement Parties seek approval of the Agreement containing the following material provisions.

## MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

7.      As a result of the good-faith, arms –length negotiations, and to avoid the expense, inconvenience, delay, and to expedite the closure of the Debtors' cases, the Parties have reached a compromise and settlement, the approval of which will aid in furthering the administration of the Debtors' estates. For convenience, a summary of those terms is set forth herein, but reference should be made to the form of the Settlement Agreement for the actual terms of the proposed settlement.[1]

---

1 If any discrepancy exists between this summary and the Agreement, the terms in the Agreement, a copy of which is attached hereto as **Exhibit A**, shall control.

The settlement on the terms set forth in the Agreement meets all applicable legal standards and is well within the range of reasonableness.

8. The salient provisions of the Agreement include:

a. This Settlement Agreement shall be effective upon Bankruptcy Court approval ("Effective Date").

b. Appeals: Upon entry of a Final Order approving the Settlement Agreement, the Trustee shall dismiss the Appeals, filed by NH and OGP, with prejudice.

c. Sale Motions: Gateway and SEG each agree to support the Sale Motions and will not credit bid their judgments at any auction conducted in accordance with the Sale Motions; provided, however, if the terms of the Sale Motions (including price, allocation, and credit bidding) are altered, this provision shall not be applicable. The Trustee reserves the right to object to Gateway and SEG credit bidding.

d. Gateway Claims: The Gateway Claims shall be deemed Allowed Secured Claims in the Bankruptcy Cases. In the NH case, the Gateway Claims shall have priority over all other Allowed Claims except SummitBridge and real estate taxes. In the OGP case, the Gateway Claims shall have priority over all other Allowed Claims except real estate taxes, SummitBridge, and if the NF Adversary is unsuccessful, subject to the Allowed Claim of NF as to all OGP real property except the Sixt Tract. The Trustee agrees to seek to allow the distribution of the Gateway Claims, as to NH, upon the later of: (i) the Effective Date; or (ii) closing of the sale of the NH real Property.

e. SEG Claims: The SEG Claims shall be deemed Allowed Secured Claims in the Bankruptcy Cases. In the NH case the SEG Claims shall have priority over all other Allowed Claims except SummitBridge, the Gateway Claims, and real estate taxes. In the OGP case, the SEG Claims shall have priority over all other Allowed Claims except real estate taxes, SummitBridge, the

Gateway Claims, and, if the NF Adversary is unsuccessful, subject to the Allowed Claim of NF as to all OGP real property except the Sixt Tract.

      f.    <u>Gateway Claims – NH Carveout</u>: The Gateway Creditors will allow a carveout from their distribution in the NH case for: (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims; and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to Debtor.

      g.    <u>Gateway Claims – OGP Carveout</u>: The Gateway Creditors will allow a carveout from their distribution in the OGP case for: (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims (except the Claim of NF); and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to the Debtor.

      h.    <u>SEG Claims – NH Carveout</u>: The Gateway Creditors will allow a carveout from their distribution in the NH case for: (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to Debtor; provided, however, the twenty percent (20%) carveout in this subsection (c) shall be increased: (i) to forty percent (40%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed and remanded for a new trial; and (ii) to eighty percent (80%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed entirely with no re-trial.

      i.    <u>SEG Claims – OGP Carveout</u>: The Gateway Creditors will allow a carveout from their distribution in the OGP case for: (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims (except the Claims of NF); and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to

the Debtor; provided, however, the twenty percent (20%) carveout in this subsection (c) shall be increased: (i) to forty percent (40%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed and remanded for a new trial and (ii) to eighty percent (80%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed entirely with no re-trial.

## BASIS FOR RELIEF REQUESTED

### A.    The Settlement Agreement Satisfies the *Justice Oaks* Factors

9.    Through this motion, the Settlement Parties request that this Court enter an Order approving the Agreement to permit the amicable resolution of claims between them. "It is generally recognized that the law favors compromise of disputes over litigation for litigation sake." *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). As a matter of policy, compromises and settlements are favored in order to minimize litigation and expedite the administration of the bankruptcy estate. *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996).

10.    When considering settlements for approval under Bankruptcy Rule 9019, the bankruptcy court is to "determine whether the proposed settlement is fair and equitable." *In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998); *In re Gallagher*, 283 B.R. 342, 346 (Bankr. M.D. Fla. 2002). The Eleventh Circuit Court of Appeals has set forth factors to assist bankruptcy courts in determining whether a settlement proposal meets the appropriate standard. *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005). These factors are as follows: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) paramount interests of creditors and proper deference to their reasonable views. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990).

6

11.     It is not necessary for a bankruptcy court to explicity consider all four *Justice Oaks* factors when approving a proposed settlement. *Chira v. Saal, et al. (In re Chira)*, 567 F.3d 1307, 1313 (11th Cir. 2009) (affirming bankruptcy court's approval of settlement agreement where bankruptcy court explicitly evaluated only two of the four Justice Oaks Factors.) Also, a bankruptcy court is not obligated to actually rule on the merits of the various claims or conduct a "mini trial" on the merits of the underlying action. *In re Van Diepen, P.A.*, 236 F. Appx. 498, 503 (11th Cir. 2007) see also, *In re Soderstrom*, 477 B.R. 249, 252 (Bankr. M.D. Fla. 2012). Rather, settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

12.     The Parties submit that the Agreement overwhelmingly satisfies the *Justice Oaks* factors. The Agreement is the product of extensive settlement discussions and negotiations between the Settlement Parties. The Settlement Parties submit that the Agreement is the direct result of the exercise of their business judgment and is in the best interests of the Debtors' estates when considering the uncertainties, significant expense, and potential delay involved in resolving the various claims between them. As such, the Settlement Parties believe that the compromise set forth in the Agreement is reasonable and falls well above the lowest point on the range of reasonableness as required by Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and applicable case law. *See Id.* at 1016 (quoting *In re W.T. Garant Co.*, 699 F.2d 599 (2d Cir. 1983). The Settlement Parties' analysis of the applicable *Justice Oaks* factors is set forth in further detail below.

13.     ***The Probability of Success in the Litigation***. The first *Justice Oaks* factor reflects the Supreme Court's view that a court should form an "intelligent and objective opinion" of the probability of success in the underlying litigation and inherent costs in such litigation. *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

In fact, some courts have identified this factor as most important in determining the reasonableness of a settlement under Bankruptcy Rule 9019(a). *In re Adelphia*, 327 B.R. 143, 160 (Bankr. S.D.N.Y. 2005) (This factor. . . is in my view the most important factor, and I weigh it accordingly.").

14.      The Agreement, if approved, would dispose of the Appeals by the Debtors and put to rest years of litigation. Assuming the Trustee did not enter into the Agreement, and continued with the Appeals, there is no guaranty that the resulting dissipation of estate funds would result in a clear resolution in favor of the Trustee. In fact, it is likely the Trustee would continue to expend estate resources advancing appeals with little to no probability of success. To that end, statements made by counsel for Thakkar, NCT and N&R in essence confirmed that the Trustee would dissipate estate resources fighting what appears to be an uphill battle as to Gateway Claims:

> Mr. Roy: "I will say if you want to compare the two, the SEG Judgment going away is much more likely to happen than the Good Gateway Judgment to go away on appeal.
>
> The Court: Right.

(*Hearing Transcript*, July 13, 2016 pg. 46, Lines 2-9)

15.      In analyzing the first factor, the Settlement Parties have considered that the Appellate Court could take up to a year to return one of three possible rulings for each of the Claims: (i) it could deny the Appeals and uphold the Judgments entered in favor of Good Gateway or SEG in the entirety; (ii) it could reverse the Judgments in favor of Good Gateway or SEG and remand the case for a new trial; or (iii) it could reverse the Judgments in favor of Good Gateway or SEG in their entirety with no re-trial. These varying possibilities lend little certainty to the Trustee's probability of success. Moreover, if the Claims are ultimately upheld, the Gateway Creditors are not required to allow any administrative or unsecured claims to be paid ahead of their perfected judgment lien let alone allow a carveout in favor of the Thakkar Entities. The Agreement, on the other hand, achieves

an almost immediate resolution to the Appeals without further expense, delay or risk of loss on the part of the Debtors' estate and its creditors.

16.     It is important to note that the "litigation" in the instant matter is an appeal. Certainly, it is well known that appeals, in general, are at-best a 50-50 proposition and, in the instant case, the appeals result from jury verdicts rendered after a three-week trial with most of the appellate issues considered on a clearly erroneous standard.

17.     In the Objections, the Thakkar Entities did not even raise the possibility that the Gateway Claims would be reversed. Rather, the Objections focused on alleged defects related to the SEG Claims. Although SEG doesn't believe the alleged ownership issues cause a substantial likelihood of success for the Appeals, SEG has now agreed to an increased carveout from its claims in favor of the estates based upon how the 5th DCA rules on the Appeals. Thus, the Parties have grafted into the Agreement, in respect of the SEG Claims, a flexible carveout which is directly tied to the probability of success.

18.     ***The Complexity of Litigation.***  In evaluating the reasonableness of a settlement, a court should "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *TMT Trailer*, 390 U.S. at 424. The Debtors' cases have been the subject of extensive litigation on a number of fronts resulting in multiple rounds of discovery and voluminous briefing. Of particular significance, the Agreement helps to alleviate the added complexities litigation between the Settlement Parties might add to the Trustee's auction process by securing an agreement from the Gateway Creditors that they will not credit bid their judgments at any auction conducted in accordance with the sale motions pending before this Court.

19.     Absent approval of the Agreement, the Debtors will be forced to engage Good Gateway and SEG in what would continue to be highly contentious litigation of complex issues concerning the Trustee's auction procedures and ownership interests of SEG. The proposed settlement resolves these issues between the Settlement Parties immediately and avoids the likely dissipation of estate resources that would have to be spent litigating the very issues resolved through the Agreement. Consequently, this factor also clearly weighs in favor of approving the Agreement.

20.     *The Interests of the Creditors*. In considering the paramount interest of the creditors, the Settlement Parties necessarily weighed all of the *Justice Oaks* factors. In this case, the Agreement resolves all of the outstanding issues between the Settlement Parties; prevents the Settlement Parties from undertaking expensive, protracted, multi-party litigation involving complex issues of both facts and law; and provides for the payment of all Allowed Administrative, Priority, and non-insider unsecured claims prior to the Gateway Creditors superior judgment lien. The Agreement also grants a carveout that will benefit of the Thakkar Entities irrespective of the outcome of the Appeals. The Thakkar Entities will object and argue a larger distribution is possible; however, the essence of a compromise is that both sides take less than total victory to achieve certainty and conserve legal and judicial resources..

21.     Importantly, as to the SEG Claims, the compromise allows the creditors to a "have their cake and eat it too." The Agreement has three potential avenues by which the Settlement Parties will resolve their disputes concerning the SEG Claims without the uncertainty of a decision from the 5th DCA. SEG has agreed to a carveout from its distribution in the Debtors' cases for: (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims; and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to Debtor; provided, however, the twenty percent (20%) carveout in this

subsection (c) shall be increased: (i) to forty percent (40%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed and remanded for a new trial; and (ii) to eighty percent (80%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed entirely with no re-trial. Give this carveout, even a total victory on the appeals by the Gateway Creditors results in funds for the Thakkar Entities.

22.     In the Objection, the Thakkar Entities, in essence, argued that the potential reversal as to SEG meant the prior settlement failed the Justice Oak's Standard. At the hearing, the Court opined that it simply could not find an avenue to approve the prior settlement while knowing that issues as to the SEG Claims would ultimately be decided by the 5th DCA with such potentially voiding the SEG Claims. The Parties submit that the Agreement solves the Court's dilemma. In effect, the Parties have created a flexible Agreement that varies the amount distributed to SEG based upon the ruling by the 5th DCA.

23.     Absent approval of the Agreement, the Debtors' estates will likely be mired for multiple months, if not years, of litigation and mounting administrative costs, with no prospect of recovery greater than the recovery offered by the Gateway Creditors. After considering all the attending factors, the Settlement Parties believe that the Agreement is reasonable and in the best interests of the estate, and will resolve all disputes among the Settlement Parties avoiding delay and costly litigation with respect thereto. For all the foregoing reasons, the Settlement Parties believe that good cause exists for approval of the Agreement. The Agreement not only surpasses the minimum threshold of reasonableness necessary to warrant approval, but it represents the best possible outcome for the Debtors and their estates and creditors.

**B.     As Managing Member, Good Gateway has the sole authority to bind SEG to the Agreement.**

24.     A primary focus of the Objections was a spurious contention that the Gateway Creditors and the Trustee were attempting to compromise a multi-party dispute without first resolving threshold issues concerning the control of SEG. However, this contention is a red-herring and another in a series of strategic plays by the Thakkar Entities aimed at derailing the sale of Debtors' assets.  While the Thakkar Entities and BKGD want to drown out any progress made toward a conclusion of the Debtors' cases with exhaustive analysis of ownership claims, a simple review of SEG's corporate filings with the Florida Division of Corporations reveals that Good Gateway is the manager of SEG. *See* SEG's Online Corporate Details attached hereto as **Exhibit B**. Despite BKGD's alleged purchase of OG over one month ago, to date, no attempt has been made by BKGD, as the purported supermajority owner of SEG, to strip Good Gateway of its managerial authority.[2]  Thus, only Good Gateway has the authority to bind SEG to the Agreement with the Trustee in a compromise of its claims. Any assertions to the contrary are simply misplaced and directed solely toward creating further complexity and delay.

**C.     Equity.**

25.     It is an oft-stated principal that Bankruptcy Courts are "courts of equity." As applied to the instant matter, this concept is important.  The Thakkar Entities will ask this Court to deny the Motion and further request the Court not take any action until all appeals are exhausted and a declaratory action (which was wrongfully removed to this Court and will soon be remanded) is resolved.  Against this background, the Court should consider that the Thakkar Entities are, by making such request, effectively asking this Court to issue a stay pending appeal in favor of Mr.

---

[2] In fact any action to do so would be ineffective as stripping Good Gateway of its managerial authority requires the unanimous consent of SEG's ownership interests.

Thakkar. The Thakkar Entities voluntarily filed these cases over 14 months ago and each time the Gateway Creditors have been able to reach an arms-length compromise with third-parties, the Thakkar Entities ask the Court to upset the wishes of all other parties in favor of the person who was found liable for fraud. The Debtors are under the control of the Chapter 7 Trustee and asking the Court to strip the Trustee of his settlement provers until Mr. Thakkar can exhaust all his personal remedies and delay tactics, is inequitable and improper.

WHEREFORE, the Settlement Parties respectfully request that the Court enter an order approving the proposed settlement, authorizing the parties to consummate the settlement pursuant to the terms of the Agreement, and granting such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of August 2016.

/s/ R. Scott Shuker, Esq.
**R. Scott Shuker, Esq.**
Florida Bar No. 0984469
rshuker@lseblaw.com
**Mariane L. Dorris, Esq.**
Florida Bar No. 0173665
mdorris@lseblaw.com
**Latham, Shuker, Eden & Beaudine, LLP**
111 North Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Tel:    (407) 481-5800
Fax:    (407) 481-5801
*Attorneys for Good Gateway, LLC*
*and SEG Gateway, LLC*

/s/ Esther McKean
**Jules S. Cohen, Esq.**
Florida Bar No. 014520
jules.cohen@akerman.com
**Esther McKean, Esq.**
Florida Bar No. 28124
esther.mckean@akerman.com
**AKERMAN LLP**
Post Office Box 231
Orlando, Florida 32802-0231
Phone: (407) 843-7860
Fax: (407) 843-6610
*Attorneys for the Trustee*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    CASE NO.  6:15-bk-03448-KSJ

**ORLANDO GATEWAY PARTNERS,**               **CHAPTER 7**
**LLC,**

                    Debtor.

_____/

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true copy of **JOINT MOTION BY GOOD GATEWAY, LLC, SEG GATEWAY, LLC, AND EMERSON C. NOBLE, AS CHAPTER 7 TRUSTEE, TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019**, together with all exhibits, has been furnished by electronic mail and/or by U.S. First Class, postage prepaid mail to:  Emerson Noble, Chapter 7 Trustee, c/o Jules S. Cohen, Akerman Senterfitt, P.O. Box 231, 420 South Orange Avenue, Orlando, FL 32802, jules.cohen@akerman.com; and John A. Moffa, Moffa & Bonaquisti, P.A., 1776 N. Pine Island Road, Suite 102, Plantation, Florida 33322, john@moffa.law, Frank M. Wolff, Frank Martin Wolff P.A., 1851 W. Colonial Drive, Orlando, FL 32804, fwolff@fmwpa.com; Kathleen L. DiSanto, Jennis & Bowen, P.A., 400 N. Ashley Drive, Suite 2540, Tampa, FL 33602, kdisanto@jennisbowen.com; C. Andrew Roy, aroy@whww.com, Winderweedle, Haines, Ward & Woodman, P.A., P. O. Box 1391, Orlando, FL 32802-1391; all creditors and parties-in-interest, as shown on the matrix attached to the original of this motion filed with the Court; and to the United States Trustee, 400 W. Washington Street, First Floor, Orlando, Florida 32801, this 2nd day of August 2016.

                                   /s/ R. Scott Shuker
                                   R. Scott Shuker, Esquire

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                          CASE NO.  6:15-bk-03447-KSJ

NILHAN HOSPITALITY, LLC,                         CHAPTER 7

          Debtor.
_____/

ORLANDO GATWAY PARTNERS,                         CASE NO. 6:15-bk-03448-KSJ
LLC,
          Debtor.                                CHAPTER 7
_____/

## SETTLEMENT AGREEMENT

     This Settlement Agreement (the "Settlement Agreement") is entered into as of July 29, 2016, by and among Good Gateway, LLC ("Gateway") and SEG Gateway, LLC ("SEG") (collectively, the "Gateway Creditors"); and Emerson C. Noble, as Chapter 7 Trustee of Nilhan Hospitality, LLC ("NH") and Orlando Gateway Partners, LLC ("OGP") (collectively, the "Debtors"), with reference to the following facts and recitals:

     WHEREAS, on April 20, 2015 (the "Petition Date"), NH and OGP, an affiliated or related debtor and debtor-in-possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Florida (the "Bankruptcy Court"), Case No. 6:15-bk-03447-KSJ and Case No. 6:15-bk-03448-KSJ, respectively (the "Bankruptcy Cases");

     WHEREAS, prior to the Petition Date, on July 10, 2010, Good Gateway filed a complaint commencing the litigation styled *Good Gateway, LLC v. Orlando Gateway Partners, LLC, et al.*, Case No. 2010-CA-015315-O (Division 43) (the "State Court Litigation"), in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "State Court").  Subsequently, on May 29, 2012, SEG filed a crossclaim complaint in the State Court Litigation against OGP, Nilhan Hospitality, Chittranjan K. Thakkar ("Thakkar"), NCT Systems, Inc. ("NCT"), Niloy & Rohan, LLC ("N&R") (Thakkar, NCT, N&R, together with Debtors, OGP and NH are hereafter, collectively, referred to as, "Thakkar Entities").  On October 3, 2014, Judgment Creditors obtained final judgments against the Thakkar Entities (the "Judgments");

{38504859;1}

**EXHIBIT "A"**

WHEREAS, on November 3, 2014, the Thakkar Entities filed notices of appeal of the Judgments. OGP and Nilhan Hospitality filed Chapter 11 petitions on April 20, 2015. On June 2, 2015, this Court granted relief from the automatic stay to allow the appeal cases *Orlando Gateway Partners, LLC, et al., v. SEG Gateway, LLC, etc. et al.,* case no. 5D14-3962 (Fla. 5th DCA) and *Chittranjan K. Thakkar, an individual, et al., v. Good Gateway, LLC, etc. et al.,* case no. 5D14-3964 (Fla. 5th DCA) (collectively, the "Appeals") to proceed to conclusion. (Doc No. 26 in Case 15-bk-3448) (the "Stay Order");

WHEREAS, on July 10, 2015, OGP and NH filed notices of removal of the State Court Case resulting in the adversary proceeding styled *Orlando Gateway Partners, LLC, vs. Good Gateway, LLC and SEG Gateway, LLC,* case no. 6:15-ap-00084-KSJ    (the "Removed Proceeding");

WHEREAS, on July 28, 2015, Gateway filed Claim No. 4 in the NH case in the principal amount of $2,500,000 and Claim No. 6 in the OGP case in the principal amount of $2,500,000 (the "Gateway Claims"), and SEG filed Claim No. 5 in the NH case in the principal amount of $12,000,000 and Claim No. 7 in the OGP case in the principal amount of $15,376,435.58 (the "SEG Claims");

WHEREAS, on August 21, 2015, the Gateway Creditors commenced an adversary proceeding (Adversary Proceeding No. 15-ap-0098-KSJ) against Nilhan Financial, LLC ("NF"), pursuant to 11 U.S.C. §§ 105, 502, and 510, Rule 7001 of the Federal Rules of Bankruptcy Procedure, seeking to: (i) subordinate NF's secured claim (proof of claim number 10, the "Claim") that arises out of a note and mortgage originally made by Georgian Bank to the OGP, pursuant to 11 U.S.C. §510(c) to the level of equity; (ii) recharacterize the Claim as capital contributions to OGP; and (iii) object to the Claim (the "NF Adversary");

WHEREAS, on February 10, 2016, the Bankruptcy Court entered an Order Converting Case from Chapter 11 to Chapter 7 in the Bankruptcy Cases, and appointed Emerson C. Noble, as Chapter 7 Trustee of both the Debtors (the "Trustee");

WHEREAS, the following definitions shall apply to the terms used in this Settlement Agreement:

a. <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in §503(b) of the Code, and of a kind referred to in §507(a)(1) of the Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Cases of preserving Debtors' estates and operating the businesses of Debtors, including, wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code, and all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code;

2

b. <u>Allowed Amount</u> shall mean the amount of an Allowed Claim;

c. <u>Allowed Claim</u> shall mean a Claim (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of §501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; or (b) deemed an Allowed Claim pursuant to any Order of the Bankruptcy Court. An Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003, or any Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed or settled by entry of a Final Order;

d. <u>Allowed Priority Tax Claim</u> shall mean a Priority Claim pursuant to Code section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim;

e. <u>Allowed Unsecured Claim</u> shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim;

f. <u>Final Order</u> shall mean an Order or judgment of the Bankruptcy Court which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending;

g. <u>Sixt Tract</u> shall mean the real property described on <u>Exhibit "A"</u> attached hereto;

h. <u>Sale Motions</u> shall mean the Trustee's Amended Motion to Approve Sale Free and Clear of Lien, Claims and Interest (Doc. No. 263 the NH case and Doc. No. 250 the OGP case).

WHEREAS, in order to avoid the costs, risks and delay of litigation, the Trustee and the Gateway Creditors have determined to resolve their disputes relating to the foregoing matters on the terms and subject to the conditions set forth in this Settlement Agreement.

NOW, THEREFORE, the Trustee and the Gateway Creditors agree as follows:

1.    The recitals set forth above are incorporated herein by reference.

2.    This Settlement Agreement shall be effective upon Bankruptcy Court approval ("Effective Date").

3.    <u>Appeals:</u> Upon entry of a Final Order approving the Settlement Agreement, the Trustee shall dismiss the Appeals, filed by NH and OGP, with prejudice.

4.    <u>Sale Motions:</u> Gateway and SEG each agree to support the Sale Motions and will not credit bid their judgments at any auction conducted in accordance with the Sale Motions; provided, however, if the terms of the Sale Motions (including price, allocation, and credit bidding) are altered, this provision shall not be applicable. The Trustee reserves the right to object to Gateway and SEG credit bidding.

3

5.    <u>Gateway Claims:</u>  The Gateway Claims shall be deemed Allowed Secured Claims in the Bankruptcy Cases.  In the NH case, the Gateway Claims shall have priority over all other Allowed Claims except Summit Bridge and real estate taxes.  In the OGP case, the Gateway Claims shall have priority over all other Allowed Claims except real estate taxes, SummitBridge and, if the NF Adversary is unsuccessful, subject to the Allowed Claim of NF as to all OGP real property except the Sixt Tract.  The Trustee agrees to seek to allow the distribution of the Gateway Claims, as to NH, upon the later of: (i) the Effective Date; or (ii) closing of the sale of the NH real property.

6.    <u>SEG Claims:</u>  The SEG Claims shall be deemed Allowed Secured Claims in the Bankruptcy Cases.  In the NH case the SEG Claims shall have priority over all other Allowed Claims except Summit Bridge, the Gateway Claims, and real estate taxes.  In the OGP case, the SEG Claims shall have priority over all other Allowed Claims except real estate taxes, SummitBridge, the Gateway Claims, and, if the NF Adversary is unsuccessful, subject to the Allowed Claim of NF as to all OGP real property except the Sixt Tract.

7.    <u>Gateway Claims - NH Carveout:</u>  The Gateway Creditors will allow a carveout from their distribution in the NH case for:  (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims; and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to Debtor.

8.    <u>Gateway Claims - OGP Carveout:</u>  The Gateway Creditors will allow a carveout from their distribution in the OGP case for:  (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims (except the Claim of NF); and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to the Debtor.

9.    <u>SEG Claims - NH Carveout:</u>  The Gateway Creditors will allow a carveout from their distribution in the NH case for:  (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims; and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to Debtor; provided, however,  the twenty percent (20%) carveout in this subsection (c) shall be increased: (i) to forty percent (40%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed and remanded for a new trial; and (ii) to eighty percent (80%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed entirely with no re-trial.

10.    <u>SEG Claims - OGP Carveout:</u>  The Gateway Creditors will allow a carveout from their distribution in the OGP case for:  (a) all Allowed Administrative Claims; (b) all Allowed Priority and Unsecured Claims (except the Claim of NF); and (c) an amount equal to twenty percent (20%) of the distribution, after carveout, otherwise payable to the Gateway Creditors, to be paid to the Debtor; provided, however, the twenty percent (20%) carveout in this subsection (c) shall be increased: (i) to forty percent (40%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed and remanded for a new trial; and (ii) to eighty percent (80%) if the Appeals result in a ruling that the Judgments in favor of SEG are reversed entirely with no re-trial.

4

11.    No Novation / Judgments Remain Outstanding:  This Settlement Agreement shall not operate as a novation or settlement of the Judgments, which remain valid and outstanding. Except as otherwise set forth in this Settlement Agreement (as it pertains to the Debtors OGP and NH), the Gateway Creditors retain all rights and remedies to pursue all amounts due from all Judgment Debtors and Thakkar Entities under the Judgments or otherwise.

12.    Miscellaneous:

(a)    This Settlement Agreement is being entered into for the specific purpose of reaching a resolution of the issues between the parties without having to undertake the expense and time to adjudicate the respective claims and defenses of the parties.  Nothing herein constitutes an admission by any party but the parties are bound by the terms set forth.

(b)    All communications between the parties related to this Settlement Agreement, shall be subject to the mediation confidentiality provisions.

(c)    Upon entry of the Order (and other than any obligations and rights under this Settlement Agreement), the Trustee and Gateway Creditors shall exchange mutual general releases, which releases shall also include a release of any and all claims and causes of action against any professionals employed by the parties.

(d)    This Settlement Agreement was drafted with the joint participation of the parties and shall be construed neither more strongly against nor in favor of any of them, but, rather, in accordance with the fair meaning hereof.

13.    The Trustee and the Gateway Creditors acknowledge that this Settlement Agreement is a compromise of disputed claims and that none of them admits, and each expressly denies, any liability on its part.

14.    The Trustee and the Gateway Creditors represent and acknowledge that, in executing this Settlement Agreement, they do not rely and have not relied upon any representation or statement made by any Party or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Settlement Agreement or otherwise, other than as specifically stated in this Settlement Agreement.

15.    The Trustee and the Gateway Creditors further declare that, in making this Settlement Agreement, they rely entirely upon their own judgment, beliefs and interest and the advice of their counsel (for whose expense each shall be solely responsible), if any, and that they have had a reasonable period of time to consider this Settlement Agreement and, if so desired, consult with counsel.

16.    The Trustee and the Gateway Creditors agree that each Party and its counsel, if any, have reviewed this Settlement Agreement and that each fully understands and voluntarily accepts all the provisions contained in this Settlement Agreement. The Trustee and the Gateway Creditors further agree that this Settlement Agreement was the product of negotiations between

5

the Trustee and the Gateway Creditors and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Settlement Agreement.

17. This Settlement Agreement sets forth the entire agreement between the Trustee and the Gateway Creditors and supersedes any and all prior agreements and understandings, written or oral, between the Trustee and the Gateway Creditors pertaining to the subject matter hereof.

18. No modification of this Settlement Agreement shall be binding or enforceable unless in writing and signed by the Trustee and the Gateway Creditors.

19. This Settlement Agreement shall be binding upon and inure to the benefit of the Trustee and the Gateway Creditors, their respective heirs, executors, successors, administrators and assigns.

20. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and the laws of the State of Florida, without regard to the conflict of laws of the State of Florida. The Trustee and the Gateway Creditors hereby irrevocably consent to the jurisdiction of Bankruptcy Court with respect to any action to enforce the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.

21. This Settlement Agreement may be executed in one or more counterparts, including by email and facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

22. Each person signing this Settlement Agreement represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his/her respective client(s) to the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Trustee and the Gateway Creditors have each approved and executed this Settlement Agreement as of the date first set forth above.

By:_____
Name: **Orlando Gateway Partners, LLC**
By: Emerson C. Noble, Trustee in Bankruptcy
of Orlando Gateway Partners, LLC and
Nilhan Hospitality
Its: Chapter 7 Trustee

By:_____
Name: **Nilhan Hospitality, LLC**
By: Emerson C. Noble, Trustee in Bankruptcy
of Orlando Gateway Partners, LLC and
Nilhan Hospitality
Its: Chapter 7 Trustee

6

By: _____
Name: **Good Gateway, LLC**
By: M. Carson Good
Its: Manager

By: _____
Name: **SEG Gateway, LLC**
By:  **Good Gateway, LLC**
Its:  Managing Member

By: _____
Name: **SEG Gateway, LLC**
By: **Good Gateway, LLC**      For SEF Gateway, LLC
Its:  Member

7

Exhibit "A"

(legal description)

Lots 4, 5 and 8, ORLANDO GATEWAY, according to the map or plat thereof as recorded in Plat Book 70, Page 110, Public Records of Orange County, Florida.

that portion of Lot 2, ORLANDO GATEWAY, according to the map or plat thereof as recorded in Plat Book 70, Page 110, Public Records of Orange County, Florida, as described in that certain Quitclaim Deed recorded in O.R. Book 9507, Page 4026, Public Records of Orange County, Florida.



FLORIDA DEPARTMENT OF STATE
DIVISION OF CORPORATIONS

Home    Contact Us    E-Filing Services    Document Searches    Forms    Help

## Detail by Entity Name

**Florida Limited Liability Company**

SEG GATEWAY, LLC

**Filing Information**

| | |
|---|---|
| Document Number | L07000114321 |
| FEI/EIN Number | 26-1408810 |
| Date Filed | 11/13/2007 |
| State | FL |
| Status | ACTIVE |
| Last Event | REINSTATEMENT |
| Event Date Filed | 02/23/2012 |

**Principal Address**

174 WEST COMSTOCK AVE
SUITE 100
WINTER PARK, FL 32789

Changed: 02/23/2012

**Mailing Address**

174 WEST COMSTOCK AVE
SUITE 100
WINTER PARK, FL 32789

Changed: 03/13/2012

**Registered Agent Name & Address**

KENNNETH WRIGHT, ESQUIRE
SUNTRUST CENTER , 200 SOUTH ORANGE AVE
SUITE 2300
ORLANDO, FL 32801

Name Changed: 02/23/2012

Address Changed: 02/23/2012

**Authorized Person(s) Detail**

**Name & Address**

Title Manager

GOOD GATEWAY, LLC
174 W. COMSTOCK AVENUE, STE. 100
WINTER PARK, FL 32789

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2014 | 04/30/2014 |
| 2015 | 07/08/2015 |
| 2016 | 04/27/2016 |

**Document Images**

Copyright © and  Privacy Policies
State of Florida, Department of State

**EXHIBIT "B"**

8/2/2016 10:56 AM

| Date / Description | |
|---|---|
| 07/08/2015 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2014 -- ANNUAL REPORT | View image in PDF format |
| 04/26/2013 -- ANNUAL REPORT | View image in PDF format |
| 03/13/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/23/2012 -- REINSTATEMENT | View image in PDF format |
| 08/17/2010 -- Reg. Agent Resignation | View image in PDF format |
| 04/20/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/30/2008 -- Reg. Agent Change | View image in PDF format |
| 04/10/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/13/2007 -- Florida Limited Liability | View image in PDF format |

Label Matrix for local noticing
113A-6
Case 6:15-bk-03448-KSJ
Middle District of Florida
Orlando
Mon Feb  8 15:06:31 EST 2016

Branch Banking and Trust Company
c/o Jason A. Rosenthal, Esq.
The Rosenthal Law Firm, P.A.
4798 New Broad Street
Suite 310
Orlando, FL 32814-6436

Hari Garhwal
 Garhwal, Chan & Williams
350 California St #1990
San Francisco, CA 94104-1498

Good Gateway, LLC
c/o R. Scott Shuker
Latham, Shuker, Eden & Beaudine, LLP
PO Box 3353
Orlando, FL 32802-3353

Larry S. Hyman
P.O. Box 18625
Tampa, FL 33679-8625

Nilhan Financial LLC
c/o John A Moffa
1776 North Pine Island Rd Ste 102
Plantation, FL 33322-5200

Orlando Gateway Partners, LLC
5100 Peachtree Industrial Blvd.
Norcross, GA 30071-5721

Harley Riedel
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison St., Ste. 200
Tampa, FL 33602-4718

SEG Gateway, LLC
c/o R. Scott Shuker
Latham, Shuker, Eden & Beaudine, LLP
PO Box 3353
Orlando, FL 32802-3353

Terry Soifer
2100 Lee Road  Ste F
Winter Park, FL 32789-1862

Todd M. Hoepker, PA
PO Box 3311
Orlando, FL 32802-3311

Bloom Sugarman Everett, LLP
977 Ponce de Leon
Atlanta, GA 30306

(p)BB AND T
PO BOX 1847
WILSON NC 27894-1847

Branch Banking & Trust Co
171 17th Street
Atlanta GA 30363-1032

Branch Banking and Trust Company
c/o Jason Rosenthal, Esq.
4798 New Broad Street, Suite 310
Orlando, FL 32814-6436

Chittranjan (Chuck) Thakkar
c/o John A Moffa Esq
Moffa Bonacquisti & Breuer PLLC
1776 N Pine Island Rd Ste 102
Plantation FL 33322-5200

Chittranjan Thakkar
17885 Collins Ave
Unit 4001
Sunny Isles FL 33160-3178

Clear Channel

Dickinson & Gibbons
Gateway  Professional Center
410 N. Cattleman Road
Suite 30
Sarasota, FL 34232

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Good Gateway LLC
Mateer Harbert PA
225 E. Robinson St.
Suite 600, Two Landmark Center
Orlando  FL 32801

Good Gateway, LLC
174 W. Comstock Avenue
Suite 100
Winter Park, FL 32789-4347

Good Gateway, LLC
c/o Clay M. Townsend
Morgan & Morgan, PA
20 N. Orange Avenue, Suite 1500
Orlando, FL 32801-4624

Good Gateway, LLC
c/o R. Scott Shuker, Esq
Latham, Shuker, Eden & Beaudine, LLP
PO Box 3353
Orlando, FL 32802-3353

Greenspoon Marder
Trade Center South
Suite 700
Fort Lauderdale, FL 33309

Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346

King Blackwell
25 East Pine Street
Orlando, FL 32801-2648

NCT Systems, Inc
17885 Collins Ave
Unit 4001
Sunny Isles FL 33160-3178

Nilhan Financial, LLC
5875 Peachtree Industrial Bl
Suite 340
Norcross, GA 30092-3654

Nilhan Financial, LLC
c/o Michael A. Tessitore, Esq.
Moran Kidd Lyons & Johnson, P.A.
111 N. Orange Avenue, Suite 900
Orlando, FL 32801-2307

Nilhan Hospitality LLC
5463 Gateway Village Circle
Orlando FL 32812-4008

Nilhan Hospitality LLC
6050 Peachtree Industrial Blvd
Norcross GA 30071-1311

(p)NILOY & ROHAN LLC
6050 PEACHTREE INDUSTRIAL BLVD
NORCROSS GA 30071-1311


Orange County Tax Collector
PO Box 545100
Orlando FL 32854-5100

Orange County Tax Collector
Attn: Scott Randolph
PO Box 545100
Orlando, FL 32854-5100

SEG Gateway, LLC
174 W. Comstock Avenue
Suite 100
Winter Park, FL 32789-4347


SEG Gateway, LLC
c/o R. Scott Shuker, Esq
Latham, Shuker, Eden & Beaudine, LLP
PO Box 3353
Orlando, FL  32802-3353

Securities Exchange Commission
175 West Jackson Street
Suite 900
Chicago IL 60604-2908

Sixt Rent A Car, LLC
3900 NW 25th Street
Suite 407
Miami, FL 33142-6705


State of Florida
Dept of Revenue
501 S. Calhoun St
Carlton Building, RM 104
Tallahassee FL 32399-6548

SummitBridge National Investments IV LLC
c/o Richard A. Robinson, Esq.
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801-1163

Weinstock & Scavo, PC
7 E Congress St Ste 1001
Savannah GA 31401-3357


Mariane L Dorris +
Latham Shuker Eden & Beaudine LLP
P.O. Box 3353
Orlando, FL 32802-3353

Todd M Hoepker +
Todd M Hoepker PA
PO Box 3311
Orlando, FL 32802-3311

Jon E Kane +
Mateer & Harbert, P.A.
225 E. Robinson Street, 600
Orlando, FL 32801-4325


Harley E Riedel +
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street
Suite 200
Tampa, FL 33602-4718

Jason A Rosenthal +
The Rosenthal Law Firm PA
4798 New Broad Street
Suite 310
Orlando, FL 32814-6436

R Scott Shuker +
Latham Shuker Eden & Beaudine LLP
Post Office Box 3353
Orlando, FL 32802-3353


Richard A Robinson +
Reed Smith LLP
1201 Market Street Suite 1500
Wilmington, DE 19801-1163

United States Trustee - ORL +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Kenneth D Herron Jr+
Wolff Hill McFarlin & Herron PA
1851 West Colonial Drive
Orlando, FL 32804-7013


Kenneth D Herron Jr+
1851 West Colonial Drive
Orlando, FL 32804-7013

Clay M Townsend +
Morgan & Morgan PA
20 North Orange Avenue
Orlando, FL 32801-4645

Timothy S Laffredi +
Office of the United States Trustee
400 W. Washington St., Suite 1100
Orlando, FL 32801-2440


John A. Moffa +
Moffa & Bonacquisti, PA
1776 N Pine Island Road, Suite #102
Plantation, FL 33322-5200

Malinda Hayes +
Frank White-Boyd PA
11382 Prosperity Farms Road, Ste 230
Palm Beach Gardens, FL 33410-3463

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Branch Banking & Trust
200 W. 2nd Street
Winston-Salem NC 27101

Niloy & Rohan LLC
6050 Peachtree Ind. Blvd.
Norcross GA 30071


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Karen S. Jennemann                (u)SummitBridge National Investments IV LLC      (u)Chittranjan Thakkar
Orlando


(d)Nilhan Financial LLC              End of Label Matrix
c/o John A Moffa                     Mailable recipients    56
1776 North Pine Island Rd Ste 102    Bypassed recipients     4
Plantation FL 33322-5200             Total                  60